## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **FIESTA MART, LLC.** | § | |
| | § | **CIVIL ACTION NO.**_____ |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WILLIS OF ILLINOIS, INC. and** | § | |
| **WILLIS TOWERS WATSON US, LLC** | § | |
| | § | |
| **Defendants.** | § | |

## EXHIBIT A TO NOTICE OF REMOVAL

1.     **All executed process in this case**:  As of the date of this filing, Plaintiff has not filed an affidavit of service with the state court.

2.     **Pleadings asserting causes of action, e.g., petitions, counterclaims, cross actions, third-party actions, interventions and all answers to such pleadings**:  Defendants Willis of Illinois, Inc. and Willis Towers Watson US, LLC's Original Answer, General Denial, Special Exceptions and Affirmative Defenses.

3.     **All orders signed by the state judge**:  None.

4.     **The docket sheet**:  See #5.

5.     **An index of the matters being filed**:

| Doc # | Date Filed | Document/Pleading |
|---|---|---|
| 1 | N/A | Court Docket |
| 2 | September 4, 2020 | Plaintiff's Original Petition and Request for Disclosure[4] |

---

[4] Attached to Plaintiff's Original Petition and Request for Disclosure were the following filings from a separate, unrelated case (*The State of Texas v. One Bent Tree, LTD*., Cause No. 20-C-3293, Ellis County, Texas): (a) a Notice of Hearing; (b) an Order Setting Hearing Before Special Commissioners; and (c) First Amended Petition for Condemnation.  Defendants have included these documents out of an abundance of caution, but assume that they were inadvertently attached to the Original Petition and Request for Disclosure by Plaintiff.

| 3 | October 5, 2020 | Defendants Willis of Illinois, Inc. and Willis Towers Watson US, LLC's Original Answer, General Denial, Special Exceptions and Affirmative Defenses |
|---|---|---|

6. **List of all counsel of record, including addresses, telephone numbers and parties represented**:

Tracey N. LeRoy
Rhuju Vasavada
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, TX 77002
713-632-7702

*Counsel for Plaintiff Fiesta Mart, LLC*

Edward J. Baines
Kyra Smerkanich
Saul Ewing Arnstein & Lehr, LLP
1919 Pennsylvania Avenue, N.W. Suite 550
Washington, DC 20006
202-295-6632

*Counsel for Defendants of Illinois, Inc. and Willis Towers Watson US, LLC*

Christopher W. Martin
Martin, Disiere, Jefferson & Wisdom LLP
Niels Esperson Building
808 Travis, 20th Floor
Houston, TX 77002
713-632-1701

*Counsel for Defendants of Illinois, Inc. and Willis Towers Watson US, LLC*

# DOCUMENT 1

**HCDistrictclerk.com**          FIESTA MART LLC vs. WILLIS TOWERS WATSON US          10/9/2020
                                  LLC
                                  Cause: 202053693          CDI: 7          Court: 061

**APPEALS**
No Appeals found.

**COST STATMENTS**
No Cost Statments found.

**TRANSFERS**
No Transfers found.

**POST TRIAL WRITS**
No Post Trial Writs found.

**ABSTRACTS**
No Abstracts found.

**SETTINGS**
No Settings found.

**NOTICES**
No Notices found.

**SUMMARY**

CASE DETAILS                                          CURRENT PRESIDING JUDGE

| **File Date** | 9/4/2020 | **Court** | 061ˢᵗ |
| **Case (Cause) Location** | Civil Intake 1st Floor | **Address** | 201 CAROLINE (Floor: 9) HOUSTON, TX 77002 Phone:7133686070 |
| **Case (Cause) Status** | Active - Civil | | |
| **Case (Cause) Type** | FRAUD | **JudgeName** | FREDERICKA PHILLIPS |
| **Next/Last Setting Date** | N/A | **Court Type** | Civil |
| **Jury Fee Paid Date** | 9/4/2020 | | |

**ACTIVE PARTIES**

| Name | Type | Post Jdgm | Attorney |
| --- | --- | --- | --- |
| FIESTA MART LLC | PLAINTIFF - CIVIL | | LEROY, TRACY NICOLE |
| WILLIS TOWERS WATSON US LLC | DEFENDANT - CIVIL | | MARTIN, CHRISTOPHER W. |
| WILLIS OF ILLINOIS INC | DEFENDANT - CIVIL | | MARTIN, CHRISTOPHER W. |
| WILLIS TOWERS WATSON US LLC (A DELAWARE | REGISTERED AGENT | | |

LIMITED LIABILITY COMPANY)

| WILLIS OF ILLINOIS INC (AN ILLINOIS CORPPRATION) CAN BE SERVED THROUGH | REGISTERED AGENT |
|---|---|

## INACTIVE PARTIES
No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|---|---|---|---|---|---|---|---|
| 10/5/2020 | ANSWER ORIGINAL PETITION | | | 0 | | MARTIN, CHRISTOPHER W. | WILLIS OF ILLINOIS INC |
| 10/5/2020 | ANSWER ORIGINAL PETITION | | | 0 | | MARTIN, CHRISTOPHER W. | WILLIS TOWERS WATSON US LLC |
| 9/4/2020 | JURY FEE PAID (TRCP 216) | | | 0 | | | |
| 9/4/2020 | ORIGINAL PETITION | | | 0 | | LEROY, TRACY NICOLE | FIESTA MART LLC |

## SERVICES

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
|---|---|---|---|---|---|---|---|---|---|---|
| CITATION | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | WILLIS TOWERS WATSON US LLC (A DELAWARE LIMITED LIABILITY COMPANY) | 9/4/2020 | 9/8/2020 | 9/14/2020 | | 9/15/2020 | 73784592 | E-MAIL |
| | 211 E 7TH STREET SUITE 620 AUSTIN TX 78701 | | | | | | | | | |
| CITATION (NON-RESIDENT CORPORATE) | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | WILLIS OF ILLINOIS INC (AN ILLINOIS CORPPRATION) CAN BE SERVED THROUGH | 9/4/2020 | 9/8/2020 | 9/25/2020 | | 10/1/2020 | 73784594 | E-MAIL |
| | 208 S LASALLE STRERET SUITE 814 CHICAGO IL 60204 | | | | | | | | | |

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 92471563 | Defendants Willis Of Illinois Inc And Willis Towers Watson Us. Llc's Original Answer Deneral Denial Special Exceptions And Affidamative Defenses | | 10/05/2020 | 7 |
| | Defendants Willis Of Illinois Inc And Willis Towers Watson Us. Llc's Original Answer Deneral Denial Special Exceptions And Affidamative Defenses | | 10/05/2020 | |
| 92472694 | Defendants Willis Of Illinois Inc And Willis Towers Watson Us Llc's Original Answer General Denial Special Exceptions And Affirmative Defenses | | 10/05/2020 | 7 |
| | Defendants Willis Of Illinois Inc And Willis Towers Watson Us Llc's Original Answer General Denial Special Exceptions And Affirmative Defenses | | 10/05/2020 | |
| 92424939 | Return of Service | | 10/01/2020 | 3 |
| 92159623 | Return of Service | | 09/15/2020 | 3 |
| 92148839 | Return of Service | | 09/14/2020 | 3 |
| 92032111 | PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE | | 09/04/2020 | 18 |

| | | | |
|---|---|---|---|
| -> 92032112 | EXHIBIT 01 | 09/04/2020 | 11 |
| -> 92032114 | EXHIBIT 02 | 09/04/2020 | 3 |
| -> 92032115 | EXHIBIT 03 | 09/04/2020 | 2 |
| -> 92032116 | EXHIBIT 04 | 09/04/2020 | 3 |
| 92037702 | Request for Issuance of Service | 09/04/2020 | 1 |
| 92037906 | Request for Issuance of Service | 09/04/2020 | 1 |

DOCUMENT 2

Receipt Number: 863876
Tracking Number: 73784592

EML
**COPY OF PLEADING PROVIDED BY PLT**

CAUSE NUMBER: 202053693

| | |
|---|---|
| PLAINTIFF: FIESTA MART LLC | In the 061st Judicial |
| vs. | District Court of |
| DEFENDANT: WILLIS TOWERS WATSON US LLC | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: WILLIS TOWERS WATSON US LLC (A DELAWARE LIMITED LIABILITY COMPANY) CAN BE SERVED
THOUGH ITS REGISTERED AGENT CORPORATION SERVICE COMPANY D/B/A CSC

211 E 7TH STREET SUITE 620

AUSTIN TX 78701

**DELIVERED**
09 14 2020
BY: ECC PSC: 1336
ATX Process, LLC

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE.

This instrument was filed on September 4, 2020, in the above numbered and styled
cause on the docket in the above Judicial District Court of Harris County, Texas, in
the courthouse in the City of Houston, Texas. The instrument attached describes the
claim against you.

    YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not
file a written answer with the District Clerk who issued this citation by 10:00 a.m.
on the Monday next following the expiration of twenty days after you were served this
citation and petition, a default judgment may be taken against you.

    ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this
September 8, 2020.



*Marilyn Burgess*

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: LISA THOMAS

Issued at request of:
LeRoy, Tracy N
811 MAIN STREET, SUITE 4100
HOUSTON, TX  77002
713-632-8073

Bar Number: 24062847

Tracking Number: 73784592
EML

CAUSE NUMBER: 202053693

| | |
|---|---|
| PLAINTIFF: FIESTA MART LLC | In the 061st |
| vs. | Judicial District Court |
| DEFENDANT: WILLIS TOWERS WATSON US LLC | of Harris County, Texas |

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____o'clock _____. M., on the _____ day of
_____, 20_____.

Executed at (address) _____
in _____ County

at _____ o'clock _____. M., on the _____ day of
_____, 20 _____,

by delivering to _____ defendant,
in person, a true copy of this

Citation together with the accompanying _____ copy(ies) of the
_____ Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _____ day of
_____, 20 _____.

FEE:  $ _____

_____
_____ of _____

County, Texas

_____      By:  _____
        Affiant                            Deputy

On this day, _____, known to me to be
the person whose signature

appears on the foregoing return, personally appeared.  After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited
on the return.

SWORN TO AND SUBSCRIBED BEFORE ME on this _____ of
_____, 20 _____

_____
                Notary Public

No. _____

| | | |
|---|---|---|
| FIESTA MART, LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| WILLIS OF ILLINOIS, LLC and WILLIS | § | |
| TOWERS WATSON US, LLC | § | |
| | § | _____th JUDICIAL DISTRICT |
| Defendant. | | |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

Plaintiff Fiesta Mart, LLC ("Fiesta Mart"), respectfully files this Original Petition and

Request for Disclosure against Defendants Willis Towers Watson US LLC and Willis of Illinois,

Inc. (together "Willis"). Based upon actual knowledge with respect to itself and its own acts, and

upon information and belief as to all other persons and matters, Fiesta Mart respectfully alleges as

follows:

### Discovery Level

1.      Based on the relief sought, discovery should be conducted under a Level 2 plan

pursuant to Texas Rule of Civil Procedure 190.3.

### Nature of the Action

2.      Fiesta Mart is a supermarket chain based in Houston, Texas. Fiesta Mart has served

Houstonians for over 45 years and is continuing to serve this community during the COVID-19

pandemic. Its employees currently serve as first line responders providing basic necessities to

Fiesta Mart's customers, and its stores are visited by thousands of Houstonians every day.

3.      During Hurricane Harvey, several Fiesta Mart stores faced devastating damage.

Some of the stores are still closed and a few are open but are still in the process of making repairs.

4.      During and prior to Hurricane Harvey, Willis was Fiesta Mart's insurance broker.

Willis worked for Fiesta Mart to secure various insurance policies for its stores. Willis also advised

Fiesta Mart on making claims under those policies, including claims related to losses suffered in Hurricane Harvey.

5.       Today, Fiesta Mart is still working to rebuild and reopen stores damaged in the hurricane. This process has been delayed due to the challenges Fiesta Mart has faced in securing the insurance proceeds it is owed because its insurance broker, Willis, breached various duties owed to Fiesta Mart. Willis misrepresented to Fiesta Mart the impact of agreeing to certain insurance policy programs; ignored Fiesta Mart's requests for assistance; and even caused insurance proceeds owed to Fiesta Mart to be paid to another entity with no interest in the affected stores.

6.       Willis' actions have cost Fiesta Mart millions of dollars, valuable time and delayed the repair and reopening of its stores. Rather than support its insured, Fiesta Mart, in the difficult process of rebuilding after the hurricane, Willis acted for its own self-interests to the detriment of Fiesta Mart. And Willis' breaches continue to this day -- Willis has simply stopped responding to inquiries made by the insured, Fiesta Mart, about its insurance program. Fiesta Mart has been left with no choice but to file this lawsuit.

**Parties**

7.       Plaintiff Fiesta Mart, LLC is a Texas Limited Liability Company with its principal place of business in Houston, Texas.

8.       Defendant Willis Towers Watson is a Delaware limited liability company that can be served with process through its registered agent at Corporation Service Company, d/b/a CSC, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

9.       Defendant Willis of Illinois, Inc. is an Illinois corporation that can be served with process through its registered agent, CT Corporation System at 208 S. LaSalle Street Suite 814, Chicago, IL 60204.

## Jurisdiction and Venue

10.     The Court has subject matter jurisdiction over this case because the amounts in controversy are within its jurisdictional limits.

11.     The Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privileges and benefits of conducting business in this state, as defined in Section 17.042(2) and/or (1) of the Texas Civil Practice and Remedies Code. Without limitation, Defendant has engaged in business in this state by committing a tort in whole or in part in Texas and entering into a contract with a Texas resident with performance in whole or in part in Texas.

12.     Venue of this action is proper in Harris County, Texas, pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code, because a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas, and because Harris County is where the insured properties at issue in this lawsuit are located. In the alternative, venue is proper in Harris County, Texas under Section 12.002(a)(4) of the Texas Civil Practice and Remedies Code, because Plaintiff is headquartered in Harris County, Texas.

## Facts Giving Rise to This Action

13.     Fiesta Mart was founded in Houston in 1972.  Today, there are more than 60 Fiesta Mart stores in Texas, serving customers from over 90 countries of origin. Houston remains the principal location of most Fiesta Mart stores and the location of its corporate headquarters.

14.     Insurance coverage for property damage to Fiesta Mart stores is important to Fiesta Mart's business. Most of its stores are located in the Houston area, and Fiesta Mart therefore faces the annual threat of hurricane damage. Fiesta Mart requires adequate insurance to keep its stores up and running for the Houston community and to protect its investment in each store.

15.     Fiesta Mart further requires adequate coverage as a predicate to its lease agreements for the store premises. Fiesta Mart is required to provide certificates of insurance coverage to the

owners from whom it leases space for its stores. Absent adequate coverage, Fiesta Mart could be in breach of a lease agreement.

16.     On information and belief, on April 29, 2015, private equity firm ACON Investments, LLC ("ACON") acquired Fiesta Mart. *See* www.aconinvestments.com/aconacquiresFiesta Mart/ ("Washington, DC, April 29, 2015 – ACON Investments, L.L.C. and its affiliates ('ACON') announced today that it has acquired Fiesta Mart, L.L.C….") (visited Aug. 28, 2020).

17.     At the time of the acquisition, ACON utilized Willis as an insurance broker for some if not all of its portfolio companies. Fiesta Mart had been using a different insurance broker prior to the ACON acquisition.

**A.     Willis Becomes Fiesta Mart's Broker**

18.     The policies covering property damage to Fiesta Mart stores were up for renewals in approximately April of 2016. Willis approached Fiesta Mart and sought to become its broker.

19.     Willis has 45,000 employees serving more than 140 countries and markets. In the United States alone, Willis has 90 offices, including six in Texas.

20.     Over the course of the relationship between Fiesta Mart and Willis, Willis provided services from a number of Willis offices around the country. Willis emphasized its national capabilities as a way of ensuring prompt and effective service for clients like Fiesta Mart. Fiesta Mart routinely communicated with Willis personnel from a number of offices, including Chicago, Los Angeles, and Atlanta.

21.     Willis represented to Fiesta Mart that Willis' representation of other ACON portfolio companies would help Fiesta Mart, and that Willis' relationship with ACON would not cause a conflict in Willis' representation of Fiesta Mart.

- 4 -

22.     Willis provided Fiesta Mart with its standard Terms and Conditions. *See* Terms and Conditions, Ex. 1. Under the Terms and Conditions, Willis promised that it would respond to Fiesta Mart's requests for coverage information as well as act on Fiesta Mart's behalf as the insured. *Id.* at 2, 6.

23.     Willis further promised that if Willis became aware of any conflict of interest between Fiesta Mart and another entity with a relationship with Willis, Willis would inform Fiesta Mart and withdraw from the Fiesta Mart relationship. *Id.* at 6. Willis represented that it "do[es] not tolerate unethical behavior either in our own activities or in those with whom we seek to do business." *Id.* at 8.

24.     Willis represented that it would assist Fiesta Mart in procuring adequate coverage for property damage, manage the process of filing claims, and work with insurers, adjusters, and others in handling claims on Fiesta Mart's behalf.

25.     Fiesta Mart conveyed to Willis its needs for adequate property insurance coverage for damage to its stores. Willis advised Fiesta Mart to agree to group polices that covered various ACON portfolio companies. Willis further represented to Fiesta Mart that the coverage provided under the portfolio policies would be at least equal to a standalone policy proposed by Fiesta Mart's prior broker under which Fiesta Mart was the only named insured. Willis represented to Fiesta Mart that the portfolio policies would be a superior solution for Fiesta Mart as compared to the standalone policy presented by Fiesta Mart's prior broker.

26.     Fiesta Mart relied on Willis' representations about its services as a broker and the portfolio policies, and switched to the portfolio policies on or about April 22, 2016.

**B.**   **Hurricane Harvey**

27.    A little over a year later, on August 25, 2017, Hurricane Harvey made landfall in Houston. The storm dumped an unprecedented 40 inches of rain in the area and caused massive damages and dislocation to Houston businesses and residents alike. Fiesta Mart was no exception. The Fiesta Mart at Mesa and Tidwell (Store #23; 9419 Mesa Drive, Houston, Texas 77028) sustained serious damage. After extensive efforts, Fiesta Mart reopened that store on or about October 4, 2017, bringing quality and affordable food options to a still flood-damaged part of the city. Despite Fiesta Mart's massive efforts in making enough repairs to reopen this store in record time to serve the community, it still is not restored to its pre-Harvey condition because, as noted below, insurance proceeds remain outstanding.

28.    Other Fiesta Mart stores fared even worse. The Fiesta Mart near the Addicks Reservoir at Clay Road and Texas 6 (Store # 56; 4330 Highway 6, North Texas, 77084) took on nearly 10 feet of water. It remains closed today, as does Fiesta Mart Store # 10 (12201 E. Freeway, Houston, Texas 77015). Fiesta Mart management is working towards rebuilding or replacing both stores.

29.    Fiesta Mart used, operated, owned and/or leased store numbers 10, 23, and 56 and other Fiesta Mart stores that suffered property damage and/or business interruption from Hurricane Harvey (collectively, the "Harvey Loss").

30.    Fiesta Mart paid to repair damage from the Harvey Loss, including the damage to store numbers 10, 23, and 56, and additional payments will be required to bring the stores to their pre-Harvey condition.

C.    **The Primary Policies**

31.    At the time of Hurricane Harvey, Fiesta Mart – including store numbers 10, 23, and 56 mentioned above – was insured under several property insurance policies collectively providing $400 million in limits that Willis secured for Fiesta Mart. The first layer of policies, called the primary layer, afforded $25 million in limits (collectively, the "Primary Policies" and individually, a "Primary Policy"). A chart summarizing certain elements of the Primary Policies is set forth below:

| Insurer | Policy No. | Policy Period | Policy Limits | % of Primary Layer |
|---|---|---|---|---|
| Allied World Assurance Company | 0310-7409-1A | 06/01/17-06/01/18 | $2.5M p/o $25M | 10% |
| Arch Specialty Insurance Company | ESP7303053-01 | 06/01/17-06/01/18 | $5M p/o $25M | 20% |
| Aspen Specialty Insurance Company | PRAGK1017 | 06/01/17-06/01/18 | $3M p/o $25M | 12% |
| Certain Underwriters at Lloyd's of London (Hiscox) | URS 2552391.17 | 07/06/17-06/01/18 | $2.5M p/o $25M | 10% |
| HDI Global Insurance Company | CPD1488300 | 06/01/17-06/01/18 | $10M p/o $125M | 8% |
| Indian Harbor Insurance Company | PRO0047629 | 06/01/17-06/01/18 | $5M p/o $25M | 20% |
| Westport Insurance Corporation | NAP 2001214 01 | 06/01/17-06/01/18 | $80M p/o $400M | 20% |

32.    The Primary Policies are contracts of indemnity. Specifically, they provide that "[i]n consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy."

33.    Endorsement A1 to the Primary Policies sets forth certain terms and conditions "[w]ith respects to the entity of, Fiesta Mart." In addition to establishing a deductible of $250,000 for certain perils, Endorsement A1 sets an "Allocated Premium" figure that varies by insurer.

34.     For example, one of the Primary Policies is Policy No. 0310-7409-1A issued by Allied World Assurance Company for the period June 1, 2017 to June 1, 2018 (the "AWAC Policy"). Endorsement A1 to the AWAC Policy states "Allocated Premium - $125,793."

35.     Consistent with that figure, Willis billed Fiesta Mart $125,792.60 respecting the AWAC Policy in June 2017.

36.     Fiesta Mart paid in full the billed amount respecting the AWAC Policy.

37.     Willis likewise billed Fiesta Mart for allocated premium respecting the other Primary Policies. Fiesta Mart paid in full all such billings.

38.     Fiesta Mart also falls within the definition of "Insured" under the Primary Policies, in accordance with Willis' assurances at the time Fiesta Mart agreed to the portfolio policies.

39.     The Master Property Policy stated that Willis of Illinois is authorized to issue certificates of insurance "naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests…" even absent a formal endorsement on the policy.

40.     Willis did in fact issue certificates of insurance for Fiesta Mart. "Fiesta Mart, L.L.C." is also identified as the Insured on over 70 certificates of insurance prepared and issued by Willis respecting the Primary Policies for the relevant policy period. Each such certificate lists all seven Primary Policies and states that "the policies of insurance listed below have been issued to the insured named above for the policy period indicated."

41.     Each Primary Policy was in force at the time of the Harvey Loss.

### D.     Fiesta Mart Submits the First Proofs of Loss and Willis Ensures that Fiesta Mart is Paid the Proceeds.

42.     The Primary Policies provide that it "shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time

and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained."

43.     The Primary Policies also state that "[l]oss, if any, shall be adjusted with and payable to the Insured, or as directed by them."

44.     On or about September 26, 2017, Fiesta Mart, through its Vice President and Chief Financial Officer Wayne S. Peterson, submitted to the Primary Policy insurers signed and sworn First Partial Proofs of Loss respecting the Harvey Loss (collectively, the "First Proofs").

45.     The First Proofs sought recovery for a "Flood (CAT #1743) loss" occurring on August 26, 2017, due to "Flood loss associated with CAT #1743 - Hurricane Harvey." The location specified was "[m]ultiple properties (grocery stores / supermarkets) in Houston, TX." The First Proofs describe the "title and interest" of the insured in the properties at the time of the loss as "Fiesta Mart, L.L.C." In the section to identify any other persons that had an interest or encumbrance on the identified property, the Proofs say "None." The First Proofs also set forth the claim numbers used by the Primary Policy insurers for the Harvey Loss.

46.     Willis, as Fiesta Mart's broker, prepared the First Proofs and provided them to Fiesta Mart for its signature.

47.     Willis in particular made sure that the insurance proceeds would be paid to the correct party, Fiesta Mart: Willis "reminded the Markets that the check needs to be addressed to Fiesta Mart and not ACON Investments." Email from B. Conant W. Peterson, Ex. 2.

48.     Insurers for the Primary Policies accepted the First Proofs from Fiesta Mart and did not challenge Fiesta Mart's right to submit them.

49.     The Primary Policy insurers adjusted the First Proofs with Fiesta Mart and paid Fiesta Mart directly the $7.5 million requested therein.

**E.    Willis Represents that it is on Fiesta Mart's "Team" to seek Insurance Proceeds for Fiesta Mart's Business Interruption Loss**

50.    In addition to property damage, Fiesta Mart also suffered business interruption from the Harvey Loss.

51.    Each Primary Policy covers "the loss resulting from the necessary interruption of business conducted by the Insured…caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein."

52.    Fiesta Mart sustained an actual loss resulting directly from the interruption of business at certain of its stores caused by Hurricane Harvey flooding.

53.    Fiesta Mart, not ACON, conducted the business that was interrupted at the subject stores, and that those stores were operated, owned, and/or leased by Fiesta Mart and not ACON.

54.    Beginning in September 2017, Fiesta Mart was contacted by forensic accountants retained on behalf of the Primary Policy insurers, Matson Driscoll & Damico LLP ("MDD") to gather information about the business conducted at the subject Fiesta Mart stores. MDD asked for Fiesta Mart's weekly and monthly sales information, payroll reports, and a detailed claim for loss of business income and extra expenses incurred. MDD also asked for detailed inventory and daily sales figures for "Locations 10, 23, and 56." None of this information would apply to ACON.

55.    Willis once again, as Fiesta Mart's broker, took charge and advised Fiesta Mart on handling this aspect of the claim. In light of the insurers' retention of MDD and "[b]ecause of the size and scope of Fiesta Mart's loss," Willis recommended that Fiesta Mart likewise hire forensic accountants. Ex. 2. Willis in fact recommended that Fiesta Mart hire accountants affiliated with Willis to represent Fiesta Mart's interest and to "assist you in the preparation and calculation of your Business Interruption and Time Element (Civil Authority, Ingress/Egress) loss" and to "work for Fiesta Mart as part of **our** loss team." *Id.* (emphasis added).

56.     Fiesta Mart took Willis' advice and retained the forensic accountants associated with and recommended by Willis.

**F.      ACON Sells Fiesta Mart**

57.     On or about April 30, 2018, ACON sold Fiesta Mart to a third party. Unbeknownst to Fiesta Mart, once ACON sold Fiesta Mart, Willis decided that its own obligations to Fiesta Mart were likewise finished. Willis began to work not to help Fiesta Mart, but on behalf of its other client, ACON.

**G.      Willis Directs Fiesta Mart's Insurance Proceeds to ACON.**

58.     On information and belief, on or about August 31, 2018, ACON submitted signed and sworn Second Partial Proofs of Loss under the Primary Policies in respect of the Harvey Loss (collectively, the "Second Proofs"). The Second Proofs sought a recovery of $4,780,347, being a partial loss of $12,530,347 less a $250,000 deductible and a $7,500,000 first partial payment.

59.     The Second Proofs covered the same Harvey Loss as the First Proofs.  Specifically, the Second Proofs:

- sought payment respecting "Flood loss associated with CAT #1743 - Hurricane Harvey."

- described the damaged property as "[m]ultiple properties (grocery stores / supermarkets) in Houston, TX."

- use the same claim numbers (2017019830, et seq.) as the First Proofs; and

- describe the "title and interest" in the damaged property as "Fiesta Mart, L.L.C." with "None" identified as having other title, interests, or encumbrances in the subject property.

60.     At the time it submitted the Second Proofs for Fiesta Mart's loss, ACON had no title or interest in Fiesta Mart, including in Fiesta Mart store numbers 10, 23, or 56.

61.     On information and belief, Willis assisted ACON in drafting and submitting the Second Proofs. Willis further understood at that time that ACON no longer owned Fiesta Mart or the damaged stores.

62.     At the same time Willis was helping ACON take Fiesta Mart's insurance proceeds, Willis ostensibly continued to advocate for Fiesta Mart as its broker.

63.     For example, in September 2018, Willis sent materials reflecting that both the affiliated forensic accountants recommended by Willis (and that Willis had encouraged Fiesta Mart to hire) and those at MDD had agreed to employ a $250,000 deductible in their estimates of the Harvey Loss. That figure is different from the $100,000 deductible that would otherwise apply to Flood losses at the subject Fiesta Mart stores pursuant to paragraph 5(f) of the Primary Policies, and is consistent with the $250,000 deductible set by Endorsement A1, the endorsement that applies "[w]ith respects to the entity of, Fiesta Mart."

64.     At no point did Willis sever its relationship with Fiesta Mart or give any indication to Fiesta Mart that Willis was working to help ACON recover Fiesta Mart's insurance proceeds.

65.     Fiesta Mart had no knowledge that ACON had filed its own Second Proofs. Fiesta Mart continued to ask Willis for help in filing Second Proofs for its Harvey Loss, as Willis had assisted Fiesta Mart in filing the First Proofs.

66.     Willis initially took the tactic of simply ignoring Fiesta Mart's requests. Finally, in September 2018, after much delay, Willis responded and notified Fiesta Mart that Willis had chosen to help ACON abscond with Fiesta Mart's insurance proceeds.

67.     Willis made sure that ACON, not Fiesta Mart, would receive these proceeds by ignoring Fiesta Mart's requests for help with the claims subject to the Second Proofs until ACON had already received payment.

- 12 -

68.     On information and belief, ACON received $4,780,347 in insurance proceeds under the Primary Policies respecting the Harvey Loss sought by the Second Proofs.

69.     Prior to this disclosure, Willis never advised or intimated to Fiesta Mart that ACON (not Fiesta Mart) allegedly held the payout and other rights under the policies. In fact, Willis had represented the exact opposite. For example, Willis told the insurance carriers to address the check for the first proof of claim to Fiesta Mart. And when Fiesta Mart agreed to the portfolio policies, it did so based in part on Willis' representation that Fiesta Mart would be fully protected as an insured. Willis never indicated at any time that ACON would have a superior right to proceeds due to recompense for damages to Fiesta Mart stores.

70.     If Fiesta Mart had known that Willis believed that ACON would have a superior right to insurance proceeds for claims of damage to Fiesta Mart's stores, Fiesta Mart would not have used Willis as its broker or agreed to the portfolio policies.

71.     If Fiesta Mart had known that Willis would divert insurance proceeds to ACON or otherwise divert proceeds away from Fiesta Mart, Fiesta Mart would not have used Willis as its broker or agreed to the portfolio policies.

72.     If Fiesta Mart knew that Willis would breach its duties and obligations as a broker, including ignoring emails and telephone calls from Fiesta Mart seeking advice from Willis about its insurance needs, Fiesta Mart would not have used Willis as its broker or agreed to the portfolio policies.

73.     Willis not only made knowing and negligent misrepresentations to Fiesta Mart, but it also breached its contractual obligation to "promptly inform" Fiesta Mart about any conflicts of interest. Willis said nothing to Fiesta Mart about its insurance proceeds going directly to ACON

under the insurance policies it secured for Fiesta Mart until ACON filed the Second Proofs and until after ACON had already been paid.

74.    Fiesta Mart was harmed by misrepresentations, breach of duties, and breach of the Willis Terms and Conditions. Fiesta Mart lost $4,780,347 in insurance proceeds owed to it.

75.    Fiesta Mart was forced to engage in long and costly litigation with ACON to try to recoup these proceeds. Fiesta Mart's dispute with ACON ended in a settlement on February 14, 2020. Fiesta Mart obtained recovery of some of the insurance proceeds through that action, but has not been made whole.

76.    Fiesta Mart is owed millions of dollars in unrecovered policy proceeds, amounts attributable to the delay, and attorneys fees and costs related to the improper payment to ACON made at Willis' behest and with Willis' assistance.

**H.    Willis Ignores its Insured, Fiesta Mart, as Fiesta Mart Seeks its Assistance for Remaining Harvey Loss Coverage**

77.    On June 23, 2020, Fiesta Mart Chief Financial Officer Jeff Hook sent a letter to Fiesta Mart's assigned Willis contacts, Blaine Conant and Nancy Collins. *See* Letter from J. Hook to B. Conant and N. Collins, Ex. 3.

78.    Mr. Hook informed Mr. Contant and Ms. Collins that Fiesta Mart had "incurred substantial amounts for repair, replacement and reinstatement of its store #23 located at 9419 Mesa Drive, Houston, TX ("FM#23") and expects to incur more in the future." *See* emails from J. Hook to B. Conant and N. Collins, Ex. 4. Mr. Hook continued, "I would like to set up a call with you this week to discuss (i) our restoration and repair efforts at FM#23 and (ii) the submittal process to receive the depreciation holdback for FM#23, both now and in the future." *Id.* Fiesta Mart is owed approximately $6.6 million in insurance proceeds related to depreciation holdback for Store #23.

- 14 -

79.      As of June 30, 2020, Mr. Conant and Ms. Collins had not responded to Mr. Hook. Mr. Hook sent another email on that date, asking Mr. Contant and Ms. Collins again to "please advise." *Id.* Willis still did not respond. So, on July 10, 2020, Mr. Hook emailed them once again stating, "[c]an you please respond to my emails? If you are no longer the Willis contact persons for Fiesta Mart, please provide me with the contact information for our new representative." *Id.* As of the date of this filing, Fiesta Mart has still not received a response from Willis.

80.      Willis' failure to respond to Fiesta Mart's inquiry is a breach of the Terms and Conditions, which require Willis to provide Fiesta Mart with accurate timely facts, information and direction, and promptly respond to Fiesta Mart's requests for coverage information. *See* Ex. 1 at 1, 2.

81.      Willis' failure to respond to Fiesta Mart also breaches its duties under the Texas Insurance Code.

82.      Given what happened with the Second Proofs, Fiesta Mart on information and belief believes that Willis may be once again working against Fiesta Mart's interests. In any event, Willis is blocking Fiesta Mart from receiving the depreciation holdback it is entitled to by ignoring Fiesta Mart's multiple requests for assistance; Willis, by delaying, leaves Fiesta Mart at risk that the insurance carriers will claim lack of diligence or otherwise seek to minimize Fiesta Mart's recovery of proceeds owed under the policies.

83.      Fiesta Mart has suffered damages due to delays because of Willis' refusal to act.

### First Cause of Action
### (Violation of Tex. Ins. Code §§ 541.051 and 541.061)

84.      Fiesta Mart realleges the material facts alleged in the preceding paragraphs as if set forth fully herein.

85.     Willis knowingly made statements misrepresenting the terms of the policies it secured for Fiesta Mart.

86.     Willis knowingly made statements misrepresenting the benefits or advantages promised by the policies it secured for Fiesta Mart.

87.     Willis knowingly made untrue statements of material fact.

88.     Willis knowingly made statements in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

89.     Willis knowingly failed to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made.

90.     Fiesta Mart is entitled to three times its actual damages because Willis knowingly committed the acts complained of pursuant to Tex. Ins. Code § 541.152.

## Second Cause of Action
## (Breach of Contract)

91.     Fiesta Mart realleges the material facts alleged in the preceding paragraphs as if set forth fully herein

92.     The Terms and Conditions are a valid, enforceable contract.

93.     Fiesta Mart has performed its obligations under the Terms and Conditions.

94.     Willis breached the Terms and Conditions by failing to 1) notify Fiesta Mart of a conflict of interest, 2) provide Fiesta Mart with accurate timely facts, information and direction, and 3) promptly respond to Fiesta Mart's requests for coverage information.

95.     Willis' breach of contract has resulted in millions of dollars in losses for Fiesta Mart.

### Third Cause of Action
### (Negligence/Negligent Misrepresentation)

96.     Fiesta Mart realleges the material facts alleged in the preceding paragraphs as if set forth fully herein.

97.     Willis made misrepresentations to Fiesta Mart in the course of Willis' business or in a transaction in which Willis had an interest.

98.     Willis provided false information for the guidance of Fiesta Mart.

99.     Willis failed to exercise reasonable care or competence in obtaining or communicating information to Fiesta Mart.

100.    Fiesta Mart's reliance on Willis' representations was justifiable given Willis' expertise as an insurance broker.

101.    Willis' negligent misrepresentation proximately caused Fiesta Mart to suffer injuries.

### Attorney Fees and Expenses

102.    Fiesta Mart has been required to retain attorneys to protect its rights and prosecute this claim. Pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 and Tex. Ins. Code § 541.152, Plaintiff is entitled to recover its reasonable attorney fees and costs necessarily expended in this matter.

### Conditions Precedent

103.    All conditions precedent to Fiesta Mart's prayer for relief have been performed or occurred.

### Request for Disclosure

104.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Fiesta Mart requests that Defendant disclose the information and materials listed in Rule 194.2 within thirty (30) days.

## Jury Demand

105.    Fiesta Mart demands a trial by jury with regard to all issues of fact in relation to its

claims and causes of action asserted herein or in any amended or supplemental pleading.

## Prayer for Relief

Fiesta Mart respectfully requests, after a final hearing or trial, the Court enter judgment

against Defendants and award to Academy its actual damages, treble damages, pre- and post-

judgment interest, attorney's fees and court costs, and all other relief at law or in equity to which

it is entitled.


Dated:  September 4, 2020                    Respectfully submitted,


                                             */s/ Tracy N. LeRoy*
                                             Tracy N. LeRoy
                                             State Bar No. 24062847
                                             Rhuju Vasavada
                                             State Bar No. 24088579
                                             YETTER COLEMAN LLP
                                             811 Main Street, Suite 4100
                                             Houston, Texas 77002
                                             (713) 632-8000
                                             (713) 632-8002
                                             tleroy@yettercoleman.com
                                             rvasavada@yettercoleman.com

                                             *Attorneys for Plaintiff*

- 18 -

# EXHIBIT 1

**Willis Towers Watson I.I'I'I.I**

## Standard Terms and Conditions for U.S. Property & Casualty Retail Accounts

Please note the following terms and conditions related to your decision to utilize Willis Towers Watson to purchase insurance coverage, products and/or services:

### Services and Responsibilities

The services we provide to you will rely in significant part on the facts, information and direction provided by you or your authorized representatives. In order to make our relationship work, we must each provide the other with accurate and timely facts, information and direction as is reasonably required. You must provide us with complete and accurate information regarding your loss experience, risk exposures, and changes in the analysis or scope of your risk exposures and any other information reasonably requested by us or insurers. It is important that you advise us of any material changes in your business operations that may affect our services or the insurance coverages we place for you. A factor or circumstance is material if it would influence the judgment of a prudent insurer in determining premium and whether or not they would underwrite the risk. Therefore, all information which is material to your coverage requirements or which might influence insurers in deciding to accept your business, finalizing the terms to apply and/or the cost of cover, must be disclosed. Failure to make full disclosure of material facts might potentially allow insurers to avoid liability for a particular claim or to void the contract. This duty of disclosure applies equally at renewal of your existing coverage and upon placement of new lines of coverage. Willis Towers Watson will not be responsible for any consequences which may arise from any delayed, inaccurate or incomplete information.

We will assess the financial soundness of the insurers we recommend to provide your coverages based on publicly available information, including that produced by well-recognized rating agencies. Upon request, we will provide you with our analysis of such insurers. We cannot, however, guarantee or warrant the solvency of any insurer or any intermediary that we may use to place your coverage.

If you have a multi-year policy, it is important that you understand the limitations associated with the coverage options and the possibility that the financial strength of the carrier may change throughout the term of the policy. We recommend that you review the insurer's ratings for any downgrades during the term of this multi-year policy.

The final decisions with respect to all matters relating to your insurance coverages, risk management, and loss control needs and activities are yours. We will procure the insurance coverage chosen by you, prepare or forward insurance binders, and review and transmit policies to you.

If your insurance risks are in more than one jurisdiction, we, where required, will liaise between you and insurers to agree how to apportion the premium between applicable jurisdictions, and the amount of insurance premium tax payable in each jurisdiction. In providing such services, Willis Towers Watson is acting in its capacity as an insurance

**Willis Towers Watson I.I'I'I.I**

broker. You should seek your own advice in relation to such tax laws where you consider it necessary. We will not be liable to you should the apportionment of premium or amount of tax payable under the policy be challenged by any tax authority. In addition, we will not be liable to you should the insurers fail, or refuse, to collect and pay such insurance premium tax to the relevant authorities.

We will review all binders, policies and endorsements for the purpose of confirming their accuracy and conformity to negotiated specifications and your instructions and advise you of any errors in, or recommended changes to, such policies. You agree that you will also review all such documents and advise us of any questions you have or of any document or provision which you believe may not be in accordance with your instructions as soon as possible, and in no event longer than two weeks, after you receive them. Your coverage is defined by the terms and conditions detailed in your insurance policies and endorsements. Your review of these documents, and any review you may seek from outside legal counsel or insurance consultants, is expected and essential.

We will meet, as requested by you, with your representatives to explain coverage and policies. We will promptly respond to your requests for coverage information, analysis of changing market conditions, and assistance in reporting subsequent changes in information to insurance companies and service providers.

In our capacity as insurance brokers, we do not provide legal or tax advice. We encourage you to seek any such advice you want or need from competent legal counsel or tax professionals.

## Confidentiality

We will treat information you provide us in the course of our professional relationship as confidential and will use it only in performing services for you, except as directed by you or stated herein. We may share this information with third parties as may be required to provide our services. We may also disclose this information to the extent required to comply with applicable laws or regulations or the order of any court or tribunal. We may share this information with other affiliated Willis Towers Watson companies in order to help provide our services and for matters connected with the management, development or operation of our and their business, and to the extent we do so, any such affiliated Willis Towers Watson companies will also keep your information confidential subject to our agreement with you. By providing us with data, you agree and represent that you are fully authorized to possess that data and to provide it to us, and further that we are fully authorized to obtain, maintain, process and transfer such data in a commercially reasonable manner and as we reasonably deem advisable in order to provide our services. You also agree that we may aggregate and anonymise your information and may disclose to third parties certain anonymised or industry-wide statistics or other information which may include information relating to you, but that we will not, without your consent, reveal any information specific to you other than on an anonymised basis and as part of an industry or sector-wide comparison. In our use of the information that you provide us, we agree that we will comply with all applicable privacy laws, and that we have

**WillisTowersWatson I.I'I'I.I**

implemented and will maintain commercially reasonable and appropriate security measures in order to protect sensitive information from unauthorized use or disclosure. Records you provide us will remain your property and will be returned to you upon request, although we will have the right to retain copies of such records to the extent required in the ordinary course of our business or by law. You will treat any information we provide to you, including data, recommendations, proposals, or reports, as confidential, and you will not disclose it to any third parties. You may disclose this information to the extent required to comply with applicable laws or regulations or the order of any court or tribunal. We retain the sole rights to all of our proprietary computer programs, systems, methods and procedures and to all files developed by us.

Willis Towers Watson represents and warrants that, with respect to the personal information of any Massachusetts resident, (1) it has and is capable of maintaining appropriate security measures to protect Personal Information consistent with 201 CMR 17.00 and any applicable federal regulations; and (2) as of the Agreement Effective Date, it has and will at all times during the term of this Agreement, maintain a comprehensive written information security program that complies with applicable privacy and data security laws. Willis Towers Watson's information security program shall contain at least the following:

- Reasonable restrictions upon physical access to records containing personal information and storage of such records and data in locked facilities, storage areas or counters.

- Regular monitoring to ensure that the comprehensive information security program is operating in a manner reasonably calculated to prevent unauthorized access to or unauthorized use of personal information; and upgrading information safeguards as necessary to limit risks.

- Reviewing the scope of the security measures at least annually or whenever there is a material change in business practices that may reasonably implicate the security or integrity of records containing personal information.

- Documenting responsive actions taken in connection with any incident involving a breach of security, and mandatory post-incident review of events and actions taken, if any, to make changes in business practices related to protection of personal information.

## Carrier Quotes

The quotes we have provided to you are based upon the information that you have provided to us. If you discover that previously submitted information is inaccurate or incomplete, please advise us immediately so that we can attempt to revalidate terms with insurers.

**WillisTowersWatson I.I'I'I.I**

A carrier quote is an offer to provide coverage. Offers can be modified or withdrawn prior to your acceptance through your order to bind coverage. The quote itself is not a legally binding commitment or a confirmation of actual coverage. Should you choose to bind coverage, we will secure a formal commitment, typically in the form of a binder on a form issued or approved by the carrier(s) at issue.

## Compensation and Disclosure

Willis Towers Watson is an insurance producer licensed to do business worldwide, including in all 50 states and the District of Columbia. Insurance producers are authorized by their license to work with insurance purchasers and discuss the benefits and terms and conditions of insurance contracts; to offer advice concerning the substantive benefits of particular insurance contracts; to sell insurance; and to obtain insurance for purchasers. The role of an insurance producer in any particular transaction involved one or more of these activities.

The compensation that will be paid to Willis Towers Watson will vary based on the insurance contract it sells. Depending on the insurer and insurance contract you select, compensation may be paid by the insurer selling the insurance contract or by another third party. Such compensation may be contingent and may vary depending on a number of factors, including the insurance contract and insurer you select. In some cases, other factors such as the volume of business Willis Towers Watson provides to the insurer or the profitability of insurance contracts Willis Towers Watson provides to the insurer also may affect compensation. Willis Towers Watson may accept this compensation in locations where it is legally permissible, and meet standards and controls to address conflicts of interest. Because insurers account for contingent payments when developing general pricing, the price you pay for your policies is not affected whether Willis Towers Watson accepts contingent payments or not. If you prefer that we not accept contingent compensation related to your policy, we will request that your insurer(s) exclude your business from their contingent payment calculations.

Upon request, Willis Towers Watson will provide you with additional information about the compensation Willis Towers Watson expects to receive based in whole or in part on your purchase of insurance, and (if applicable) the compensation expected to be received based in whole or in part on any alternative quotes presented to you.

To the extent Willis Towers Watson is compensated by commissions paid to us by insurers, they will be earned for the entire policy period at the time we place policies for you. We will be paid the commission percentage stated for the placement of your insurance as indicated, and will receive the same commission percentage for all subsequent renewals of this policy unless we negotiate a different commission percentage with you.

Willis Towers Watson negotiates commission rates with certain insurers on a corporate level. If the rate on your placement is lower than the negotiated rate, Willis Towers Watson will collect the difference directly from the insurer. These payments will not

**WillisTowersWatson I.I'I'I.I**

increase the cost of your insurance or otherwise impact your premium or rates. These negotiated rates are detailed at: http://www.willis.com/About_Willis/The_Willis_Way/Commission_Rates/.

WillPLACE, a proprietary online tool, provides Willis Towers Watson brokers with access to global placement information so that we can seek to develop solutions for you with appropriate markets at competitive prices and terms. Some insurers pay Willis Towers Watson a fee for annual reporting on their book of business. Some of these insurers also pay Willis Towers Watson an additional fee for more detailed reporting on placements matched through the WillPLACE system. Any insurer payments related to the WillPLACE system will not increase the cost of your insurance.

Willis Towers Watson develops panels of insurers in certain market segments. Participating insurers are reviewed on a variety of factors. Commission rates on panel placements may be higher than rates paid on business placed outside of the panel process. Willis Towers Watson discloses its commission rates to clients on quotes obtained through the panel process prior to binding the coverage. In some instances, insurers pay an administration fee to participate in the panel process, or for additional reporting. Your Willis Towers Watson broker will provide you with additional information on Willis Towers Watson Panels upon request.

Where permitted by applicable law, Willis Towers Watson may assess a policy service fee. The fee is on a per-policy basis and is calculated on the premium amount. The policy service fee is compensation to Willis Towers Watson for such value-added services and resources including dedicated industry practices, technical resources, placement support and our strategic outcomes practices. The fee is not required by any insurer or regulator, nor is it included in the premium charged. It will be listed separately on your invoice. It is not necessary to procure a policy to obtain many of these and other services on a consultancy basis for a separate fee.

In some cases the use of a wholesale broker may be beneficial to you. We will not directly or indirectly place or renew your insurance business through a wholesale broker unless we first disclose to you in writing any compensation we or our corporate parents, subsidiaries or affiliates will receive as a result.

If wholesalers, underwriting managers or managing general agents have a role in providing insurance products and services to you, they will also earn and retain compensation for their role in providing those products and services. If any such parties are corporate parents, subsidiaries or affiliates of ours, any compensation we or our corporate parents, subsidiaries or affiliates will receive will be included in the total compensation we disclose to you. If such parties are not affiliated with us, and if you desire more information regarding the compensation those parties will receive, please contact us and we will assist you in obtaining this information.

**Willis Towers Watson I.I'I'I.I**

In the ordinary course of business we may also receive and retain interest on premiums you pay from the date we receive the funds until we pay them to the insurers or their intermediaries, or until we return them to you after we receive such funds.

Commission schedules and other compensation arrangements related to our services on your behalf may change over time and may not always be congruent with your specific policy period. Willis Towers Watson will provide you with accurate information to the best of our knowledge when information is presented to you, but it is possible that compensation arrangements may change over time. We will update you on any changes to our compensation prior to your renewal, and will do so at any time upon your request.

As an insurance intermediary, we normally act for you. However, we or our corporate parents, subsidiaries or affiliates may provide services to insurers for some insurance products. These services may include (a) acting as a managing general agent, program manager or in other similar capacities which give us binding authority enabling us to accept business on their behalf and immediately provide coverage for a risk; (b) arranging lineslips or similar facilities which enable an insurer to bind business for itself and other insurers; or (c) managing lineslips for insurers. Contracts with these insurers may grant us certain rights or create certain obligations regarding the marketing of insurance products provided by the insurers.

We may place your insurance business under such a managing general agent's agreement, binding authority, lineslip or similar facility when we reasonably consider that these match your insurance requirements/instructions. When we intend to do so, we shall inform you and disclose the compensation payable to Willis Towers Watson in connection with the placement of the insurance coverage.

We may also provide reinsurance brokerage services to insurers with which your coverage is placed pursuant to separate agreements with those insurers. We may be compensated by the insurers for these services in addition to any commissions we may receive for placement of your insurance coverages.

Subsidiaries of Willis North America Inc are members of a major international group of companies. In addition to the commissions received by us from insurers for placement of your insurance coverages, other parties, such as excess and surplus lines brokers, wholesale brokers, reinsurance intermediaries, underwriting managers and similar parties (some of which may be owned in whole or in part by our corporate parents or affiliates), may earn and retain usual and customary commissions for their role in providing insurance products or services to you under their separate contracts with insurers or reinsurers.

The insurance market is complex, and there could be other relationships which are not described in this document which might create conflicts of interest. If a conflict arises for which there is no practicable way of complying with this commitment, we will promptly inform you and withdraw from the engagement, unless you wish us to continue to provide the services and provide your written consent. Please let us know in writing if

## Willis Towers Watson **I.I'I'I.I**

you have concerns or we will assume that you understand and consent to our providing our services pursuant to these terms.

The Foreign Account Tax Compliance Act (FATCA) is a U.S. law aimed at foreign financial institutions and other financial intermediaries (including insurance companies and intermediaries such as brokers) to prevent tax evasion by U.S. citizens and residents through offshore accounts. FATCA only applies if you are a U.S. company or individual or a non-U.S. company paying premium through a U.S. insurance broker to a non-U.S. insurer. In order to comply with FATCA, insurance companies and intermediaries must meet certain legal requirements. Insurance placed with an insurance company that is not FATCA compliant may result in a 30% withholding tax on your premium. Where FATCA is applicable to you, in order to avoid this withholding tax, Willis Towers Watson will only place your insurance with FATCA-compliant insurers and intermediaries for which no withholding is required unless you instruct us to do otherwise and provide your advance written authorization to do so. If you do instruct Willis Towers Watson to place your insurance with a non-FATCA compliant insurer or intermediary, you may have to pay an additional amount equivalent to 30% of the premium covering U.S.-sourced risks to cover the withholding tax. If you instruct us to place your insurance with a non-FATCA compliant insurer but you do not agree to pay the additional 30% withholding if required, we will not place your insurance with such insurer. Please consult your tax adviser for full details of FATCA.

### Premium Financing

You may choose to use a premium finance company, property appraiser, structured settlement firm or other similar service provider in connection with the insurance coverages we place for you or the services we provide to you. Premium finance options are not always available, but where they are, Willis Towers Watson currently works with industry leading finance providers for this service. Where permitted by law, we receive a fee for the administrative services we provide those companies. These services include processing the premium finance applications and marketing and sales support they do not have. If you would like more information about the fee we receive, please let us know.

### Premium Payment/Handling of Funds

You agree to provide immediately available funds for payment of premiums by the payment dates specified in the insurance policies, invoices or other payment documents. Failure to pay premium on time may prevent coverage from incepting or result in cancellation of coverage by the insurer. We will not be responsible for any consequences that may arise from any delay or failure by you to pay the amount payable by the indicated date.

We will handle any premiums you pay through us and any funds which we receive from insurers or intermediaries for payment or return to you in accordance with the requirements and restrictions of applicable state and federal insurance laws and regulations and state unclaimed property laws. In some cases we may transfer your funds

**WillisTowers Watson I.I'I'I.I**

directly to insurers. In other cases we may be required to transfer your funds to third parties such as wholesale brokers, excess and surplus lines brokers, or managing general agents for carrying out transactions for you.

## Surplus Lines Placements

If a surplus lines, non-admitted and/or non-licensed insurer was used to quote your coverage, their premium rates, coverage terms and policy forms are not regulated by your home state. Their premium is subject to a surplus lines premium tax which is in addition to the premium. In the event of insolvency you will not be indemnified by any state guaranty fund for unpaid claims.

## Claims

We will inform you of the reporting requirements for claims, including where claims should be reported and the method of reporting to be used, if applicable. Please carefully review any claims-reporting instructions or information we provide. Failure to timely and properly report a claim may jeopardize coverage for the claim. In addition, you should retain copies of all insurance policies and coverage documents as well as claims-reporting instructions after termination of the policies because in some cases you may need to report claims after termination of a policy.

## Ethical Business Practice

We do not tolerate unethical behavior either in our own activities or in those with whom we seek to do business. We will comply with all applicable laws, regulations, and rules.

## Sanctions

The sanctions profile of different business(es) may differ on the basis of a number of complex factors. Whether a sanctions program applies to you depends on a number of factors, including your ownership structure, control, location, and the nationality of your employees. In certain circumstances, the United States and other countries prohibit or restrict companies from conducting business in certain jurisdictions (e.g. Cuba), and can sanction companies who conduct such business. We cannot advise on the applicability of sanctions programs either to you or to insurers nor can we guarantee or otherwise warrant the position of any insurer under existing or future sanctions programs. You should take legal advice as you deem appropriate in this regard.

We will comply with all applicable sanctions programs and you are advised that, where obliged by law, we may have to take certain actions, including freezing of funds held on behalf of parties and individuals as required by sanctions programs.

**Willis Towers Watson I.I'I'I.I**

## Intellectual Property

Willis Towers Watson shall own and retain all right, title, and interest in and to the following (collectively, "Willis Towers Watson Property"): (i) all software, hardware, technology, documentation, and information provided by Willis Towers Watson in connection with the Claim and Risk Control Services; (ii) all ideas, know-how, methodology, models and techniques that may be developed, conceived, or invented by Willis Towers Watson during its performance under this Agreement; and (iii) all worldwide patent, copyright, trade secret, trademark and other intellectual property rights in and to the property described in clauses (i) and (ii) above. Accordingly, all rights in the Willis Towers Watson Property are hereby expressly reserved.

## Electronic Communication

We agree that we may communicate with each other from time to time by electronic mail, sometimes attaching further electronic data as and when the circumstances require attachments. By consenting to this method of communication you and we accept the inherent risks (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices). We each agree, however, that we will employ reasonable virus checking procedures on our computer systems, and we will each be responsible for checking all electronic communications received for viruses. You will also be responsible for checking that messages received are complete. In the event of a dispute neither of us will challenge the legal evidentiary standing of an electronic document, and the Willis Towers Watson system shall be deemed the definitive record of electronic communications and documentation.

Please note that our system blocks certain file extensions for security reasons, including, but not necessarily limited to, .rar, .text, .vbs, .mpeg, .mp3, .cmd, .cpl, .wav, .exe, .bat, .scr, .mpq, .avi, .com, .pif, .wma, .mpa, .mpg, .jpeg. Emails with such files attached will not get through to us; and no message will be sent to tell you they have been blocked. If you intend to send us emails with attachments, please verify with us in advance that our system will accept the proposed form of attachment.

## Other Agreements

To the extent there is a conflict between these terms and conditions and a separately negotiated and signed agreement between you and Willis Towers Watson, the relevant portions of the signed agreement will control.

## Severability

The provisions of this agreement shall be severable and, in the event any provision or portion of any provision shall be construed by any court of competent jurisdiction to be invalid, the same shall not invalidate any other provision of this agreement or the remainder of the enforceable portion of the provision.

**Willis Towers Watson**

## Termination

In the event of termination, we will be entitled to receive and retain any commissions payable under the terms of our commission agreements with the insurers in relation to policies placed by us, whether or not the commissions have been received by us.

Our obligation to render services under the agreement ceases on the effective date of termination of the agreement. Nevertheless, we will process all remaining deposit premium installments on policies in effect at the time of termination. Claims and premium or other adjustments may arise after our relationship ends. Such items are normally handled by the insurance broker serving you at the time the claim or adjustment arises. However, it may be mutually agreed that we will provide services in these areas after the termination of our relationship for mutually agreed additional compensation. The obligations set forth under "Confidentiality" above shall survive any termination of the agreement.

## Choice of Law

Our agreement for services shall be governed by and construed in accordance with the laws of the state in which our office is located.

## Inquiries and Complaints

Your satisfaction is important to us. If you have questions or complaints, please inform the person who handles your account or contact the head of our office. Alternatively, you may call 1-866-704-5115, the toll free number we have set up exclusively for client feedback and complaints.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Conant, Blaine <Blaine.Conant@WillisTowersWatson.com> |
| **Sent:** | Thursday, September 21, 2017 9:54 AM |
| **To:** | Wayne Peterson |
| **Cc:** | Stacy Walker |
| **Subject:** | ACON Investments | Fiesta Mart | Hurricane Harvey | MDD Preliminary RFI |
| **Attachments:** | Preliminary RFI - Acon Investments - Fiesta Mart.pdf |

Wayne,

It was good talking with you yesterday afternoon. I am happy that the Markets agreed to the $6.5M additional advance. Please let me know when the advance payment is received. I have reminded the Markets that the check needs to be addressed to Fiesta and not ACON Investments. If that is not the case when you receive the check, please let me know as soon as possible.

Because of the size and scope of Fiesta's loss the Insurers have hired an accountant (Glen - MDD) and building consultant (John - JS Held) for the purpose of assisting Boris with the adjustment and management of Fiesta's loss. It is important to note that the adjuster, consultants and Insurers do NOT prepare and calculate Fiesta's BI and TE loss. The Insurers review and audit the information that is provided (per the attached Document request) to them by Fiesta. The adjuster is an advocate for the Insurers and the consultants engaged are part of the adjuster's advocacy team. In other words, they work for and are paid by the Insurers. My role is to advocate for Fiesta's best interests regarding coverage issues and quantification of damages. As Boris works for the Insurers, I work for you.

Per our discussion the Policy provides coverage for engaging a Forensic Accountant to assist you in the preparation and calculation of your Business Interruption and Time Element (Civil Authority, Ingress/Egress) loss. The policy limit for this coverage is not to exceed $500,000. The time and expenses incurred by engaging an accountant are paid by the Insurers NOT by Fiesta up to the policy limit of $500,000.

Engaging the services of a Forensic Accountant will save us much time for Stacy, you and me. Doing so will provide allow Fiesta's folks to focus on their current job duties and not become inundated working on the loss while handling current job responsibilities. The accountant engaged would work for Fiesta as a part of our loss team. All loss preparation and calculation will be completed in accordance to Fiesta's strategic initiatives.

There is a distinct difference between an accountant and a forensic account. Many times an Insurance loss is different than a business loss. As such, the presentation and calculation of the BI/TE loss needs to be properly formatted in accordance to the policy wording and requirements. The forensic accountant specializes and is familiar with the accounting aspects of the adjustment process which therefore reduces the time it takes so secure your recovery amount.

WTW does have Forensic Accountants on staff that can assist Fiesta in the preparation and calculation of the BI/TE loss. Because of the size and scope of this loss, I would recommend Dan Frio and Chris Simons to assist us. Dan is a CPA and began his career (doing what Glen Silver MDD is doing for Insurers) reviewing BI/TE losses for Insurers for fifteen years. He has spent the past sixteen years preparing and calculating BI/TE losses for clients.  Chris Simons is also a CPA and began his career in the same way as did Dan. Both have handled losses for clients in the tens of millions of dollars in North America and internationally.

Please let me know if you want me to set up a call with either Dan or Chris.

Thanks

1

**Blaine D. Conant**
**Senior Vice President / Senior Consultant**
**National Property Claims** – Risk Control & Claim Advocacy Practice

**Willis Towers Watson**
801 South Figueroa Street | Suite 800 | Los Angeles, CA 90017
Tel:  213-607-6358
**Cell:  909-618-8209**


blaine.conant@willistowerswatson.com

For information pertaining to Willis' email confidentiality and monitoring policy, usage restrictions, or for specific company registration and regulatory status
information, please visit http://www.willis.com/email_trailer.aspx

We are now able to offer our clients an encrypted email capability for secure communication purposes. If you wish to take advantage of this service or learn more
about it, please let me know or contact your Client Advocate for full details.

# EXHIBIT 3



June 23, 2020

**VIA EMAIL** (Blaine.Conant@WillisTowersWatson.com)

Blaine Conant
Willis Towers Watson
233 S. Wacker Drive, Suite 2000
Chicago, IL 60606

Re:     Insured:          ACON Investments, LLC (ACON Fiesta Holdings, LLC)
        Loss:             Property Damage - Flood/Hurricane Harvey (CAT #1743)
        Location:         Various Fiesta Mart stores – Houston, TX
        Date of Loss:     August 26, 2017
        Policy Period:    06/01/17-18
        VSI File No.:     NYC17648090
        Your Claim No.:   Please advise

Dear Blaine:

I hope you are well in this difficult time. As you know, Fiesta Mart suffered extensive property damage from Hurricane Harvey. Litigation developed between Fiesta Mart and its former owner, ACON Investments, LLC, over rights to insurance recoveries in respect thereof. In February 2020, the parties settled that dispute. As part of that settlement, ACON Investments, LLC and Fiesta Holdings Investments, LLC (f/k/a ACON Fiesta Holdings, LLC) assigned to Fiesta Mart their rights to depreciation holdback in respect of such damage.

Fiesta Mart has incurred substantial amounts for repair, replacement and reinstatement of its store #23 located at 9419 Mesa Drive, Houston, TX ("FM#23") and expects to incur more in the future. I would like to set up a call with you this week to discuss (i) our restoration and repair efforts at FM#23 and (ii) the submittal process to receive the depreciation holdback for FM#23, both now and in the future.

Please let me know of some convenient days and times this week for a call. Thank you.

Very truly yours,

Jack Hook,
Chief Financial Officer

cc:     Nancy Collins (Nancy.C.Collins@WillisTowersWatson.com)

Fiesta Mart, L.L.C. | 5444 Westheimer Road, Suite 101 | Houston, TX 77056 | 713.869.5060

# EXHIBIT 4

**From:**       Jack Hook <jack.hook@blcmarkets.com>
**Sent:**       Friday, July 10, 2020 7:16 PM
**To:**         Conant, Blaine
**Cc:**         Collins, Nancy
**Subject:**    RE: Fiesta Mart

Blaine and Nancy,
Can you please respond to my emails?
If you are no longer the Willis contact persons for Fiesta, please provide me the contact information for our new representative.
Thank you, Jack

---

**From:** Jack Hook
**Sent:** Tuesday, June 30, 2020 9:00 AM
**To:** Conant, Blaine <Blaine.Conant@WillisTowersWatson.com>
**Cc:** Collins, Nancy <Nancy.C.Collins@WillisTowersWatson.com>
**Subject:** RE: Fiesta Mart

Blaine and Nancy,
Please advise.
Thanks, Jack

---

**From:** Jack Hook
**Sent:** Tuesday, June 23, 2020 11:13 AM
**To:** Conant, Blaine <Blaine.Conant@WillisTowersWatson.com>
**Cc:** Collins, Nancy <Nancy.C.Collins@WillisTowersWatson.com>
**Subject:** Fiesta Mart

Hello Blaine,
Please find attached a letter regarding Fiesta Mart.
Regards,


Jack Hook
Chief Financial Officer
Direct Phone: (562) 616-8803
Bodega Latina Corp.
14601B Lakewood Blvd. Paramount, CA 90723
elsupermarkets.com | fiestamart.com



1

DocuSign Envelope ID: 33A5BB3D-C189-4A5E-B819-5AB1E3071143

CSJ:    0048-04-096
PARCEL: 10

CAUSE NO. 20-C-3293

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | CONDEMNATION PROCEEDING |
| | § | |
| V. | § | FILED IN THE |
| | § | COUNTY COURT AT LAW NO. 1 |
| ONE BENT TREE, LTD., A TEXAS | § | |
| LIMITED PARTNERSHIP, ET AL | § | OF ELLIS COUNTY, TEXAS |

## NOTICE OF HEARING

**TO:**    **SUNAMERICA INC., A DELAWARE CORPORATION**
        By Serving:    The Secretary of State of the State of Texas (or any Assistant Secretary of
                    State, or any clerk having charge of the corporation department of the
                    Secretary of State's Office), Registered Agent
                    Statutory Documents Section - Citations Unit
                    1019 Brazos Street, Room 214
                    Austin, Texas 78701

        Principal Home Office Address:        SunAmerica Inc., a Delaware Corporation
                                        One SunAmerica Center, 2nd Floor
                                        Los Angeles, California 90067
                                        Attn: Michael L. Fowler, Vice President

       You are hereby notified that the State of Texas, acting by and through the Texas Transportation Commission, on the __1st__ day of __September__, 2020, filed its First Amended Petition with the Clerk of the above referenced Court of Ellis County, Texas, seeking the condemnation of certain land, a true copy of which First Amended Petition is hereby attached and made for a description of the real property sought to be condemned, for a statement of the purposes of condemnation, and for all other legal purposes.

       Pursuant to Governor Abbott's March 13, 2020 Disaster Declaration due to COVID 19 and the Supreme Court's First Emergency Order Regarding the COVID-19 State of Disaster (Misc. Docket No. 20-9042), the undersigned Commissioners have set the time and place of hearing the parties and said matters as __10__ o'clock __A__.m. on the __4th__ day of __November__, 2020, by telephone or video conference located in said County. Said telephone or video conference may be accessed by calling __(877) 853-5257__ and entering access code __982 3615 6077__, followed by the pound (#) symbol.

       Said telephone or video conference may also be accessed on the internet using the information below:

                                          https://hannareporting.zoom.us/j/98236156077?
            Meeting specific URL:__pwd=NXROQnRDNE1OK2lqTTlYdGtYamxIUT09__
            Meeting number:__982 3615 6077__
            Meeting password:__074752__

Notice is also given that this telephone or video conference may be recorded and/or transcribed.

You are hereby notified to appear at the time and place aforesaid for the purposes of offering any evidence you desire on the issue as to the damage to be assessed against the State of Texas and to be paid to the owners of said property to be condemned.

WITNESS OUR HANDS, this the **2nd** day of **September** 2020.

DocuSigned by:

*[signature]*

5C6563D33BE54E9...

DocuSigned by:

*Richard Norman*

BFA120BA79B24ED...

DocuSigned by:

*Lisa A. Wyatt*

7A2AB5F9E09D40E...

**SPECIAL COMMISSIONERS**

**(SERVICE OF NOTICE ATTACHED)**

DocuSign Envelope ID: 6E923EC2-E46E-4DCF-A23D-F417F24A1D8D

Case 4:20-cv-03484   Document 1-1   Filed on 10/09/20 in TXSD   Page 48 of 66

Filed 8/28/2020 10:58 AM
Krystal Valde
County Cler
Ellis County, Texa

CSJ:        0048-04-096
PARCEL: 10

CAUSE NO. _____ 20-C-3293

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | CONDEMNATION PROCEEDING |
| | § | |
| V. | § | FILED IN THE |
| | § | COUNTY COURT AT LAW NO. **1** |
| ONE BENT TREE, LTD., A TEXAS | § | |
| LIMITED PARTNERSHIP, ET AL | § | OF ELLIS COUNTY, TEXAS |

## ORDER SETTING HEARING BEFORE SPECIAL COMMISSIONERS

We, the undersigned Special Commissioners appointed to assess the damages in the above

proceedings, having met on this date to set a time and place for hearing the parties to said

proceeding, find that the **4th** day of **November** , 2020, is the earliest practicable

date for hearing the parties to such proceedings and that, pursuant to Governor Abbott's March 13,

2020 Disaster Declaration due to COVID 19 and the Supreme Court's First Emergency Order

Regarding the COVID-19 State of Disaster (Misc. Docket No. 20-9042), a telephone or video

conference in this County is the most convenient place for said hearing, and we do set such date

and place for hearing such parties, to commence at **10** o'clock **A** .m. on said date.

Said telephone or video conference may be accessed by calling **(877) 853-5257**

_____ and entering access code **982 3615 6077** , followed by the pound (#)

symbol.

Said telephone or video conference may also be accessed on the internet using the

information below:

Meeting specific URL: **https://hannareporting.zoom.us/j/98236156077?pwd=NXROQnRDNE1OK2lqTTlYdGtYamxIUT09**
Meeting number: **982 3615 6077**
Meeting password: **074752**

Notice is also given that this telephone or video conference may be recorded and/or

transcribed.

WITNESS OUR HANDS, this the **26th** day of **August** , 2020.

DocuSigned by:

5C6563D33BE54E9

DocuSigned by:

*Richard Norman*

BFA120BA79B24FD

DocuSigned by:

*Lisa R. Wyatt*

B17FA5D599C742A

SPECIAL COMMISSIONERS

CSJ:    0048-04-096
PARCEL: 10

CAUSE NO. 20-C-3293

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | CONDEMNATION PROCEEDING |
| | § | |
| V. | § | FILED IN THE |
| | § | COUNTY COURT AT LAW NO. 1 |
| ONE BENT TREE, LTD., A TEXAS | § | |
| LIMITED PARTNERSHIP, ET AL | § | OF ELLIS COUNTY, TEXAS |

## FIRST AMENDED PETITION FOR CONDEMNATION

TO SAID HONORABLE JUDGE:

Now comes the State of Texas, herein called Plaintiff, acting by and through the Texas

Transportation Commission, represented herein by the Attorney General of Texas who, at the

request of the Texas Transportation Commission, brings this action and files this, its First

Amended Petition for the condemnation of the real property and interests or rights pertaining

thereto as hereinafter-described, and shows that the owners of said land and their addresses for

service are as follows: ONE BENT TREE, LTD., A TEXAS LIMITED PARTNERSHIP, by serving

Kenneth H. Mitchell, Registered Agent, 1005 Shady River Court North, Benbrook, Texas 76126;

WELLS FARGO BANK, NATIONAL ASSOCIATION, A CALIFORNIA BANK, SUCCESSOR BY MERGER

WITH WELLS FARGO BANK TEXAS, NATIONAL ASSOCIATION, by serving Corporation Service

Company d/b/a CSC-Lawyers Incorporating Service Company, Registered Agent, 211 East 7th

Street, Suite 620, Austin, Texas 78701-3218; and SUNAMERICA INC., A DELAWARE

CORPORATION, HAS ENGAGED IN BUSINESS IN THE STATE OF TEXAS, HAVING ACQUIRED A

LIENHOLDER INTEREST IN REAL PROPERTY LOCATED WITHIN THE STATE OF TEXAS, DESCRIBED IN

THAT CONSTRUCTION DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING AND

SECURITY AGREEMENT DATED MAY 1, 2001, RECORDED MAY 10, 2001, UNDER INSTRUMENT NO.

0110567 (VOL. 1779, PG. 1184), OFFICIAL PUBLIC RECORDS OF ELLIS COUNTY, TEXAS; AND THAT

CONSTRUCTION ASSIGNMENT OF LEASES AND RENTS DATED MAY 1, 2001, RECORDED MAY 10, 2001, UNDER INSTRUMENT NO. 0110570 (VOL. 1779, PG. 1276), OFFICIAL PUBLIC RECORDS OF ELLIS COUNTY, TEXAS, SAID LIEN INTEREST RELATING TO REAL PROPERTY A PART OF WHICH IS THE SUBJECT OF THIS EMINENT DOMAIN PROCEEDING, AND WHICH FOREIGN CORPORATION IS NOT REGISTERED TO DO BUSINESS WITHIN THE STATE OF TEXAS PURSUANT TO TEXAS FINANCE CODE SECTION 201.102 OR TEXAS BUSINESS ORGANIZATIONS CODE SECTION 9.001 AND HAS NOT DESIGNATED OR MAINTAINED A RESIDENT AGENT FOR SERVICE OF PROCESS OR A REGISTERED OFFICE PURSUANT TO TEXAS BUSINESS ORGANIZATIONS CODE SECTION 5.201, THEREBY RENDERING PLAINTIFF UNABLE TO EFFECT SERVICE UNDER TEXAS CIVIL PRACTICE AND REMEDIES CODE SECTION 17.028, THEREFORE UNDER TEXAS CIVIL PRACTICES AND REMEDIES CODE SECTION 17.044 THE SECRETARY OF STATE IS AN AGENT FOR SERVICE OF PROCESS ON SUCH NONRESIDENT CORPORATION, AND PRINCIPAL HOME OFFICE ADDRESS OF SUCH NONRESIDENT CORPORATION IS: SUNAMERICA INC., A DELAWARE CORPORATION, ONE SUNAMERICA CENTER, 2ND FLOOR, LOS ANGELES, CALIFORNIA 90067, ATTN: MICHAEL L. FOWLER, VICE PRESIDENT, by serving The Secretary of State of the State of Texas (or any Assistant Secretary of State, or any clerk having charge of the corporation department of the Secretary of State's Office), Registered Agent, Statutory Documents Section - Citations Unit, 1019 Brazos Street, Room 214, Austin, Texas 78701, hereinafter called Defendant (whether one or more) or called owner (whether one or more) and shows as follows:

**1.**

It is intended that discovery, if any, will be conducted under Level 3.

**2.**

That Defendant is the owner of the real property situated in Ellis County, Texas, as described in Exhibit "A" attached hereto and incorporated herein for all purposes.

**3.**

The Texas Transportation Commission has found that in order to promote the public safety, to facilitate the safety and movement of traffic, and to preserve the financial investment of the public in its highways, public necessity requires the laying out, opening, constructing, reconstructing, maintaining, widening, straightening, extending, and operating of controlled access highways in the State of Texas as a part of the State highway system at such locations as are determined necessary by such Commission; that the Texas Transportation Commission has further found and determined that the tract(s) of land and improvements, if any, described in Exhibit "A" is/are suitable for public use for such purposes on the State highway designated as IH 35E, and it is intended to use said land for said purposes and it is necessary to acquire the fee simple title to said land, and improvements, if any, as provided by law, to be used on said State highway designated in Exhibit "A", as a part of the State highway system to be laid out, opened, constructed, reconstructed, maintained, widened, straightened, extended, and operated thereon. Plaintiff, in the exercise of the police power for the preservation of human life and safety, and under existing laws, has designated said highways as a controlled access highway pursuant to Title 6 of the Tex. Transp. Code Ann. (Vernon 2009), in accordance with Texas Transportation Code Section 203.031; and where there is adjoining real property remaining after acquisition of a parcel, the roads are to be constructed, reconstructed or improved as part of the highway facility with the right of ingress and egress to or from the remaining real property adjoining the highway facility to be permitted unless specifically denied, as designated and set forth on the attached Exhibit "A". Plaintiff is entitled to

condemn the fee simple title in such land and improvements, if any, for said purposes aforesaid and asks that the same be condemned for such purposes aforesaid; provided, however, there is excluded from said estate to be condemned all the oil, gas and sulphur which can be removed from beneath said land aforesaid without any right whatever remaining to the owner of such oil, gas and sulphur of ingress or egress to or from the surface of said land and improvements, if any, for the purpose of exploring, developing, drilling, or mining of the same.

## 4.

The Landowner's Bill of Rights was sent to the landowner in accordance with Texas Property Code Section 21.0112.

## 5.

That Plaintiff made a bona fide offer to acquire the property described in Exhibit "A" from the property owner voluntarily in accordance with Texas Property Code Section 21.0113.

## 6.

That Plaintiff and Defendant have been unable to agree upon the value of said real estate and interest therein to be condemned or the damages occasioned by the acquisition of such land and improvements, if any, and asks that Special Commissioners be appointed as provided by law to assess the damages of the owner.

## 7.

Pursuant to Texas Property Code Section 21.021, Plaintiff seeks an order from the court granting it immediate possession of the property described in Exhibit "A", pending the results of further litigation, upon its deposit of the amount of damages awarded by the Special Commissioners, and the costs awarded to the property owner(s), if any, with the court subject to the order of the property owner(s).

## **PRAYER**

WHEREFORE, the State of Texas respectfully prays that three disinterested real property owners be appointed as Special Commissioners to assess the damages of the owner and file their decision all as provided by law, to the end that Plaintiff may have a final judgment or decree of condemnation vesting in the State of Texas the fee simple title to said land and improvements, if any, except as above provided as to oil, gas and sulphur, for writ of possession, for costs of suit, prejudgment and post-judgment interest on the amount of money that the Award of Special Commissioners exceeds the amount of money awarded by the judgment of the Defendant herein, and for such other and further relief, general and special, at law or in equity, that Plaintiff may show itself justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

ESTEBAN S.M. SOTO
Chief, Transportation Division

/s/ *Charles E. Maddox*
CHARLES E. MADDOX
Assistant Attorney General
State Bar No. 24096716
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1668
(512) 936-0888 - Facsimile
*charles.maddox@oag.texas.gov*
**ATTORNEY FOR PLAINTIFF,
THE STATE OF TEXAS**

EXHIBIT "A"

County: Ellis
Highway: IH 35E
Station: 1226+71.96 to 123373.61
R.O.W. CSJ: 0048-04-096
CCSJ: 0048-04-090

## Parcel 10

Being a 0.065 acre (2,853 square foot) tract of land situated in the City of Waxahachie, County of Ellis, Texas, in the John Fifer Survey, Abstract No. 351, the Alfred Polk Survey, Abstract No. 827 and being out of a called 62.29-acre tract of land deeded to One Bent Tree, LTD., recorded in Volume 1779, Page 1085, Official Public Records, Ellis County, Texas (O.P.R.E.C.T.), also being Lot 1, Block 1, Bent Tree, recorded in Cabinet E, Slide 378, Plat Records, Ellis County, Texas and being more particularly described by metes and bounds as follows:

**COMMENCING** at a found 1/2-inch capped iron rod stamped "Geer" at the East corner of said Lot 1 and an ell corner of Lot 2 said Bent Tree;

**THENCE** South 73 Degrees 02 Minutes 56 Seconds West, along the Southeast line of said Lot 1 and the Northwest line of said Lot 2, a distance of 803.25 feet a set 5/8-inch iron rod 2-inch pink plastic cap stamped "TxDOT Survey Marker, Right of Way Monument"** at Station 1233+73.61, 170.00 feet Right, and the **POINT OF BEGINNING** (N 6,829,012.11, E 2,472,287.98);

1) **THENCE** South 73 Degrees 02 Minutes 56 Seconds West, along the Southeast line of said Lot 1 and the Northwest line of said Lot 2, a distance of 10.00 feet to a found "X" cut for the South corner of said Lot 1, the West corner of said Lot 2 and along the Existing East Right-of-Way line of IH 35E, deeded to State of Texas, recorded in Cause No. 22635, Commissioners Court, Ellis County, Texas;

2) **THENCE** North 16 Degrees 57 Minutes 07 Seconds West, along the West line of said Lot 1 and the Existing East Right-of-Way line of IH 35E, a distance of 305.55 feet to a set 5/8-inch iron rod with plastic cap stamped "Cobb Fendley & Associates";

3) **THENCE** North 14 Degrees 33 Minutes 22 Seconds West, along the West line of said Lot 1 and the Existing East Right-of-Way line of IH 35E, deeded to State of Texas, recorded in Volume 452, Page 91, D.R.E.C.T., a distance of 71.64 feet to a set 5/8-inch iron rod 2-inch pink plastic cap stamped "TxDOT Survey Marker, Right of Way Monument"** at Station 1237+50.75, 163.00 feet Right at the Proposed East Right-of-Way line of IH 35E;

4) **THENCE** South 18 Degrees 41 Minutes 01 Seconds East, along the Proposed East Right-of-Way line of IH 35E, a distance of 231.81 feet to a set 5/8-inch iron rod 2-inch pink plastic cap stamped "TxDOT Survey Marker, Right of Way Monument"** at Station 1235+19.04, 170.00 feet Right.;

5) **THENCE** South 16 Degrees 57 Minutes 06 Seconds East, along the Proposed East Right-of-Way line of IH 35E, a distance of 145.43 feet to the **POINT OF BEGINNING**, containing 0.065 acre (2,853 square feet) of land, more or less.

EXHIBIT "A"
Page 1 of 3

EXHIBIT "A"

County: Ellis
Highway: IH 35E
Station: 1226+71.96 to 123373.61
R.O.W. CSJ: 0048-04-096
CCSJ: 0048-04-090

Basis of bearing is the Texas State Plane Coordinate System, North Central Zone (4202), North American Datum 1983, NAD 83 (2011) Epoch 2010 with all distances and coordinates adjusted to surface by project surface factor of 1.000072449.

This description is accompanied by a parcel map of even date.

** The monument described and set may be replaced with the State's Type II right-of-way marker upon the completion of the construction project, under the supervision of a RPLS, either employed or retained by the State.

That I, Timothy A. Frost, a Registered Professional Land Surveyor in Texas, hereby states that this survey was made from an actual on the ground survey made on May 2018 under my supervision, that all monuments exist as shown hereon and this survey substantially conforms with the current professional and technical standards as set forth by the Texas Board of Professional Land Surveying.

*Timothy A. Frost* 11/26/18

Timothy A. Frost
Texas Registered Professional Land Surveyor #5316
Cobb, Fendley & Associates, Inc.
University Centre I
1300 S. University Dr., Suite 300
Fort Worth, TX 76107
TBPLS Firm Number 10194167

EXHIBIT "A"
Page 2 of 3



EXHIBIT "A"
Page 3 of 3

DOCUMENT 3

10/5/2020 4:14 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 46884164
By: Brenda Espinoza
Filed: 10/5/2020 4:14 PM

## CAUSE NO. 2020-53693

| | | |
|---|---|---|
| **FIESTA MART, LLC** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **WILLIS OF ILLINOIS, INC. and** | § | |
| **WILLIS TOWERS WATSON US, LLC** | § | **61ST JUDICIAL DISTRICT** |
| | § | |
| **Defendants.** | § | |

### DEFENDANTS WILLIS OF ILLINOIS, INC. AND WILLIS TOWERS WATSON US, LLC'S ORIGINAL ANSWER, GENERAL DENIAL, SPECIAL EXCEPTIONS AND AFFIRMATIVE DEFENSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendants WILLIS OF ILLINOIS, INC. and WILLIS TOWERS WATSON US, LLC (collectively, "Willis" or "Defendants"), and pursuant to TEXAS RULES OF CIVIL PROCEDURE 91, 92, and 94 file this their Original Answer, General Denial, Affirmative Defenses, and Special Exceptions, and, in support, would respectfully show unto the Court as follows:

### I.
### GENERAL DENIAL

As authorized by Rule 92 of the TEXAS RULES OF CIVIL PROCEDURE, Defendants generally deny all of the material allegations contained in Plaintiffs' Original Petition and in any subsequent Petitions, and demand strict proof thereof.

### II.
### DISCOVERY PLAN

The guidelines and constraints of Level Three classification under Texas Rule of Civil Procedure 190 are proper and controlling for this lawsuit. Defendants object to Plaintiffs' representation that Level Two classification is appropriate or controlling.

**DEFENDANTS' ORIGINAL ANSWER, GENERAL DENIAL,**
**SPECIAL EXCEPTIONS, AND AFFIRMATIVE DEFENSES**

## III.
## SPECIAL EXCEPTIONS

### SPECIAL EXCEPTION NO. 1
### Failure to Specify Maximum Amount of Damages

Willis specially excepts to Plaintiff's Original Petition in its entirety because it fails to specify a maximum amount of damages as required by Texas Rule of Civil Procedure 47(c).

### SPECIAL EXCEPTION NO. 2
### Failure to Set Forth Specific Claims/Facts –
### Article 541 of the Texas Insurance Code

Willis specially excepts to Plaintiff's Original Petition because Plaintiff's vague and indefinite claims regarding Willis' alleged violations of Article 541 of the Texas Insurance Code are deficient.  Plaintiff failed to give Willis notice of the facts and circumstances supporting the alleged Insurance Code violations.  *Subia v. Texas Dept. of Human Serv.*, 750 S.W.2d 827, 829 (Tex. App. – El Paso 1988, no writ) (allegations solely tracking statutory grounds did not give defendants fair notice of facts and circumstances).  Plaintiff should be required to file an amended pleading which sets forth facts to support Plaintiff's claims for Willis' alleged violations of Section 541 of the Texas Insurance Code, as well as damages related thereto.

### SPECIAL EXCEPTION NO. 3
### Failure to Set Forth Specific Claims/Facts – Breach of Contract

Willis specifically excepts to Plaintiff's Original Petition because Plaintiff's vague and indefinite breach of contract claim fails to (1) provide fair notice of facts of the loss or losses allegedly sustained by Plaintiff; (2) provide fair notice of facts showing Plaintiff's alleged loss or losses were covered under the Terms and Conditions; and (3) provide fair notice of the acts and/or omissions of Willis which allegedly amount to a breach of Willis' contractual obligations, if any, to Plaintiff.  *Subia*, 750 S.W.2d at 829 (trial court can order the Plaintiff to specifically plead a cause of action which was originally pleaded in general terms).  As such, Plaintiff should

**DEFENDANTS' ORIGINAL ANSWER, GENERAL DENIAL,**
**SPECIAL EXCEPTIONS, AND AFFIRMATIVE DEFENSES**

be required to amend Plaintiff's claim for breach of contract and state with particularity: (1) facts supporting Plaintiff's alleged loss; (2) facts demonstrating the portion of the losses covered by the Terms and Conditions; (3) facts of the acts and/or omissions by Willis which allegedly amounted to a breach of contractual obligation to Plaintiff; and (4) the maximum amount of damages sought by Plaintiff for Willis' alleged breach of contract.

**SPECIAL EXCEPTION NO. 4**
**Failure to Set Forth Specific Claims/Facts – Negligence/Negligent Misrepresentation**

Willis specially excepts to Plaintiff's Original Petition for failing to plead sufficient facts to provide fair notice of the claims asserted therein.  Plaintiff's pleading alleges that Willis made "misrepresentations" and "provided false information" without pleading the alleged misrepresentations of any facts to support the general claims asserted.  As such Willis lacks information sufficient to prepare its defenses to this cause of action.

**IV.**
**AFFIRMATIVE DEFENSES**

**AFFIRMATIVE DEFENSE NO. 1**
**Failure to State a Claim**

Plaintiff's causes of action against Willis are barred, either in whole or in part, because Plaintiff has failed to state a claim upon which relief can be granted.  Specifically, Plaintiff has failed to sufficiently describe a cause of action for a breach of the Terms and Conditions, or how such claim converts Plaintiff's alleged contractual claim into violation of the Texas Insurance Code by Willis.  Similarly, Plaintiff has not sufficiently identified any "misrepresentations" or made by Willis and/or any "false information" provided to Plaintiff.

**DEFENDANTS' ORIGINAL ANSWER, GENERAL DENIAL,**
**SPECIAL EXCEPTIONS, AND AFFIRMATIVE DEFENSES**

## AFFIRMATIVE DEFENSE NO. 2
### <u>No Proximate Causation</u>

Plaintiff's causes of action against Willis are barred, either in whole or in part, because Willis did not proximately cause Plaintiff to suffer any damages and Plaintiff's damages (if any) were caused by Plaintiff's own actions or the actions of others for which Willis is not responsible.

As set forth in Paragraph 68 of the Original Petition, payment in full of $4,780,347 was made by the Primary Policies insurers.  After such payment was made, Plaintiff initiated a separate lawsuit against ACON Investments, LLC ("ACON") and a settlement agreement was reached, which included a resolution as to which party was entitled to the $4,780,347 in insurance proceeds.  Willis would not have any responsibility for any legal fees or other damages resulting from that separate lawsuit, which were caused by the acts and omissions of Plaintiff and its attorneys who assisted in drafting the Membership Interest Purchase Agreement (wherein Plaintiff agreed that ACON would be entitled to any insurance proceeds for business interruption loss, but neglected to specify how other losses should be handled).

Moreover, effective February 13, 2019, Plaintiff informed Willis that it would no longer use Willis' brokerage or other services, thereby terminating the relationship.  Accordingly, any acts or omissions by Willis in June and July of 2020 did not affect Plaintiff's entitlement to insurance proceeds for depreciation holdback.  Based upon information and belief, Willis understands that Plaintiff has not submitted a proof of loss pertaining to depreciation holdback, thus any allegations concerning entitlement thereto are premature.

### AFFIRMATIVE DEFENSE NO. 3
### Damages Not Caused by Willis

If the damages to Plaintiff occurred as alleged, although it is not so acknowledged, then the damages were directly caused by Plaintiff's own acts and omissions and/or the acts and omissions of individuals or entities for which Willis are not responsible (including, as set forth above, Plaintiff's attorneys who did not specify in the Membership Interest Purchase Agreement how certain insurance losses should be handled), and such acts were the sole cause, sole proximate cause, producing cause, and/or new and independent intervening cause of the alleged damages to Plaintiff.

### AFFIRMATIVE DEFENSE NO. 4
### Offset/Credit

Willis will assert its rights to offset and credit for amounts already paid to Plaintiff by either ACON or other third parties.

### AFFIRMATIVE DEFENSE NO. 5
### Failure to Mitigate/Contribution

Plaintiff may be barred from any recovery from Willis, in whole or in part, due to Plaintiff's failure to mitigate and Plaintiff's contribution to Plaintiff's damages.

### AFFIRMATIVE DEFENSE NO. 6
### Attorneys' Fees and Costs Precluded

Willis denies that they are obligated for the fees and/or costs set forth in Tex. Civ. Prac. & Rem. Code §38.001, et. seq., as awarding such costs and/or fees is not reasonable or just by virtue of the absence of damages.  Moreover, because Defendants Willis Towers Watson US, LLC is a limited liability company, Chapter 38 does not apply at all.  *See* Tex. Civ. Prac. & Rem. Code § 38.001(8) ("A person may recover reasonable attorneys' fees from an individual or corporation …"); *Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173, 176 (N.D. Tex. 1997); *Alta Mesa*

*Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452–55 (Tex. App. – Houston [14th Dist.] April 14, 2016).

### AFFIRMATIVE DEFENSE NO. 7
### <u>Pre- and Post-Judgment Interest Limitations</u>

If pre-judgment interest is recoverable, Willis asserts that it is limited in accordance with Tex. Fin. Code Ann. §304.101 et seq.  If post-judgment interest is recoverable, Willis asserts that it is limited in accordance with Tex. Fin. Code Ann. §304.003(c).

### AFFIRMATIVE DEFENSE NO. 8
### <u>Proportionate Responsibility</u>

Plaintiff's claim for negligence/negligent misrepresentation is barred, in whole or in part, by Tex. Civ. Prac. & Rem. Code Ann. § 33.001, et seq.

### AFFIRMATIVE DEFENSE NO. 9
### <u>Economic Loss Doctrine</u>

Plaintiff's claim for negligence/negligent misrepresentation is barred, in whole or in part, by the economic loss doctrine.  *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) ("parties may be barred from recovering in negligence…for purely economic losses").

### AFFIRMATIVE DEFENSE NO. 10
### <u>Waiver/Release</u>

Plaintiff's claims are barred, in whole or in part, to the extent that their settlement agreement with ACON included a waiver and/or release.

### V.
### <u>OBJECTION TO PLAINTIFF'S RULE 194 NOTICE</u>

Willis objects to Plaintiff's notice pursuant to Rule 194 of the Texas Rules of Civil Procedure as the notice is premature and does not state the proper deadline for Willis to respond. *See* Rule 143.3(a) ("The responding party must serve a written response on the requesting party

**DEFENDANTS' ORIGINAL ANSWER, GENERAL DENIAL,**
**SPECIAL EXCEPTIONS, AND AFFIRMATIVE DEFENSES**

within 30 days after service of the request, except that…a defendant served with a request before the defendant's answer is due need not respond until 50 days after service of the request").

WHEREFORE, PREMISES CONSIDERED, Willis pray that, upon final trial and hearing hereof, Plaintiffs take nothing and that Defendants recover their costs, fees, and expenses, and for such other further relief to which they may show themselves justly entitled, both in law and at equity.

Respectfully submitted,

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**

By:     /s/ Christopher W. Martin
**CHRISTOPHER W. MARTIN**
SBOT #: 13057620
martin@mdjwlaw.com
Niels Esperson Building
808 Travis, 11th Floor
Houston, TX 77002
713-632-1701
713-222-0101 (fax)

**ATTORNEYS FOR DEFENDANTS**
**WILLIS OF ILLINOIS, INC.**
**WILLIS TOWERS WATSON US LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been mailed, e-mailed, telecopied or hand delivered to all attorneys of record, in compliance with the TEXAS RULES OF CIVIL PROCEDURE, on this the 5th day of October, 2020.

/s/ Christopher W. Martin
**CHRISTOPHER W. MARTIN**

**DEFENDANTS' ORIGINAL ANSWER, GENERAL DENIAL,**
**SPECIAL EXCEPTIONS, AND AFFIRMATIVE DEFENSES**