**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **FIESTA MART, LLC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-CV-03484** |
| | § | |
| **WILLIS OF ILLINOIS, INC,** *et. al.* | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS WILLIS TOWERS WATSON MIDWEST, INC.,
F/K/A WILLIS OF ILLINOIS, INC., AND WILLIS TOWERS WATSON US LLC'S
<u>ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Defendants Willis Towers Watson Midwest, Inc., f/k/a Willis of Illinois, Inc. and Willis Towers Watson US LLC (collectively, "Willis"), by and through their undersigned attorneys, hereby answer the First Amended Complaint filed by Fiesta Mart, LLC ("Fiesta Mart" or "Plaintiff"), stating as follows:

**Nature of the Action**

1.      Willis admits that Fiesta Mart is a supermarket chain based in the Houston, Texas area.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 1 of the Complaint and, therefore, denies the same.

2.      Willis admits that certain Fiesta Mart stores suffered damage from Hurricane Harvey.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 2 of the Complaint and, therefore, denies the same.

3.      Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 3 of the Complaint and, therefore, denies the same.

1

4.      Willis admits that it served as insurance broker for Fiesta Mart during and prior to Hurricane Harvey.  Willis admits it assisted Fiesta Mart in securing insurance policies and advising Fiesta Mart regarding claims, including certain claims related to losses suffered as a result of Hurricane Harvey.  Any remaining allegations are denied as stated in paragraph 4.

5.      Willis denies the allegations in paragraph 5 of the Complaint and states that at all relevant times, it acted in the best interests of its client, and did not put its self-interest before that of its client.

6.      The allegations in paragraph 6 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 6 and, therefore, denies the same.

### Jurisdiction and Venue

7.      Paragraph 7 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis admits that it removed this case from State court on the basis of diversity jurisdiction.  Willis denies the allegation that diversity jurisdiction no longer exists.  Based on information and belief, Willis understands that Fiesta Mart sued the wrong Aspen entity, and that the correct Aspen entity – which issued the policy at-issue – is a North Dakota corporation.

8.      Paragraph 8 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis admits that this venue in this Court is proper.

### Parties

9.      Admitted.

10.     Willis admits that Willis Towers Watson US, LLC is a Delaware limited liability company, but states that this is a legacy Towers Watson entity and, therefore, is not the proper entity for Plaintiff's claim.

11.     Willis admits that Willis of Illinois, Inc. is an Illinois corporation, but states that it has merged into Willis Towers Watson Midwest, Inc., which is the proper Defendant entity in this action.

12.     The allegations in paragraph 12 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 12 and, therefore, denies the same.

13.     The allegations in paragraph 13 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 13 and, therefore, denies the same.

14.     The allegations in paragraph 14 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 14 and, therefore, denies the same.  Further responding, Willis incorporates by reference its response to paragraph 7.

15.     The allegations in paragraph 15 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 15 and, therefore, denies the same.

16.     The allegations in paragraph 16 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 16 and, therefore, denies the same.

17.     The allegations in paragraph 17 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 17 and, therefore, denies the same.

18.     The allegations in paragraph 18 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 18 and, therefore, denies the same.

**Relevant Factual Background**

19.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 19 and, therefore, denies the same.

Insurance coverage for property damage to Fiesta Mart stores is important to Fiesta

20.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 20 and, therefore, denies the same.

21.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 21 and, therefore, denies the same.

22.     Willis admits that on or around April 29, 2015, ACON Investments, LLC ("ACON") acquired Fiesta Mart.

23.     Willis admits that it served as insurance broker for ACON in April 2015.  Willis understands that prior to its acquisition by ACON, Fiesta Mart had been using a different insurance broker.

A.     **Willis Became Fiesta Mart's Broker**

24.     Willis admits that Fiesta Mart's property policies were up for renewal on or around April 2016 and that it discussed with Fiesta Mart becoming its broker.

25.     Willis denies the allegations as stated in paragraph 25.  Defendants Willis Towers Watson US, LLC and Willis of Illinois, Inc. – the entities defined by Fiesta Mart as "Willis" – do

4

not employee 45,000 individuals; operate in 140 countries and markets; and have 90 offices, including six in Texas.

26.     Willis denies the allegations as stated in paragraph 26.  The allegations in paragraph 26 do not make a distinction between Defendants Willis Towers Watson US, LLC and Willis of Illinois, Inc. – the entities defined by Fiesta Mart as "Willis" – and other Willis Tower Watson entities.

27.     Willis denies the allegations as stated in paragraph 27.

28.     Willis admits that it provided Fiesta Mart with the standard Terms and Conditions referenced in paragraph 28 (Exhibit 1), which document speaks for itself, and, therefore, Willis denies any characterizations thereof.

29.     Paragraph 29 appears to state representations made by Willis in the Terms and Conditions (Exhibit 1).  That document speaks for itself, and, therefore, Willis denies any characterizations thereof.

30.     To the extent that paragraph 30 attempts to state representations made by Willis in the Terms and Conditions (Exhibit 1), that document speaks for itself, and, therefore, Willis denies any characterizations thereof.  Further responding, Willis admits that as Fiesta Mart's broker, it assisted in procuring coverage, managing claims, and working with insurers, adjusters, and others on Fiesta Mart's behalf.  Willis denies any remaining allegations as stated in paragraph 30.

31.     Willis admits that it discussed features of potential property insurance programs with Fiesta Mart, including the benefits of such property programs, but denies the allegations as stated in paragraph 31.

32.     Paragraph 32 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis admits that Fiesta Mart switched to the portfolio policies on or about April 22, 2016.

**B.      Hurricane Harvey**

33.     Willis admits that on August 25, 2017, Hurricane Harvey made landfall in the Houston, Texas area and caused significant damage, including to certain Fiesta Mart store locations.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 33 and, therefore, denies the same.

34.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 34 and, therefore, denies the same.

35.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 35 and, therefore, denies the same.  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

36.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 36 and, therefore, denies the same.  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

**C.      The Primary Policies**

37.     Willis admits that at the time of Hurricane Harvey, Fiesta Mart was insured under several property policies that Willis had helped secure.  To avoid confusion, Willis will refer to these policies using the same terminology as Fiesta Mart (collectively, the "Primary Policies" and individually, each a "Primary Policy").  Willis states that the Primary Policies,

6

which were not attached to the Complaint, speak for themselves, and therefore, Willis denies any characterizations thereof.

38.     Paragraph 38 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis states that the Primary Policies speak for themselves, and accordingly, Willis denies any characterizations thereof.

39.     Willis states that the Primary Policies, including all endorsements, speak for themselves, and, therefore, Willis denies any characterizations thereof.

40.     Willis states that the Allied World Assurance Company Policy and endorsement referenced in paragraph 40 of the Complaint speaks for themselves, and, therefore, Willis denies any characterizations thereof.

41.     Willis admits that it sent Fiesta Mart invoices for premiums owed under its various policies, and for other taxes and fees.  Fiesta Mart would make payment to Willis, which, in turn, would remit payment to the applicable insurer on Fiesta Mart's behalf.  It is unclear if this is what Fiesta Mart is referring to when it states that Willis "billed" Fiesta Mart.

42.      Willis understands that Fiesta Mart paid the premium associated with the AWAC Policy and incorporates, by reference, its response to paragraph 41.

43.     Willis admits that Fiesta Mart paid the premiums for the Primary Policies and incorporates, by reference, its response to paragraph 41.

44.     Willis denies the allegations as stated in paragraph 44.  Further responding, Willis states that the Primary Policies, including all endorsements, speak for themselves, and, therefore, Willis denies any characterizations thereof.

45.     Willis states that the Master Property Policy referenced in paragraph 45 speaks for itself, and, therefore, Willis denies any characterizations thereof.

46.     Willis admits that it caused certificates of insurance for Fiesta Mart to be issued. Those certificates speak for themselves, and, therefore, Willis denies any characterizations thereof.

47.     Willis admits that each Primary Policy was in force at the time that certain Fiesta Mart stores experienced losses as a result of Hurricane Harvey.  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

**D.     Fiesta Mart Submits the First Proofs of Loss and Willis Ensures that Fiesta Mart is Paid the Proceeds**

48.     Willis states that the Primary Policies referenced in paragraph 48, including all endorsements, speak for themselves, and, therefore, Willis denies any characterizations thereof.

49.     Willis states that the Primary Policies referenced in paragraph 49 speak for themselves, and, therefore, Willis denies any characterizations thereof.

50.     Willis states that the First Partial Proofs of Loss referenced in paragraph 50, which were not attached to the Complaint, speak for themselves, and, therefore, Willis denies any characterizations thereof.   To avoid confusion, Willis will refer to these using the same terminology as Fiesta Mart ("First Proofs").  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

51.     Willis states that the First Proofs referenced in paragraph 51 speak for themselves, and, therefore, Willis denies any characterizations thereof.  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

52.     Willis denies the allegations as stated in paragraph 52 of the Complaint.

53.     Willis denies the allegations as stated in paragraph 53.  Further responding, Willis states that the email referenced in paragraph 53 (Exhibit B) speaks for itself, and, therefore, Willis denies any characterizations thereof.

54.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 54 and, therefore, denies the same.

55.     Willis admits that the Primary Policy insurers adjusted the First Proofs and made a payment of $7.5 million in response to the First Proofs.  Willis lacks knowledge sufficient regarding whether payment was made "directly" to Fiesta Mart.

**E.      Willis Represents that it is on Fiesta Mart's "Team" to seek Insurance Proceeds for Fiesta Mart's Business Interruption Loss**

56.     Willis admits that Fiesta Mart suffered business interruption resulting from Hurricane Harvey.  Further responding, Willis states that the definition of Harvey Loss is vague. Among other things, it does not indicate whether such loss includes depreciation.

57.     Willis states that the Primary Policies speak for themselves, and, therefore, Willis denies any characterizations thereof in paragraph 57.

58.     Paragraph 58 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis states that certain Fiesta Mart stores suffered business interruption caused by Hurricane Harvey.

59.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 59 and, therefore, denies the same.

60.     Willis admits that Matson Driscoll & Damico LLP ("MDD"), which is a forensic accounting firm, was retained by the Primary Policy Insurers with regard to the claim for business interruption losses.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 60 concerning what information was requested of Fiesta

9

Mart by MDD and, therefore, denies the same.  Any remaining allegations in paragraph 60 are denied.

61.     Willis admits that it recommended that Fiesta Mart retain forensic accountants and that it advised Fiesta Mart that Willis Towers Watson offers forensic accounting services.  Further responding, Willis states that the email referenced in paragraph 61 (Exhibit 2) speaks for itself, and, therefore, Willis denies any characterizations thereof.  Willis further notes that Exhibit 2 appears to be incomplete, as it does not include the attachment.  Any remaining allegations are denied as stated in paragraph 61.

**62.**     Willis admits that Fiesta Mart chose to retain Willis Towers Watson to provide forensic accounting services. Any remaining allegations are denied as stated in paragraph 62.

**F.      ACON Sells Fiesta Mart**

63.     Willis admits that on or about April 30, 2018, ACON sold Fiesta Mart to a third-party.  Willis denies the remaining allegations as stated in paragraph 63.

**G.      Willis Directs Fiesta Mart's Insurance Proceeds to ACON**

64.     Willis states that the Second Partial Proofs of Loss referenced in paragraph 64, which were not attached to the Complaint, speak for themselves, and, therefore, Willis denies any characterizations thereof.  To avoid confusion, Willis will refer to these using the same terminology as Fiesta Mart ("Second Proofs").  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

65.     Willis states that the Second Proofs referenced in paragraph 65 speak for themselves, and, therefore Willis denies any characterizations thereof.  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

66.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 66 and, therefore, denies the same.

67.     Willis denies the allegations as stated in paragraph 67.

68.     Willis admits that it acted as insurance broker to Fiesta until February 13, 2019, when Fiesta Mart terminated Willis' services.  Willis denies the remaining allegations as stated in paragraph 68.

69.     The communications, Primary Policies and other "materials" referenced in paragraph 69 speak for themselves, and, therefore, Willis denies any characterizations thereof.

70.     Willis admits that it did not "sever" its relationship with Fiesta Mart, as it understands that term to mean.  Willis provided broker and forensic accounting services to Fiesta Mart until February 13, 2019, when Fiesta Mart terminated Willis.  Willis denies the remaining allegations in paragraph 70.  Further responding, Willis states that it is not responsible for, and has no control over, how insurance funds are distributed.  Those decisions are made by the insurers, not Willis, in accordance with the terms and provisions of the policies that Fiesta Mart received and reviewed.

71.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 71 and, therefore, denies the same. Willis denies the remaining allegations as stated in paragraph 71.  Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

72.     Willis denies the allegations in paragraph 72 of the Complaint.  Willis did not cause insurance proceeds to be paid to ACON.  Willis is not responsible for, and has no control over,

how insurance funds are distributed.  Those decisions are made by the insurers, not Willis, in accordance with the terms and provisions of the policies that Fiesta Mart received and reviewed.

73.     Willis denies the allegations in paragraph 73 of the Complaint.  Willis incorporates, by reference, its response to paragraph 72.

74.     Based on information and belief, Willis understands that the Primary Policy insurers made a payment of $4,780,347 in response to the submission of the Second Proofs. Further responding, Willis states that the definition of Harvey Loss is vague.  Among other things, it does not indicate whether such loss includes depreciation.

75.     Willis denies the allegations in paragraph 75.  Willis is not responsible for, and has no control over, how insurance funds are distributed.  Those decisions are made by the insurers, not Willis, in accordance with the terms and provisions of the policies that Fiesta Mart received and reviewed.  Further responding, Willis understands that in connection with the sale of Fiesta Mart in April of 2018, ACON and Fiesta Mart entered into a Membership Interest Purchase Agreement (the "Purchase Agreement").  Willis was not involved in drafting or negotiating that agreement, and did not receive a copy until after it had been agreed to.  Among other things, the Purchase Agreement provided that ACON would be entitled to any insurance proceeds for business interruption loss.  The Purchase Agreement did not specify how other losses should be handled, including claims for depreciation.  Accordingly, to the extent that the Purchase Agreement determined (or failed to determine) what entity had "a superior right to proceeds due," Willis had no involvement therein.

76.     Willis denies the allegation that it believed that ACON had a "superior right to insurance proceeds," as it understands that phrase to mean.  Willis lacks knowledge or information

12

sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 76, and, therefore, denies the same.

77.     Willis denies that it "divert[ed]" insurance proceeds to ACON or away from Fiesta Mart, as it understands that term to mean.  Willis is not responsible for, and has no control over, how insurance proceeds are distributed.  Those decisions are made by the insurers, not Willis, in accordance with the terms and provisions of the policies that Fiesta Mart received and reviewed. Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 77, and, therefore, denies the same.

78.     Willis denies that it breached the duties and obligations it owed to Fiesta Mart and that it ignored Fiesta Mart's emails and telephone calls during the period it was Fiesta Mart's broker.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 78, and, therefore, denies the same.

79.     Paragraph 79 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations as stated in paragraph 79.

80.     Paragraph 80 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies that the allegations as stated in paragraph 80 and avers that its actions did not proximately cause Fiesta Mart any harm.

81.     Willis admits that Fiesta Mart sued ACON to recover the insurance proceeds that Fiesta Mart claims it is entitled to, but denies that this litigation relates to Willis' actions.  Willis understands that as part of the settlement agreement between ACON and Fiesta Mart, ACON agreed to make a $3.1 million payment and to assign Fiesta Mart the right to depreciation holdback proceeds.  Willis states that this amount should operate as a set-off or credit as to any amounts

Fiesta Mart may recover in damages against Willis as part of this action.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 81, and, therefore, denies the same.

82.     Willis denies the allegations in paragraph 82 and states that its actions did not proximately cause any of Fiesta Mart's damages.

**H.     Willis Ignores its Insured, Fiesta Mart, as Fiesta Mart Seeks its Assistance for Remaining Harvey Loss Coverage**

83.     Willis states that the letter referenced in paragraph 83 (Exhibit 3) speaks for itself, and, therefore, Willis denies any characterization thereof.  Further responding, when the letter referenced in paragraph 83 was sent to Willis on or around June 23, 2020, Fiesta Mart had terminated Willis as its broker over a year earlier.

84.     Willis states that the letter referenced in paragraph 83 (Exhibit 3) speaks for itself, and, therefore, Willis denies any characterization thereof.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning whether Fiesta Mart is owed approximately $6.6 million in insurance proceeds related to depreciation holdback, and, therefore, denies the same.

85.     Willis states that the email referenced in paragraph 85 (Exhibit 3) speaks for itself, and, therefore, Willis denies any characterization thereof.  Further responding, when the email referenced in paragraph 85 was sent to Willis on or around June 30, 2020, Fiesta Mart had terminated Willis as its broker over a year earlier.

86.     Paragraph 86 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies that it breached the Terms and Conditions.  That document speaks for itself and Willis denies any characterizations thereof.

Further responding, at this time (June 2020), Willis was no longer Fiesta Mart's insurance broker, as it was terminated as broker by Fiesta Mart effective February 13, 2019, more than a year earlier.

87.     Paragraph 87 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies that it breached the Texas Insurance Code.  Willis incorporates, by reference, its response to paragraph 86.

88.     Willis denies the allegations in paragraph 88 and further responds that it has not been Fiesta Mart's broker since it was terminated in February of 2019 and is not "working against Fiesta Mart's interests," nor did it do so at any relevant time.  Further responding, Willis states that it is not blocking Fiesta Mart from receiving any depreciation holdback that it may be entitled to.

89.     Willis denies that the allegations in paragraph 89.

**I.     The Insurers Refuse to Compensate Fiesta Mart under the Insurance Policy.**

90.     The allegations in paragraph 90 are not directed at Willis.  To the extent a response is required, Willis avers that the Primary Policies, which were not attached to the Amended Complaint, speak for themselves, and, therefore, Willis denies any characterizations thereof.

91.     The allegations in paragraph 91 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 91 and, therefore, denies the same.

92.     The allegations in paragraph 92 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 92 and, therefore, denies the same.

93.     The allegations in paragraph 93 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 93 and, therefore, denies the same.

94.     Willis admits that Fiesta Mart and ACON entered into litigation over the payments that were made to ACON by the Primary Policy insurers and that the Fiesta Mart and ACON subsequently entered into a settlement agreement wherein ACON assigned its claim for depreciation holdback proceeds to Fiesta Mart.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 94 and, therefore, denies the same.

95.     The allegations in paragraph 95 are not directed at Willis.  To the extent a response is required, Willis admits that Fiesta Mart filed suit against ACON.  Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 95 and, therefore, denies the same.

96.     The allegations in paragraph 96 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 96 and, therefore, denies the same.

97.     The allegations in paragraph 97 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 97 and, therefore, denies the same.  Further responding, Willis avers that the email referenced in paragraph 97 (Exhibit 5) speaks for itself, and, therefore, Willis denies any characterizations thereof.

98.     The allegations in paragraph 98 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 98 and, therefore, denies the same.

99.     The allegations in paragraph 99 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 99 and, therefore, denies the same.

100.     The allegations in paragraph 100 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 100 and, therefore, denies the same.  Further responding, Willis avers that the assignment agreement referenced in paragraph 100 speaks for itself, and, therefore, Willis denies any characterizations thereof.

101.     The allegations in paragraph 101 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 101 and, therefore, denies the same.

102.     The allegations in paragraph 102 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 102 and, therefore, denies the same.

103.     Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 103 and, therefore, denies the same.

**First Cause of Action**
**(Violation of Tex. Ins. Code §§ 541.051 and 541.061 by Willis)**

104.     Willis incorporates by reference its responses to paragraphs 1 – 103, as if fully set forth herein.

105.     Paragraph 105 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 105.

106.    Paragraph 106 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 106.

107.    Paragraph 107 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 107.

108.    Paragraph 108 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 108.

109.    Paragraph 109 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 109.

110.    Paragraph 110 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 110 and states that Fiesta Mart is not entitled to any relief whatsoever, including treble damages.

**Second Cause of Action**
**(Breach of Contract by Willis)**

111.    Willis incorporates by reference its responses to paragraphs 1 – 110, as if fully set forth herein.

112.    Paragraph 112 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis admits that the Terms and Conditions are a valid, enforceable contract.

113.     Paragraph 113 contains legal conclusions and/or statements of law to which no response is required.   To the extent a response is required, Willis denies the allegations in paragraph 113.

114.     Paragraph 114 contains legal conclusions and/or statements of law to which no response is required.   To the extent a response is required, Willis denies the allegations in paragraph 114.

115.     Paragraph 115 contains legal conclusions and/or statements of law to which no response is required.   To the extent a response is required, Willis denies the allegations in paragraph 115 and states that Fiesta Mart is not entitled to any relief whatsoever, including monetary damages.

### Third Cause of Action
### (Negligence/Negligent Misrepresentation by Willis)

116.     Willis incorporates by reference its responses to paragraphs 1 – 115, as if fully set forth herein.

117.     Paragraph 117 contains legal conclusions and/or statements of law to which no response is required.   To the extent a response is required, Willis denies the allegations in paragraph 117.

118.     Willis denies the allegations in paragraph 118.  Further responding, Willis notes that this paragraph fails to sufficiently identify the "false information" that Willis purportedly provided to Fiesta Mart.

119.     Paragraph 119 contains legal conclusions and/or statements of law to which no response is required.   To the extent a response is required, Willis denies the allegations in paragraph 119.

120.    Paragraph 120 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 120.

121.    Paragraph 121 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 121.

**Fourth Cause of Action**
**(Breach of Contract by the Insurers)**

122.    Willis incorporates by reference its responses to paragraphs 1 – 121, as if fully set forth herein.

123.    The allegations in paragraph 123 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 123 and, therefore, denies the same.

124.    The allegations in paragraph 124 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 124 and, therefore, denies the same.

125.    The allegations in paragraph 125 are not directed at Willis.  To the extent a response is required, Willis lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 125 and, therefore, denies the same.

**Attorney Fees and Expenses**

126.    Paragraph 126 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 126, and states that Fiesta Mart is not entitled to recover attorneys' fees and costs.

**Conditions Precedent**

127.    Paragraph 127 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis denies the allegations in paragraph 127.

**Jury Demand**

128.    Paragraph 128 contains legal conclusions and/or statements of law to which no response is required.  To the extent a response is required, Willis acknowledges that Fiesta Mart timely demanded a jury trial in this matter.

The remaining allegations consist of Fiesta Mart's Prayer for Relief.  Willis specifically denies that Fiesta Mart is entitled to any of the relief or damages requested in the Prayer for Relief and states that Fiesta Mart is not entitled to any relief or damages against Willis whatsoever.

Willis further denies any and all other paragraphs, headings, titles, claims for relief, and all other allegations or averments not specifically responded to herein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed for failure to state a claim upon with relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Willis has not breached any duty to Plaintiff arising by statute, contract, tort, common law, or otherwise.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and/or release.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's first cause of action is barred to the extent it does not give Willis notice of the facts and circumstances supporting the alleged violations of Article 541 of the Texas Insurance Code.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Willis are barred by the economic loss doctrine.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claim for negligence/negligent misrepresentation is barred to the extent that Fiesta Mart has failed to specifically identified any "misrepresentations" made by Willis and/or any "false information" provided to Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's causes of action against Willis are barred, either in whole or in part, because Willis did not proximately cause Plaintiff to suffer any damages and Plaintiff's damages (if any) were caused by Plaintiff's own actions or the actions of others for which Willis is not responsible.

## EIGHTH AFFIRMATIVE DEFENSE

If the damages to Plaintiff occurred as alleged, although it is not so acknowledged, then the damages were directly caused by Plaintiff's own acts and omissions and/or the acts and omissions of individuals or entities for which Willis are not responsible, and such acts were the sole cause, sole proximate cause, producing cause, and/or new and independent intervening cause of the alleged damages to Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

Willis will assert its rights to offset and credit for amounts already paid to Plaintiff by either ACON or other third parties.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff may be barred from any recovery from Willis, in whole or in part, due to Plaintiff's failure to mitigate and Plaintiff's actions contributing to its damages.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff has no legal right to recover attorneys' fees, costs of suit, penalties, punitive damages, or exemplary damages.  Willis denies that they are obligated for the fees and/or costs set forth in Tex. Civ. Prac. & Rem. Code §38.001, *et. seq*., as awarding such costs and/or fees is not reasonable or just by virtue of the absence of damages.  Moreover, because Defendants Willis Towers Watson US, LLC is a limited liability company, Chapter 38 does not apply at all.

### TWELFTH AFFIRMATIVE DEFENSE

If pre-judgment interest is recoverable, Willis asserts that it is limited in accordance with Tex. Fin. Code Ann. §304.101 et seq.  If post-judgment interest is recoverable, Willis asserts that it is limited in accordance with Tex. Fin. Code Ann. §304.003(c).

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for negligence/negligent misrepresentation is barred, in whole or in part, by Tex. Civ. Prac. & Rem. Code Ann. § 33.001, *et seq*.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that their settlement agreement with ACON included a waiver and/or release.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent they pertain to time periods in which Willis was not the insurance broker for Plaintiff.

### SIXTEENTH AFFIRMATIVE DEFENSE

23

Plaintiff has not stated a claim for relief to the extent that it has not sued the proper Willis entities.

Respectfully submitted,

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**

By:    s/*Christopher W. Martin*
        **CHRISTOPHER W. MARTIN**
        State Bar of Texas No. 13057620
        Federal Bar No. 13515
        martin@mdjwlaw.com
        808 Travis, Suite 1100
        Houston, TX 77002
        (713) 632-1701
        (713) 222-0101 (fax)

        and

        Edward J. Baines (*admitted pro hac vice*)
        Federal Bar No 06776 (Maryland)
        ted.baines@saul.com
        Saul Ewing Arnstein & Lehr LLP
        500 E. Pratt Street, 8th Floor
        Baltimore, MD 21202
        (410) 303-8831
        (410) 332-8862 (fax)

        and

        Kyra A. Smerkanich (*admitted pro hac vice*)
        Pennsylvania Bar No. 317154
        District of Columbia Bar No. 1029230
        kyra.smerkanich@saul.com
        Saul Ewing Arnstein & Lehr LLP
        1919 Pennsylvania Avenue, Suite 550
        Washington, DC 20006
        (202) 295-6632
        (202) 337-6065 (fax)

        **ATTORNEYS FOR DEFENDANTS**
        **WILLIS TOWERS WATSON**
        **MIDWEST, INC., F/K/A**
        **WILLIS OF ILLINOIS, INC. and**
        **WILLIS TOWERS WATSON US LLC**

24

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been mailed, e-mailed, telecopied or hand delivered to all attorneys of record, in compliance with the FEDERAL RULES OF CIVIL PROCEDURE, on this the 26th day of February, 2021.

s/*Christopher W. Martin*

**CHRISTOPHER W. MARTIN**