**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FIESTA MART, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| WILLIS OF ILLINOIS, INC., WILLIS | § | |
| TOWERS WATSON US, LLC, ALLIED | § | |
| WORLD ASSURANCE COMPANY (U.S.) | § | |
| INC., ARCH SPECIALTY INSURANCE | § | **CIVIL ACTION NO. 4:20-CV-03484** |
| COMPANY, ASPEN SPECIALTY | § | |
| INSURANCE COMPANY, CERTAIN | § | |
| UNDERWRITERS AT LLOYD'S OF | § | |
| LONDON (HISCOX), HDI GLOBAL | § | |
| INSURANCE COMPANY, INDIAN | § | |
| HARBOR INSURANCE COMPANY, and | § | |
| WESTPORT INSURANCE | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Fiesta Mart, LLC ("Fiesta Mart"), respectfully files this Second Amended

Complaint against Defendants Willis Towers Watson US, LLC; Willis of Illinois, Inc. (together

"Willis"); and Allied World Assurance Company (U.S.) Inc.; Arch Specialty Insurance Company;

Aspen Specialty Insurance Company; Certain Underwriters at Lloyd's of London (Hiscox); HDI

Global Insurance Company; Indian Harbor Insurance Company; and Westport Insurance

Corporation (together the "Insurers"). Based upon actual knowledge with respect to itself and its

own acts, and upon information and belief as to all other persons and matters, Fiesta Mart

respectfully alleges as follows:

**Nature of the Action**

1.      Fiesta Mart is a supermarket chain based in Houston, Texas. Fiesta Mart has served

Houstonians for over 45 years and is continuing to serve this community during the COVID-19

pandemic. Its employees currently serve as first line responders providing basic necessities to Fiesta Mart's customers, and thousands of Houstonians visit Fiesta Mart stores every day for groceries and other necessities.

2.     Like many businesses in Houston, Fiesta Mart suffered significant damages from Hurricane Harvey. Some Fiesta Mart stores are still closed. Others are open for shoppers but still making repairs and not yet back to their pre-hurricane state.

3.     Today, Fiesta Mart is still working to rebuild and reopen stores damaged in the hurricane. This process has been delayed due to the challenges Fiesta Mart has faced in securing the insurance proceeds it is owed.

4.     During and prior to Hurricane Harvey, Willis was Fiesta Mart's insurance broker. Willis worked for Fiesta Mart to secure various insurance policies for its stores with the Insurers. Willis also advised Fiesta Mart on making claims under those policies, including claims related to losses suffered in Hurricane Harvey.

5.     Rather than support its insured, Fiesta Mart, in the difficult process of rebuilding after the hurricane, Willis acted for its own self-interests to the detriment of Fiesta Mart. Willis breached various duties owed to Fiesta Mart. Willis misrepresented to Fiesta Mart the impact of agreeing to certain insurance policy programs; ignored Fiesta Mart's requests for assistance; and even caused insurance proceeds owed to Fiesta Mart to be paid to another entity with no interest in the affected stores. And Willis' breaches continue to this day – Willis simply stopped responding to inquiries made by the insured, Fiesta Mart, about its insurance program. Fiesta Mart was left with no choice but to file this lawsuit in September 2020. Willis' actions have cost Fiesta Mart millions of dollars, valuable time and delayed the repair and reopening of its stores.

6.      The Insurers have also refused to pay Fiesta Mart proceeds due under the insurance policies. Despite representations from Fiesta Mart and the entity which mistakenly received previous proceeds, the Insurers maintain that Fiesta Mart is not entitled to the remaining insurance payments under the policies. The Insurers' denial of amounts required to repair the Fiesta Mart stores to their pre-Harvey conditions breaches the policies.

## Jurisdiction and Venue

7.      Defendant Willis removed this case from State court on the basis of diversity jurisdiction.

8.      If jurisdiction exists in this Court, venue also lies in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred here and this District is where the insured properties at issue in this lawsuit are located. In the alternative, venue is proper in this District because Plaintiff is headquartered in Harris County, Texas.

## Parties

9.      Plaintiff Fiesta Mart, LLC is a Texas Limited Liability Company with its principal place of business in Houston, Texas.

10.      Defendant Willis Towers Watson US, LLC is a Delaware limited liability company that has appeared in this action and need not be further served with process.

11.      Defendant Willis of Illinois, Inc. is an Illinois corporation that has appeared in this action and need not be further served with process.

12.      Defendant Allied World Assurance Company (U.S.) Inc. is a Delaware corporation that has been previously served in this lawsuit and need not be further served with process.

13.      Defendant Arch Specialty Insurance Company is a Missouri corporation that has been previously served in this lawsuit and need not be further served with process.

14.     Defendant Aspen Specialty Insurance Company is a North Dakota corporation that has consented to service through its counsel, Jeffrey S. Weinstein at Mound Cotton Wollan & Greengrass LLP.

15.     Defendant Certain Underwriters at Lloyd's of London (Hiscox) is a New York corporation that has been previously served in this lawsuit and need not be further served with process.

16.     Defendant HDI Global Insurance Company is a California corporation that has been previously served in this lawsuit and need not be further served with process.

17.     Defendant Indian Harbor Insurance Company is a Delaware corporation that has been previously served in this lawsuit and need not be further served with process.

18.     Defendant Westport Insurance Corporation is a Missouri corporation that has been previously served in this lawsuit and need not be further served with process.

### Relevant Factual Background

19.     Fiesta Mart was founded in Houston in 1972.  Today, there are more than 60 Fiesta Mart stores in Texas, serving customers from over 90 countries of origin. Houston remains the principal location of most Fiesta Mart stores and the location of its corporate headquarters.

20.     Insurance coverage for property damage to Fiesta Mart stores is important to Fiesta Mart's business. Most of its stores are located in the Houston area, and Fiesta Mart therefore faces the annual threat of hurricane damage. Fiesta Mart requires adequate insurance to keep its stores up and running for the Houston community and to protect its investment in each store.

21.     Fiesta Mart further requires adequate coverage as a predicate to its lease agreements for the store premises. Fiesta Mart is required to provide certificates of insurance coverage to the

owners from whom it leases space for its stores. Absent adequate coverage, Fiesta Mart could be in breach of a lease agreement.

22.     On information and belief, on April 29, 2015, private equity firm ACON Investments, LLC ("ACON") acquired Fiesta Mart. *See* www.aconinvestments.com/aconacquiresFiesta Mart/ ("Washington, DC, April 29, 2015 – ACON Investments, L.L.C. and its affiliates ('ACON') announced today that it has acquired Fiesta Mart, L.L.C….") (visited Aug. 28, 2020).

23.     At the time of the acquisition, ACON utilized Willis as an insurance broker for some if not all of its portfolio companies. Fiesta Mart had been using a different insurance broker prior to the ACON acquisition.

A.      **Willis Becomes Fiesta Mart's Broker**

24.     The policies covering property damage to Fiesta Mart stores were up for renewals in approximately April of 2016. Willis approached Fiesta Mart and sought to become its broker.

25.     Willis has 45,000 employees serving more than 140 countries and markets. In the United States alone, Willis has 90 offices, including six in Texas.

26.     Over the course of the relationship between Fiesta Mart and Willis, Willis provided services from a number of Willis offices around the country. Willis emphasized its national capabilities as a way of ensuring prompt and effective service for clients like Fiesta Mart. Fiesta Mart routinely communicated with Willis personnel from a number of offices, including Chicago, Los Angeles, and Atlanta.

27.     Willis represented to Fiesta Mart that Willis' representation of other ACON portfolio companies would help Fiesta Mart, and that Willis' relationship with ACON would not cause a conflict in Willis' representation of Fiesta Mart.

28.     Willis provided Fiesta Mart with its standard Terms and Conditions. *See* Terms and Conditions, Ex. 1. Under the Terms and Conditions, Willis promised that it would respond to Fiesta Mart's requests for coverage information as well as act on Fiesta Mart's behalf as the insured. *Id.* at 2, 6.

29.     Willis further promised that if Willis became aware of any conflict of interest between Fiesta Mart and another entity with a relationship with Willis, Willis would inform Fiesta Mart and withdraw from the Fiesta Mart relationship. *Id.* at 6. Willis represented that it "do[es] not tolerate unethical behavior either in our own activities or in those with whom we seek to do business." *Id.* at 8.

30.     Willis represented that it would assist Fiesta Mart in procuring adequate coverage for property damage, manage the process of filing claims, and work with insurers, adjusters, and others in handling claims on Fiesta Mart's behalf.

31.     Fiesta Mart conveyed to Willis its needs for adequate property insurance coverage for damage to its stores. Willis advised Fiesta Mart to agree to group polices that covered various ACON portfolio companies. Willis further represented to Fiesta Mart that the coverage provided under the portfolio policies would be at least equal to a standalone policy proposed by Fiesta Mart's prior broker under which Fiesta Mart was the only named insured. Willis represented to Fiesta Mart that the portfolio policies would be a superior solution for Fiesta Mart as compared to the standalone policy presented by Fiesta Mart's prior broker.

32.     Fiesta Mart relied on Willis' representations about its services as a broker and the portfolio policies, and switched to the portfolio policies on or about April 22, 2016.

**B.      Hurricane Harvey**

33.     A little over a year later, on August 25, 2017, Hurricane Harvey made landfall in Houston. The storm dumped an unprecedented 40 inches of rain in the area and caused massive

damages and dislocation to Houston businesses and residents alike. Fiesta Mart was no exception. The Fiesta Mart at Mesa and Tidwell (Store #23; 9419 Mesa Drive, Houston, Texas 77028) sustained serious damage. After extensive efforts, Fiesta Mart reopened that store on or about October 4, 2017, bringing quality and affordable food options to a still flood-damaged part of the city. Despite Fiesta Mart's massive efforts in making enough repairs to reopen this store in record time to serve the community, it still is not restored to its pre-Harvey condition because, as noted below, insurance proceeds remain outstanding.

34.     Other Fiesta Mart stores fared even worse. The Fiesta Mart near the Addicks Reservoir at Clay Road and Texas 6 (Store # 56; 4330 Highway 6, North Texas, 77084) took on nearly 10 feet of water. It remains closed today, as does Fiesta Mart Store # 10 (12201 E. Freeway, Houston, Texas 77015). Fiesta Mart management is working towards rebuilding or replacing both stores.

35.     Fiesta Mart used, operated, owned and/or leased store numbers 10, 23, and 56 and other Fiesta Mart stores that suffered property damage and/or business interruption from Hurricane Harvey (collectively, the "Harvey Loss").

36.     Fiesta Mart paid to repair damage from the Harvey Loss, including the damage to store numbers 10, 23, and 56, and additional payments will be required to bring the stores to their pre-Harvey condition.

## C.        **The Primary Policies**

37.     At the time of Hurricane Harvey, Fiesta Mart – including store numbers 10, 23, and 56 mentioned above – was insured under several property insurance policies collectively providing $400 million in limits that Willis secured for Fiesta Mart. The first layer of policies, called the primary layer, afforded $25 million in limits (collectively, the "Primary Policies" and individually,

a "Primary Policy"). A chart summarizing certain elements of the Primary Policies is set forth below:

| Insurer | Policy No. | Policy Period | Policy Limits | % of Primary Layer |
|---|---|---|---|---|
| Allied World Assurance Company | 0310-7409-1A | 06/01/17-06/01/18 | $2.5M p/o $25M | 10% |
| Arch Specialty Insurance Company | ESP7303053-01 | 06/01/17-06/01/18 | $5M p/o $25M | 20% |
| Aspen Specialty Insurance Company | PRAGK1017 | 06/01/17-06/01/18 | $3M p/o $25M | 12% |
| Certain Underwriters at Lloyd's of London (Hiscox) | URS 2552391.17 | 07/06/17-06/01/18 | $2.5M p/o $25M | 10% |
| HDI Global Insurance Company | CPD1488300 | 06/01/17-06/01/18 | $10M p/o $125M | 8% |
| Indian Harbor Insurance Company | PRO0047629 | 06/01/17-06/01/18 | $5M p/o $25M | 20% |
| Westport Insurance Corporation | NAP 2001214 01 | 06/01/17-06/01/18 | $80M p/o $400M | 20% |

38.     The Primary Policies are contracts of indemnity. Specifically, they provide that "[i]n consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy."

39.     Endorsement A1 to the Primary Policies sets forth certain terms and conditions "[w]ith respects to the entity of, Fiesta Mart." In addition to establishing a deductible of $250,000 for certain perils, Endorsement A1 sets an "Allocated Premium" figure that varies by insurer.

40.     For example, one of the Primary Policies is Policy No. 0310-7409-1A issued by Allied World Assurance Company for the period June 1, 2017 to June 1, 2018 (the "AWAC Policy").  Endorsement A1 to the AWAC Policy states "Allocated Premium - $125,793."

41.     Consistent with that figure, Willis billed Fiesta Mart $125,792.60 respecting the AWAC Policy in June 2017.

42.     Fiesta Mart paid in full the billed amount respecting the AWAC Policy.

43.     Willis likewise billed Fiesta Mart for allocated premium respecting the other Primary Policies. Fiesta Mart paid in full all such billings.

44.     Fiesta Mart also falls within the definition of "Insured" under the Primary Policies, in accordance with Willis' assurances at the time Fiesta Mart agreed to the portfolio policies.

45.     The Master Property Policy stated that Willis of Illinois is authorized to issue certificates of insurance "naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests…" even absent a formal endorsement on the policy.

46.     Willis did in fact issue certificates of insurance for Fiesta Mart. "Fiesta Mart, L.L.C." is also identified as the Insured on over 70 certificates of insurance prepared and issued by Willis respecting the Primary Policies for the relevant policy period. Each such certificate lists all seven Primary Policies and states that "the policies of insurance listed below have been issued to the insured named above for the policy period indicated."

47.     Each Primary Policy was in force at the time of the Harvey Loss.

**D.     <u>Fiesta Mart Submits the First Proofs of Loss and Willis Ensures that Fiesta Mart is Paid the Proceeds</u>**

48.     The Primary Policies provide that it "shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained."

49.     The Primary Policies also state that "[l]oss, if any, shall be adjusted with and payable to the Insured, or as directed by them."

50.     On or about September 26, 2017, Fiesta Mart, through its Vice President and Chief Financial Officer Wayne S. Peterson, submitted to the Primary Policy insurers signed and sworn First Partial Proofs of Loss respecting the Harvey Loss (collectively, the "First Proofs").

51.     The First Proofs sought recovery for a "Flood (CAT #1743) loss" occurring on August 26, 2017, due to "Flood loss associated with CAT #1743 - Hurricane Harvey." The location specified was "[m]ultiple properties (grocery stores / supermarkets) in Houston, TX." The First Proofs describe the "title and interest" of the insured in the properties at the time of the loss as "Fiesta Mart, L.L.C." In the section to identify any other persons that had an interest or encumbrance on the identified property, the Proofs say "None." The First Proofs also set forth the claim numbers used by the Primary Policy insurers for the Harvey Loss.

52.     Willis, as Fiesta Mart's broker, prepared the First Proofs and provided them to Fiesta Mart for its signature.

53.     Willis in particular made sure that the insurance proceeds would be paid to the correct party, Fiesta Mart: Willis "reminded the Markets that the check needs to be addressed to Fiesta Mart and not ACON Investments." Email from B. Conant to W. Peterson, Ex. 2.

54.     Insurers for the Primary Policies accepted the First Proofs from Fiesta Mart and did not challenge Fiesta Mart's right to submit them.

55.     The Primary Policy insurers adjusted the First Proofs with Fiesta Mart and paid Fiesta Mart directly the $7.5 million requested therein.

**E.**        **Willis Represents that it is on Fiesta Mart's "Team" to seek Insurance Proceeds for Fiesta Mart's Business Interruption Loss**

56.     In addition to property damage, Fiesta Mart also suffered business interruption from the Harvey Loss.

57.     Each Primary Policy covers "the loss resulting from the necessary interruption of business conducted by the Insured…caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein."

58.     Fiesta Mart sustained an actual loss resulting directly from the interruption of business at certain of its stores caused by Hurricane Harvey flooding.

59.     Fiesta Mart, not ACON, conducted the business that was interrupted at the subject stores, and that those stores were operated, owned, and/or leased by Fiesta Mart and not ACON.

60.     Beginning in September 2017, Fiesta Mart was contacted by forensic accountants retained on behalf of the Primary Policy insurers, Matson Driscoll & Damico LLP ("MDD") to gather information about the business conducted at the subject Fiesta Mart stores. MDD asked for Fiesta Mart's weekly and monthly sales information, payroll reports, and a detailed claim for loss of business income and extra expenses incurred. MDD also asked for detailed inventory and daily sales figures for "Locations 10, 23, and 56." None of this information would apply to ACON.

61.     Willis once again, as Fiesta Mart's broker, took charge and advised Fiesta Mart on handling this aspect of the claim. In light of the insurers' retention of MDD and "[b]ecause of the size and scope of Fiesta Mart's loss," Willis recommended that Fiesta Mart likewise hire forensic accountants. Ex. 2. Willis in fact recommended that Fiesta Mart hire accountants affiliated with Willis to represent Fiesta Mart's interest and to "assist you in the preparation and calculation of your Business Interruption and Time Element (Civil Authority, Ingress/Egress) loss" and to "work for Fiesta Mart as part of **our** loss team." *Id.* (emphasis added).

62.     Fiesta Mart took Willis' advice and retained the forensic accountants associated with and recommended by Willis.

**F.      <u>ACON Sells Fiesta Mart</u>**

63.     On or about April 30, 2018, ACON sold Fiesta Mart to a third party. Unbeknownst to Fiesta Mart, once ACON sold Fiesta Mart, Willis decided that its own obligations to Fiesta Mart were likewise finished. Willis began to work not to help Fiesta Mart, but on behalf of its other client, ACON.

G.          **Willis Directs Fiesta Mart's Insurance Proceeds to ACON**

64.     On information and belief, on or about August 31, 2018, ACON submitted signed and sworn Second Partial Proofs of Loss under the Primary Policies in respect of the Harvey Loss (collectively, the "Second Proofs"). The Second Proofs sought a recovery of $4,780,347, being a partial loss of $12,530,347 less a $250,000 deductible and a $7,500,000 first partial payment.

65.     The Second Proofs covered the same Harvey Loss as the First Proofs.  Specifically, the Second Proofs:

- sought payment respecting "Flood loss associated with CAT #1743 - Hurricane Harvey."

- described the damaged property as "[m]ultiple properties (grocery stores / supermarkets) in Houston, TX."

- use the same claim numbers (2017019830, et seq.) as the First Proofs; and

- describe the "title and interest" in the damaged property as "Fiesta Mart, L.L.C." with "None" identified as having other title, interests, or encumbrances in the subject property.

66.     At the time it submitted the Second Proofs for Fiesta Mart's loss, ACON had no title or interest in Fiesta Mart, including in Fiesta Mart store numbers 10, 23, or 56.

67.     On information and belief, Willis assisted ACON in drafting and submitting the Second Proofs. Willis further understood at that time that ACON no longer owned Fiesta Mart or the damaged stores.

68.     At the same time Willis was helping ACON take Fiesta Mart's insurance proceeds, Willis ostensibly continued to advocate for Fiesta Mart as its broker.

69.     For example, in September 2018, Willis sent materials reflecting that both the affiliated forensic accountants recommended by Willis (and that Willis had encouraged Fiesta Mart to hire) and those at MDD had agreed to employ a $250,000 deductible in their estimates of the Harvey Loss. That figure is different from the $100,000 deductible that would otherwise apply

to Flood losses at the subject Fiesta Mart stores pursuant to paragraph 5(f) of the Primary Policies, and is consistent with the $250,000 deductible set by Endorsement A1, the endorsement that applies "[w]ith respects to the entity of, Fiesta Mart."

70.     At no point did Willis sever its relationship with Fiesta Mart or give any indication to Fiesta Mart that Willis was working to help ACON recover Fiesta Mart's insurance proceeds.

71.     Fiesta Mart had no knowledge that ACON had filed its own Second Proofs. Fiesta Mart continued to ask Willis for help in filing Second Proofs for its Harvey Loss, as Willis had assisted Fiesta Mart in filing the First Proofs.

72.     Willis initially took the tactic of simply ignoring Fiesta Mart's requests. Finally, in September 2018, after much delay, Willis responded and notified Fiesta Mart that Willis had chosen to help ACON abscond with Fiesta Mart's insurance proceeds.

73.     Willis made sure that ACON, not Fiesta Mart, would receive these proceeds by ignoring Fiesta Mart's requests for help with the claims subject to the Second Proofs until ACON had already received payment.

74.     On information and belief, ACON received $4,780,347 in insurance proceeds under the Primary Policies respecting the Harvey Loss sought by the Second Proofs.

75.     Prior to this disclosure, Willis never advised or intimated to Fiesta Mart that ACON (not Fiesta Mart) allegedly held the payout and other rights under the policies. In fact, Willis had represented the exact opposite. For example, Willis told the insurance carriers to address the check for the first proof of claim to Fiesta Mart. And when Fiesta Mart agreed to the portfolio policies, it did so based in part on Willis' representation that Fiesta Mart would be fully protected as an insured. Willis never indicated at any time that ACON would have a superior right to proceeds due to recompense for damages to Fiesta Mart stores.

- 13 -

76.     If Fiesta Mart had known that Willis believed that ACON would have a superior right to insurance proceeds for claims of damage to Fiesta Mart's stores, Fiesta Mart would not have used Willis as its broker or agreed to the portfolio policies.

77.     If Fiesta Mart had known that Willis would divert insurance proceeds to ACON or otherwise divert proceeds away from Fiesta Mart, Fiesta Mart would not have used Willis as its broker or agreed to the portfolio policies.

78.     If Fiesta Mart knew that Willis would breach its duties and obligations as a broker, including ignoring emails and telephone calls from Fiesta Mart seeking advice from Willis about its insurance needs, Fiesta Mart would not have used Willis as its broker or agreed to the portfolio policies.

79.     Willis not only made knowing and negligent misrepresentations to Fiesta Mart, but it also breached its contractual obligation to "promptly inform" Fiesta Mart about any conflicts of interest. Willis said nothing to Fiesta Mart about its insurance proceeds going directly to ACON under the insurance policies it secured for Fiesta Mart until ACON filed the Second Proofs and until after ACON had already been paid.

80.     Fiesta Mart was harmed by misrepresentations, breach of duties, and breach of the Willis Terms and Conditions. Fiesta Mart lost $4,780,347 in insurance proceeds owed to it.

81.     Fiesta Mart was forced to engage in long and costly litigation with ACON to try to recoup these proceeds. Fiesta Mart's dispute with ACON ended in a settlement on February 14, 2020. Fiesta Mart obtained recovery of some of the insurance proceeds through that action, but has not been made whole.

82.     Fiesta Mart is owed millions of dollars in unrecovered policy proceeds, amounts attributable to the delay, and attorneys' fees and costs related to the improper payment to ACON made at Willis' behest and with Willis' assistance.

## H.      Willis Ignores its Insured, Fiesta Mart, as Fiesta Mart Seeks its Assistance for Remaining Harvey Loss Coverage

83.     On June 23, 2020, Fiesta Mart Chief Financial Officer Jeff Hook sent a letter to Fiesta Mart's assigned Willis contacts, Blaine Conant and Nancy Collins. *See* Letter from J. Hook to B. Conant and N. Collins, Ex. 3.

84.     Mr. Hook informed Mr. Conant and Ms. Collins that Fiesta Mart had "incurred substantial amounts for repair, replacement and reinstatement of its store #23 located at 9419 Mesa Drive, Houston, TX ("FM#23") and expects to incur more in the future." *See id.* Mr. Hook continued, "I would like to set up a call with you this week to discuss (i) our restoration and repair efforts at FM#23 and (ii) the submittal process to receive the depreciation holdback for FM#23, both now and in the future." *Id.* Fiesta Mart is owed approximately $6.6 million in insurance proceeds related to depreciation holdback for Store #23.

85.     As of June 30, 2020, Mr. Conant and Ms. Collins had not responded to Mr. Hook. Mr. Hook sent another email on that date, asking Mr. Conant and Ms. Collins again to "please advise." *See* Emails from J. Hook to B. Conant and N. Collins, Ex. 4. Willis still did not respond. So, on July 10, 2020, Mr. Hook emailed them once again stating, "[c]an you please respond to my emails? If you are no longer the Willis contact persons for Fiesta Mart, please provide me with the contact information for our new representative." *Id.* As of the date of this filing, Fiesta Mart has still not received a response from Willis.

86.     Willis' failure to respond to Fiesta Mart's inquiry is a breach of the Terms and Conditions, which require Willis to provide Fiesta Mart with accurate timely facts, information

and direction, and promptly respond to Fiesta Mart's requests for coverage information. *See* Ex. 1 at 1, 2.

87.     Willis' failure to respond to Fiesta Mart also breaches its duties under the Texas Insurance Code.

88.     Given what happened with the Second Proofs, Fiesta Mart on information and belief believes that Willis may be once again working against Fiesta Mart's interests. In any event, Willis is blocking Fiesta Mart from receiving the depreciation holdback it is entitled to by ignoring Fiesta Mart's multiple requests for assistance; Willis, by delaying, leaves Fiesta Mart at risk that the insurance carriers will claim lack of diligence or otherwise seek to minimize Fiesta Mart's recovery of proceeds owed under the policies.

89.     Fiesta Mart has suffered damages due to delays because of Willis' refusal to act.

**I.**          **The Insurers Refuse to Compensate Fiesta Mart under the Insurance Policy**

90.     Under article 10(h) of the Primary Policies, Fiesta Mart is entitled to payment "at replacement cost new without reduction for depreciation." In plain terms, this means that Fiesta Mart is entitled to bring its damaged stores back to their pre-hurricane position.

91.     In October 2018, Fiesta Mart wrote to the Insurers to advise them of Fiesta Mart's claims and position as insured. Fiesta Mart summarized the Insurer's previous payments under the policy first to Fiesta Mart and then to ACON, despite ACON's lack of any ownership interest in Fiesta Mart at the time.

92.     Fiesta Mart notified the Insurers that it had repaired one damaged store and was planning to repair, rebuild, or replace the others. To ensure funds were available for these repairs, Fiesta Mart sought confirmation of which entity would receive future insurance payments.

93.     In response, on October 31, 2018 the Insurers denied Fiesta Mart's insurance claim, on the grounds that ACON – not Fiesta Mart – was the "insured" under the policy. The Insurers

contended they "have not been made aware of any assignment(s) of any insurance claims, or rights to recovery under the policy, made by ACON to Fiesta Mart, L.L.C."

94.     Fiesta Mart and ACON subsequently entered into litigation over the payments that were wrongfully made to ACON. In mediation, the parties reached a compromise which called for ACON to assign to Fiesta Mart its remaining insurance claim for holdover insurance proceeds. The parties agreed to an informal stay while this proposal was explored.

95.     Thus, within 60 days of discovering that insurance payments had gone to ACON, Fiesta Mart: (i) informed the Insurers in writing of its claim to those proceeds; (ii) asked the Insurers to confirm that those and any additional such proceeds would be paid to Fiesta; (iii) informed the Insurers of the reason for its request (to fund Fiesta Mart's rebuilding efforts already undertaken and to be undertaken); and (iv) filed suit against the entity that took previous proceeds.

96.     On December 26, 2019, ACON and Fiesta Mart had a conference call with the Insurers. They discussed the potential assignment of ACON's insurance claims for holdover insurance proceeds to Fiesta Mart, the Insurers' concern with Fiesta Mart's insured status, and how an assignment by ACON may resolve that concern.

97.     In January 2020, ACON sent Fiesta Mart and the Insurers a draft assignment agreement addressing the insured issue and other issues. *See* Email from P. Rauser to J. Weinstein and T. Cunningham, Ex. 5. The cover email explained that the draft assignment agreement reflects edits "based on [ACON's] call yesterday with [the Insurers]," and sought to address Fiesta Mart's desire for assurance that "(a) the depreciation holdback amounts for Stores 10, 23, and 56 remain available; (b) the carriers will not object to assignment by ACON to Fiesta Mart of the right to claim those amounts; (c) the carrier will not object to the timeliness of such claims" as well as the

Insurers' concerns that "rebuilding will be accomplished within a reasonable, fixed period of time (i.e. one year)" and "Fiesta Mart must document rebuilding expenses for a store in excess of ACV to claim holdback for that store." *Id*. Fiesta Mart sent subsequent edits.

98.     On February 6, 2020, the Insurers informed ACON and Fiesta Mart that they were no longer willing to sign an assignment agreement but might consider issuing a coverage opinion. The Insurers invited Fiesta Mart to propose such an opinion.

99.     The following day, Fiesta Mart proposed a coverage opinion, including language that the Insurers would have no objections to timeliness if the work was completed within 12 months of final third-party approval. Fiesta Mart received no response from the Insurers.

100.     Thereafter, ACON and Fiesta Mart finalized and executed their assignment agreement on February 14, 2020. The assignment agreement provided that ACON assigned to Fiesta Mart "all of their right, title, and interest in [ACON's] right to claim, subject to the provisions of the POLICIES, the DEPRECIATION HOLDBACK AMOUNTS for repair, rebuilding, or replacement of a STORE or STORES on the same or another site." By February 21, 2020, settlement was complete and all actions between ACON and Fiesta Mart were dismissed.

101.     On September 30, 2020, Fiesta Mart wrote to the Insurers, detailing the history of conferences and proposals which the Insurers had been kept apprised of, as well as the resolution of the "insured" issue through the assignment agreement.

102.     Nearly one month later, on October 27, 2020, the Insurers denied Fiesta Mart's claims. The Insurers took the position that Fiesta Mart is not an "insured" under the policy and that the time to make repairs had passed. Under the Insurer's interpretation, neither ACON nor Fiesta Mart are entitled to payment for hurricane damages following the March 2018 sale.

103.     The depreciation holdback amounts total approximately $4.5 million.

**First Cause of Action**
**(Violation of Tex. Ins. Code §§ 541.051 and 541.061 by Willis)**

104.     Fiesta Mart realleges the material facts alleged in the preceding paragraphs as if set forth fully herein.

105.     Willis knowingly made statements misrepresenting the terms of the policies it secured for Fiesta Mart.

106.     Willis knowingly made statements misrepresenting the benefits or advantages promised by the policies it secured for Fiesta Mart.

107.     Willis knowingly made untrue statements of material fact.

108.     Willis knowingly made statements in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

109.     Willis knowingly failed to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made.

110.     Fiesta Mart is entitled to three times its actual damages because Willis knowingly committed the acts complained of pursuant to Tex. Ins. Code § 541.152.

**Second Cause of Action**
**(Breach of Contract by Willis)**

111.     Fiesta Mart realleges the material facts alleged in the preceding paragraphs as if set forth fully herein

112.     The Terms and Conditions are a valid, enforceable contract.

113.     Fiesta Mart has performed its obligations under the Terms and Conditions.

114.     Willis breached the Terms and Conditions by failing to 1) notify Fiesta Mart of a conflict of interest, 2) provide Fiesta Mart with accurate timely facts, information and direction, and 3) promptly respond to Fiesta Mart's requests for coverage information.

115.    Willis' breach of contract has resulted in millions of dollars in losses for Fiesta Mart.

### Third Cause of Action
### (Negligence/Negligent Misrepresentation by Willis)

116.    Fiesta Mart realleges the material facts alleged in the preceding paragraphs as if set forth fully herein.

117.    Willis made misrepresentations to Fiesta Mart in the course of Willis' business or in a transaction in which Willis had an interest.

118.    Willis provided false information for the guidance of Fiesta Mart.

119.    Willis failed to exercise reasonable care or competence in obtaining or communicating information to Fiesta Mart.

120.    Fiesta Mart's reliance on Willis' representations was justifiable given Willis' expertise as an insurance broker.

121.    Willis' negligent misrepresentation proximately caused Fiesta Mart to suffer injuries.

### Fourth Cause of Action
### (Breach of Contract by the Insurers)

122.    Fiesta Mart realleges the material facts alleged in the preceding paragraphs as if set forth fully herein.

123.    The Insurers' conduct constitutes a breach of the insurance contracts made between Fiesta Marta and the Insurers.

124.    The Insurers' failure and/or refusal, as described above, to pay the adequate compensation as they are obligated to do under the terms of the policies in question, and under the laws of the State of Texas, constitutes a breach of the Insurers' insurance contracts with Fiesta Mart.

125.    As a result of this breach of contract, Fiesta Mart has suffered the millions of dollars in damages as described in this petition.

## Attorney Fees and Expenses

126.    Fiesta Mart has been required to retain attorneys to protect its rights and prosecute this claim. Pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 and Tex. Ins. Code § 541.152, Plaintiff is entitled to recover its reasonable attorneys' fees and costs necessarily expended in this matter.

## Conditions Precedent

127.    All conditions precedent to Fiesta Mart's prayer for relief have been performed or occurred.

## Jury Demand

128.    Fiesta Mart demands a trial by jury with regard to all issues of fact in relation to its claims and causes of action asserted herein or in any amended or supplemental pleading.

## Prayer for Relief

Fiesta Mart respectfully requests, after a final hearing or trial, the Court enter judgment against Defendants and award to Fiesta Mart its actual damages, treble damages, pre- and post-judgment interest, attorney's fees and court costs, and all other relief at law or in equity to which it is entitled.

Dated:  March 15, 2021                    Respectfully submitted,

                                          */s/ Tracy N. LeRoy*
                                          Tracy N. LeRoy
                                          State Bar No. 24062847
                                          Myra Siddiqui
                                          State Bar No. 2416434
                                          YETTER COLEMAN LLP
                                          811 Main Street, Suite 4100
                                          Houston, Texas 77002
                                          (713) 632-8000
                                          (713) 632-8002
                                          tleroy@yettercoleman.com
                                          msiddiqui@yettercoleman.com

                                          ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF CONFERENCE

Pursuant to Fed. R. Civ. P. 15(a)(2), I certify that I conferred with counsel of record regarding Plaintiff's intention to amend its complaint. As confirmed by email on February 10, 2021, the Willis Defendants are not opposed to this amendment. As confirmed by email on March 12, 2021, the Insurers are not opposed to this amendment.

                                          */s/ Myra F. Siddiqui*
                                          Myra F. Siddiqui


## CERTIFICATE OF SERVICE

I certify that on March 15, 2020, the foregoing was served by email and/or by electronic filing service on all counsel of record.

                                          */s/ Myra F. Siddiqui*
                                          Myra F. Siddiqui