# EXHIBIT 5

**Cunningham, Thomas D.**

| | |
|---|---|
| **From:** | Paul C. Rauser <prauser@aegislawgroup.com> |
| **Sent:** | Friday, January 24, 2020 12:57 PM |
| **To:** | Jeffrey Weinstein; Cunningham, Thomas D. |
| **Cc:** | Michael K. Ross; Christopher Pickens |
| **Subject:** | SETTLEMENT COMMUNICATION -- ACON / Bodega |
| **Attachments:** | DRAFT -- ACON Holdback Assignment (ALG PM revision 1-24-20).pdf |

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FRE 408 and "WHITE WAIVER"

Gentlemen,

Attached is a draft assignment agreement for your review. It reflects edits based on Aegis' call yesterday with Mound Cotton. Hopefully this will allow us to close out this issue.

In brief, this draft seeks to address Fiesta Mart's desire for assurance that (a) the depreciation holdback amounts for Stores 10, 23, and 56 remain available; (b) the carriers will not object to assignment by ACON to Fiesta Mart of the right to claim those amounts; (c) the carrier will not object to the timeliness of any such claim; and (d) the store(s) need not be built on exactly the same site as the damaged/destroyed stores.

For the carriers' part, the draft seeks to assure that (a) rebuilding will be accomplished within a reasonable, fixed period of time (i.e. one year); and (b) Fiesta Mart must still comply with the policy provisions regarding payment of the holdback -- most importantly, that Fiesta Mart must document rebuilding expenses for a store in excess of ACV to claim holdback for that store.

Please let me know as soon as possible if this draft is acceptable.

Best,
Paul

**Paul C. Rauser**
ægis law group LLP
801 Pennsylvania Avenue, N.W.
Suite 740
Washington, D.C. 20004
T: 202 737 3375
F: 202 737 3330
E: prauser@aegislawgroup.com

NOTICE: This communication from Aegis Law Group LLP may contain information that is legally privileged, confidential, or exempt from disclosure. If you have received this

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

## CONFIDENTIAL ASSIGNMENT AGREEMENT

This confidential assignment agreement (the "**AGREEMENT**") is entered into as of this January __, 2020, by and among ACON Investments, L.L.C. ("**ACON**"); Fiesta Mart L.L.C. ("**FIESTA MART**"); and: Swiss Re ("**SWISS RE**"); Indian Harbor Insurance Company ("**AXA XL**"); Arch Specialty Insurance Company ("**ARCH**"); Allied World Assurance Co. ("**ALLIED WORLD**"); Aspen Insurance ("**ASPEN**"); Certain Underwriters at Lloyds ("**LLOYD'S**"); and HDI Global Insurance ("**HDI GLOBAL**") (collectively, the "**INSURERS**"). ACON, FIESTA MART, and the INSURERS are hereinafter collectively referred to as the "**PARTIES**."

**WHEREAS**, each of the INSURERS severally underwrote respective quota shares of the first-party commercial property insurance risk program of ACON through the issuance to ACON of separate insurance policies, each of which was effective from June 1 (or July 6), 2017 to June 1, 2018, as set forth in Schedule A hereto (collectively, the "**POLICIES**");

**WHEREAS**, the POLICIES covered, among other things, certain first-party property interests of ACON, including without limitation certain properties of ACON Fiesta Holdings, LLC and/or FIESTA MART known as Stores 10, 23, and 56 (collectively, the "**STORES**", and each, a "**STORE**");

**WHEREAS**, on or about August 26, 2017, Hurricane Harvey damaged the STORES;

**WHEREAS**, the damage to the STORES from Hurricane Harvey is now the subject of litigation to which the INSURERS are not parties, including *Fiesta Mart, L.L.C. v. ACON Investments, LLC*, No. 4:18-cv-04704 (S.D. Tex.) and related litigation pending in the courts of Delaware;

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

**WHEREAS**, ACON and/or its affiliates have submitted insurance claims to each of the INSURERS seeking recovery for alleged property damage and/or other recovery in relation to the STORES;

**WHEREAS,** the basis for the loss adjustment under the POLICIES incudes replacement cost without deduction for depreciation as set forth in Paragraph 10(h) or 10(q) of the POLICIES;

**WHEREAS,** ACON is an Insured under the POLICIES and, as such, holds a claim for the release of certain amounts for depreciation that were held back and not paid by the INSURERS with respect to the STORES (the "**DEPRECIATION HOLDBACK AMOUNTS**");

**WHEREAS,** the DEPRECIATION HOLDBACK AMOUNTS by STORE are as follows: STORE 10 ($2,949,818), STORE 23 ($1,631,302), and STORE 56 ($1,877,154);

**WHEREAS,** FIESTA MART is not an Insured under the POLICIES;

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants herein contained and other good and valuable consideration, the sufficiency and adequacy of which is acknowledged, and intending to be legally bound hereby, the PARTIES agree as follows:

1. ACON assigns to FIESTA MART all of its right, title, and interest in ACON's right to claim, subject to the provisions of the POLICIES, the DEPRECIATION HOLDBACK AMOUNTS for repair, rebuilding, or replacement of a STORE or STORES on the same or another site (the "ASSIGNED CLAIMS").

2. The INSURERS agree and do not object to the assignment by ACON to Fiesta Mart L.L.C. of the ASSIGNED CLAIMS.

3. The INSURERS agree that any repair, rebuilding, replacement, or reinstatement, for which Fiesta Mart may claim the DEPRECIATION HOLDBACK AMOUNTS, has been executed with due diligence and dispatch in accordance with Paragraph 10(h)(i) and 10(q)(a) of

2

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

the POLICIES, provided that those repairs, rebuilding, replacement, or reinstatement are completed within twelve (12) months of the date of this AGREEMENT;

4.     All provisions of the POLICIES with respect to proof or documentation of repairs, rebuilding, replacement, or reinstatement necessary to trigger the INSURERS' liability for the DEPRECIATION HOLDBACK AMOUNTS shall remain in full force and effect.

5.     ACON acknowledges that the terms of this AGREEMENT are in compromise of disputed coverage demands with respect to the DEPRECIATION HOLDBACK AMOUNTS and are not an admission by any of the INSURERS, except as expressly set forth above: (i) as to the scope or availability of coverage under any of the POLICIES; (ii) that any obligations exist under any of the POLICIES and/or otherwise; and (iii) as to the applicability or non-applicability of any term, condition, limitation, deductible, exclusion, or any other provision in any of the POLICIES.

6.     The PARTIES acknowledge and agree that by entering into this AGREEMENT, the PARTIES do not intend to waive: (1) ACON's right to pursue any claims other than the ASSIGNED CLAIMS under the terms and conditions of the POLICIES; or (2) the INSURERS' rights, privileges, or defenses under the POLICIES as to any claims other than the ASSIGNED CLAIMS.

7.     The PARTIES acknowledge that the terms of this AGREEMENT: (i) do not reflect a course of dealing; (ii) do not reflect a course of performance; (iii) do not reflect any position by any of the PARTIES, except with respect to the ASSIGNED CLAIMS; and (iv) cannot be used in any manner whatsoever to affect the availability, non-availability, or amount of coverage in any other or future claim(s) for coverage by ACON, all whether under any of the POLICIES and/or under any previous version(s) of any of the POLICIES and/or under any future renewal(s) of any of the POLICIES and/or under any other insurance policy(ies) issued by any of the INSURERS.

3

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

8. The PARTIES expressly agree that the terms of this AGREEMENT supersede any and all other agreement(s) made between or among them in connection with the whole or partial disposition of the ASSIGNED CLAIMS or any portion(s) thereof, and ACON hereby expressly agrees that, by executing this AGREEMENT, it is doing so to the prejudice of its right to continue to pursue recovery in any way or form in connection with the ASSIGNED CLAIMS.

9. The PARTIES agree to keep the terms of this AGREEMENT, and all communications relating thereto, strictly confidential and without prejudice to any of the PARTIES. It is understood that this confidentiality clause shall not apply to disclosures made: (i) to any of the PARTIES' accountants, attorneys, reinsurers, parent companies, or subsidiary companies; (ii) to auditors; to any regulatory entity; (iii) pursuant to a court order; (iv) for the specific purpose of seeking to enforce this AGREEMENT.

10. This AGREEMENT sets forth the entirety of the PARTIES' agreed-upon terms with respect to the assignment of the ASSIGNED CLAIMS, and it cannot be altered or amended in any way except by a writing that is signed by all of the PARTIES.

11. Each signatory below represents and warrants that the signatory has full power and authority to sign on behalf of, and legally to bind to this AGREEMENT, that signatory's respective principal(s).

12. This AGREEMENT may be executed in counterparts by each of the PARTIES hereto and: (i) a copy of such executed counterpart must be delivered to each of the other PARTIES by registered United States Postal Service mail, electronic mail, and/or facsimile; (ii) each such copy of such counterpart shall be deemed an original; (iii) each such duly delivered copy of each such executed counterpart shall be considered to be valid and effective for all purposes; and (iv) all such counterparts, taken together, will be considered one and the same instrument.

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

      13.      If any of the provisions of this AGREEMENT should be deemed invalid and/or unenforceable by any court of competent jurisdiction, such invalidity and/or unenforceability will not affect the whole AGREEMENT; rather, the AGREEMENT will be construed as if not containing the particular provision(s) held to be invalid and/or unenforceable, and the obligations of the PARTIES will be construed and enforced accordingly.

      14.      This AGREEMENT is governed by, and shall be construed in accordance with, the laws of the State of Texas.

**SIGNATURE PAGE(S) FOLLOW(S)**

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

**IN WITNESS WHEREOF**, the legally authorized representatives for each of the PARTIES have executed this AGREEMENT:

**FIESTA MART**

By: _____

Name: _____
Title: _____
Date: _____

**SWISS RE**

By: _____

Name: _____
Title: _____
Date: _____

**AXA XL**

By: _____

Name: _____
Title: _____
Date: _____

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

**ARCH**

By: _____

Name: _____

Title: _____

Date: _____

**ALLIED WORLD**

By: _____

Name: _____

Title: _____

Date: _____

**ASPEN**

By: _____

Name: _____

Title: _____

Date: _____

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

## HDI Global

By: _____

Name: _____
Title: _____
Date: _____

## Lloyd's (via Hiscox)

By: _____

Name: _____
Title: _____
Date: _____

DRAFT
SETTLEMENT COMMUNICATION
SUBJECT TO WHITE WAIVER

## SCHEDULE A

| CARRIER | POLICY # | PARTICIPATION |
|---|---|---|
| SWISS RE | NAP200121401 | 20.00% |
| XL CATLIN | PRO0047629-01 | 20.00% |
| ARCH INSURANCE GROUP | ESP7303053-01 | 20.00% |
| ALLIED WORLD ASSURANCE CO. | 0310-7409-1A | 10.00% |
| ASPEN INSURANCE | PRAGK1017 | 12.00% |
| CERTAIN UNDERWRITERS AT LLOYDS (VIA HISCOX) | URS 2552391.17 | 10.00% |
| HDI GLOBAL INSURANCE | CPD1488300 | 08.00% |
| **TOTAL:** | [*n/a*] | **100.00%** |