THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FIESTA MART, LLC**, | § | |
| | § | |
| Plaintiff | § | |
| | § | Hon. Vanessa Gilmore |
| v. | § | |
| | § | |
| **WILLIS OF ILLINOIS, INC., WILLIS** | § | Civil Action No.: 4:20-CV-03484 |
| **TOWERS WATSON US, LLC,** | § | |
| **ALLIED WORLD ASSURANCE** | § | |
| **COMPANY (U.S.) INC., ARCH** | § | |
| **SPECIALTY INSURANCE** | § | |
| **COMPANY, ASPEN SPECIALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S OF LONDON (HISCOX),** | § | |
| **HDI GLOBAL INSURANCE** | § | |
| **COMPANY, INDIAN HARBOR** | § | |
| **INSURANCE COMPANY, and** | § | |
| **WESTPORT INSURANCE** | § | |
| **CORPORATION**, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| v. | § | |
| | § | |
| **ACON INVESTMENTS, L.L.C.** | § | |
| | § | |
| Additional Counterclaim Defendant | § | |
| | § | |
| | § | |


**ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., ARCH SPECIALTY
INSURANCE COMPANY, ASPEN SPECIALTY INSURANCE COMPANY, CERTAIN
UNDERWRITERS AT LLOYD'S OF LONDON (HISCOX), HDI GLOBAL INSURANCE
COMPANY, INDIAN HARBOR INSURANCE COMPANY, AND WESTPORT
INSURANCE CORPORATION'S
ANSWER AND AFFIRMATIVE DEFENSES
<u>TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS</u>**

The undersigned Counsel of Record, on behalf of Allied World Assurance Company (U.S.) Inc., Arch Specialty Insurance Company, Aspen Specialty Insurance Company), Certain Underwriters at Lloyd's of London (Hiscox), HDI Global Insurance Company, Indian Harbor Insurance Company, and Westport Insurance Corporation (collectively, the "Insurers") file this Answer and Affirmative Defenses to the Second Amended Complaint of Plaintiff Fiesta Mart, LLC ("Fiesta Mart").

1.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 1, except admit, based on information and belief, that Fiesta Mart is a supermarket chain in Houston, Texas.

2.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 2, except admit that that certain Fiesta Mart stores incurred physical damage as a consequence of Hurricane Harvey in Houston, Texas on or about August 25, 2017.

3.     The Insurers deny that they owe Fiesta Mart insurance proceeds, deny upon information and belief that Fiesta Mart's work to rebuild and reopen stores are related in any way to Fiesta Mart's ability to secure insurance proceeds, and are without sufficient information to admit or deny the remaining allegations in Paragraph 3.

4.     The allegations in Paragraph 4 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 4, except admit, based on information and belief, that ACON Investments, LLC secured insurance policies from the Insurers wherein the "Named Insured" with respect to Fiesta Mart was "ACON Fiesta Holdings, LLC," an entity that directly and/or indirectly owned Fiesta Mart during and/or prior to Hurricane Harvey on or about August 25, 2017.

2

5.     The allegations in Paragraph 5 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 5.

6.     The Insurers deny each and every allegation in Paragraph 6, except admit that the Insurers correctly and properly denied Fiesta Mart's non-compensable Hurricane Harvey insurance claim.

### Jurisdiction and Venue

7.     The Insurers deny each and every allegation in Paragraph 7, except admit, based on information and belief, that Defendants Willis of Illinois, Inc. and Willis Towers Watson US, LLC (collectively, "Willis"), removed this case from state court on the basis of diversity jurisdiction.

8.     Paragraph 8 asserts legal conclusions to which no response is required. To the extent a response is required, the Insurers do not dispute that venue in this Court is proper.

### Parties

9.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 9.

10.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 10.

11.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 11.

12.     The Insurers deny each and every allegation in Paragraph 12, except admit that Allied World Assurance Company (U.S.) is a Delaware corporation and the Insurers do not contest service of process on this entity.

13.     The Insurers deny each and every allegation in Paragraph 13, except admit that Arch Specialty Insurance Company is a Missouri corporation and the Insurers do not contest service of process on this entity.

14.     The Insurers deny each and every allegation in Paragraph 14, except admit that Aspen Specialty Insurance Company is a North Dakota corporation and the Insurers do not contest service of process on this entity.

15.     The Insurers deny each and every allegation in Paragraph 15, except admit that Hiscox Inc. is a New York corporation and the Insurers do not contest service of process on this entity.

16.     The Insurers deny each and every allegation in Paragraph 16, except note that they do not contest service of process on this entity.

17.     The Insurers deny each and every allegation in Paragraph 17, except admit that Indian Harbor Insurance Company is a Delaware corporation and the Insurers do not contest service of process on this entity.

18.     The Insurers deny each and every allegation in Paragraph 18, except admit that Westport Insurance Corporation is a Missouri corporation and the Insurers do not contest service of process on this entity.

**Relevant Factual Background**

19.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 19.

20.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 20.

21.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 21.

22.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 22, except admit, based on information and belief, that ACON Investments, LLC directly or indirectly owned Fiesta Mart during and prior to Hurricane Harvey.

23.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 23, except admit, based on information and belief, that Willis acted as insurance broker at all relevant times for ACON Investments, LLC.

A.      **Willis Becomes Fiesta Mart's Broker**

24.     The allegations in Paragraph 24 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 24.

25.     The allegations in Paragraph 25 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 25.

26.     The allegations in Paragraph 26 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 26.

27.     The allegations in Paragraph 27 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 27.

28.     The allegations in Paragraph 28 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 28.

29.     The allegations in Paragraph 29 are not directed at the Insurers. To the extent a response is required, The Insurers are without sufficient information to admit or deny the allegations in Paragraph 29.

30.     The allegations in Paragraph 30 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 30.

31.     The allegations in Paragraph 31 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 31.

32.     The allegations in Paragraph 32 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 32.

**B.     Hurricane Harvey**

33.     The Insurers deny the allegations in Paragraph 33, except admit that, on or about August 25, 2017, Hurricane Harvey made landfall and damaged property in Houston, including Fiesta Mart's store #23.

34.     The Insurers deny the allegations in Paragraph 34, except admit that Fiesta Mart's stores #56 and #10 sustained damage.

35.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 35.

36.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 36.

C.     **The Primary Policies**

37.     The Insurers deny each and every allegation in Paragraph 37, except admit that Willis secured insurance policies from the Insurers wherein the "Named Insured" with respect to Fiesta Mart was "ACON Fiesta Holdings, LLC," an entity that, upon information and belief, directly and/or indirectly owned Fiesta Mart during and/or prior to Hurricane Harvey, and the Insurers refer to those policies (Allied World Insurance Company Policy No. 0310-7409-1A, Arch Specialty Insurance Co. Policy No. ESP 7303053-01, Aspen Specialty Insurance Company Policy No. PRAGK1017, Hiscox Inc. Policy No. URS2552391.17, HDI Global Insurance Company Policy No. CPD1488300, Indian Harbor Insurance Company Policy No. PRO004762901, and Westport Insurance Corporation Policy No NAP 2001214 01, herein, the "Insurance Policies") and respectfully refer the Court to their terms and conditions.

38.     Paragraph 38 asserts legal conclusions to which no response is required. To the extent a response is required, the Insurers deny each and every allegation in Paragraph 38, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

39.     The Insurers deny each and every allegation in Paragraph 39, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

40.     The Insurers deny each and every allegation in Paragraph 40, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

41.     The allegations in Paragraph 41 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 41.

42.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 42.

43.     The allegations in Paragraph 43 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 43.

44.     The allegations in Paragraph 44 are not directed at the Insurers. To the extent a response is required, the Insurers deny each and every allegation in Paragraph 44, except state that they are without sufficient information to admit or deny allegations concerning any assurances made by Willis.

45.     The Insurers deny each and every allegation in Paragraph 45, except admit that the Insurers issued the Insurance Policies and respectfully refer the Court to their terms and conditions.

46.     The allegations in Paragraph 46 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 46.

47.     The Insurers deny each and every allegation in Paragraph 47, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

**D.**     **Fiesta Mart Submits the First Proofs of Loss and Willis Ensures that Fiesta Mart is Paid the Proceeds**

48.     The Insurers deny each and every allegation in Paragraph 48, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

49.     The Insurers deny each and every allegation in Paragraph 49, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

50.     The Insurers deny each and every allegation in Paragraph 50, except admit that, on or about September 28, 2017, Willis submitted to the Insurers First Partial Proofs of Loss on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" as and for its interest in property of Fiesta Mart that was damaged by Hurricane Harvey; the Insurers otherwise refer to the First Partial Proofs of Loss for their contents.

51.     The Insurers deny each and every allegation in Paragraph 51, except admit that, on or about September 28, 2017, Willis submitted to the Insurers First Partial Proofs of Loss on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" as and for its interest in property of Fiesta Mart that was damaged by Hurricane Harvey; the Insurers otherwise refer to the First Partial Proofs of Loss for their contents.

52.     The allegations in Paragraph 52 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 52.

53.     The allegations in Paragraph 53 are not directed at the Insurers. To the extent a response is required, the Insurers deny each and every allegation in Paragraph 53, except admit that, in connection with Willis's submission to the Insurers of First Partial Proofs of Loss on

behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)," Willis instructed the Insurers in writing to issue payment to Fiesta Mart.

54.     The Insurers deny each and every allegation in Paragraph 54, except admit that the Insurers accepted First Partial Proofs of Loss from Willis on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" as and for its interest in property of Fiesta Mart that was damaged by Hurricane Harvey; the Insurers otherwise refer to the First Partial Proofs of Loss for their contents.

55.     The Insurers deny each and every allegation in Paragraph 55, except admit that they followed instructions given by Willis on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)," including Willis's written instruction for the Insurers to issue payment to Fiesta Mart.

**E.      Willis Represents that it is on Fiesta Mart's "Team" to seek Insurance Proceeds for Fiesta Mart's Business Interruption Loss**

56.     The Insurers deny each and every allegation in Paragraph 56, except admit that Willis pursued a claim for business interruption losses on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" as and for its interest in property of Fiesta Mart that was damaged by Hurricane Harvey.

57.     The Insurers deny each and every allegation in Paragraph 57, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

58.     Paragraph 58 asserts legal conclusions to which no response is required. To the extent a response is required, the Insurers deny the allegations in Paragraph 58, except admit that "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" sustained a loss with respect to its interest in property of Fiesta Mart that was damaged by Hurricane Harvey.

59.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 59, except deny these allegations to the extent that they intend to suggest that "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" did not directly and/or indirectly own Fiesta Mart at the time of Hurricane Harvey or thereafter.

60.     The Insurers admit that Matson Driscoll & Damico LLP corresponded with Fiesta Mart and otherwise deny each and every allegation in Paragraph 60, including any allegation suggesting that "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" did not directly and/or indirectly own Fiesta Mart and any allegation suggesting that the Insurers' consultants did not act in accord with instructions from ACON and/or ACON's representatives at Willis.

61.     The allegations in Paragraph 61 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 61.

62.     The allegations in Paragraph 62 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 62.

**F.     ACON Sells Fiesta Mart**

63.     The allegations in Paragraph 63 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 63.

**G.     Willis Directs Fiesta Mart's Insurance Proceeds to ACON**

64.     The Insurers deny each and every allegation in Paragraph 64, except admit that, in August 2018, ACON submitted a number of Sworn Statements in Proof of Loss the contents of which speak for themselves.

65.     The Insurers deny each and every allegation in Paragraph 65, except admit that, in August 2018, ACON submitted a number of Sworn Statements in Proof of Loss the contents of which speak for themselves.

66.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 66.

67.     The allegations in Paragraph 67 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 67.

68.     The allegations in Paragraph 68 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 68.

69.     The allegations in Paragraph 69 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 69.

70.     The allegations in Paragraph 70 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 70.

71.     The allegations in Paragraph 71 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 71.

72.     The allegations in Paragraph 72 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 72.

73.     The allegations in Paragraph 73 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 73.

74.     The Insurers deny each and every allegation in Paragraph 74, except admit that, in late 2018, the Insurers paid a total of $4,780,347 to one or more ACON-owned entities as and for their losses, measured on an "actual cash value" basis, for the actual cash value of Fiesta Mart locations that were damaged by Hurricane Harvey.

75.     The allegations in Paragraph 75 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 75.

76.     The allegations in Paragraph 76 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 76.

77.     The allegations in Paragraph 77 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 77.

78.     The allegations in Paragraph 78 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 78.

79.     Paragraph 79 asserts legal conclusions to which no response is required. Further, the allegations in Paragraph 79 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 79.

80.     Paragraph 80 asserts legal conclusions to which no response is required. Further, the allegations in Paragraph 80 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 80.

81.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 81.

82.     The allegations in Paragraph 82 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 82, except deny that Insurers owe Fiesta Mart proceeds under the Insurance Policies, attorneys' fees, or any other costs or amounts.

## H.     **Willis Ignores its Insured, Fiesta Mart, as Fiesta Mart Seeks its Assistance for Remaining Harvey Loss Coverage**

83.     The allegations in Paragraph 83 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 83.

84.     The allegations in Paragraph 84 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 84.

85.     The allegations in Paragraph 85 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 85.

86.     Paragraph 86 asserts legal conclusions to which no response is required. Further, the allegations in Paragraph 86 are not directed at the Insurers. To the extent a response is

required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 86.

87.     Paragraph 87 asserts legal conclusions to which no response is required. Further, the allegations in Paragraph 87 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 87.

88.     The allegations in Paragraph 88 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 88, except deny that Insurers owe Fiesta Mart proceeds under the Insurance Policies, attorneys' fees, or any other costs or amounts.

89.     The allegations in Paragraph 89 are not directed at the Insurers. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 89.

**I.      The Insurers Refuse to Compensate Fiesta Mart under the Insurance Policy**

90.     The Insurers deny each and every allegation in Paragraph 90, except admit that the Insurers issued the Insurance Policies, and respectfully refer the Court to their terms and conditions.

91.     The Insurers deny each and every allegation in Paragraph 91, except admit that, in October 2018, Fiesta Mart sent a letter to the Insurers, the contents of which speak for themselves.

92.     The Insurers deny each and every allegation in Paragraph 92, except admit that, in October 2018, Fiesta Mart sent a letter to the Insurers, the contents of which speak for themselves.

93.     The Insurers deny each and every allegation in Paragraph 93, except admit that, in October 2018, the Insurers sent a letter to Fiesta Mart, the contents of which speak for themselves.

94.     The Insurers deny each and every allegation in Paragraph 94, except admit, based on information and belief, that Fiesta Mart and ACON entered into a litigation (that did not include the Insurers) and subsequent mediation (that did not include the Insurers), and that ACON purported to assign to Fiesta Mart a claim for insurance proceeds "despite ACON's lack of any ownership interest in Fiesta Mart at the time" as alleged above.

95.     The Insurers are without sufficient information to admit or deny the allegations in Paragraph 95.

96.     The Insurers deny each and every allegation in Paragraph 96, except admit that the respective legal counsel for the Insurers, Fiesta Mart, and ACON engaged in settlement discussions subject to a <u>White</u> waiver agreement (a without prejudice/confidentiality agreement) that protects the contents of such discussions from public disclosure through pleadings or otherwise.

97.     The Insurers deny each and every allegation in Paragraph 97, except admit that the respective legal counsel for the Insurers, Fiesta Mart, and ACON engaged in settlement discussions subject to a <u>White</u> waiver agreement that protects the contents of such discussions from public disclosure through pleadings or otherwise. Many if not all allegations set forth in Paragraph 97 breach the terms of the <u>White</u> waiver agreement, as well as mischaracterize the protected communications.

98.     The Insurers deny each and every allegation in Paragraph 98. Many if not all allegations set forth in Paragraph 98 breach the terms of the <u>White</u> waiver agreement, as well as mischaracterize the protected communications.

99.     The Insurers deny each and every allegation in Paragraph 99, except admit that the Insurers and ACON engaged in settlement discussions subject to a <u>White</u> waiver agreement that protects the contents of such discussions from public disclosure through pleadings or otherwise. Many if not all allegations set forth in Paragraph 99 breach the terms of the <u>White</u> waiver agreement, as well as mischaracterize the protected communications.

100.    The Insurers are without sufficient information to admit or deny the allegations in Paragraph 100.

101.    The Insurers deny each and every allegation in Paragraph 101, except admit that, in September of 2020, Fiesta Mart sent a letter to the Insurers, the contents of which speak for themselves.

102.    The Insurers deny each and every allegation in Paragraph 102, except admit that the Insurers sent Fiesta Mart a response letter, the contents of which speak for themselves.

103.    The Insurers deny each and every allegation in Paragraph 103.

**First Cause of Action**
**(Violation of Tex. Ins. Code §§ 541.051 and 541.061 by Willis)**

104.    Paragraph 104 requires no response. To the extent a response is required, the Insurers repeat and re-allege their responses to the preceding paragraphs as if set forth fully herein.

105.    Paragraph 105 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 105.

106.     Paragraph 106 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 106.

107.     Paragraph 107 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 107.

108.     Paragraph 108 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 108.

109.     Paragraph 109 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 109.

110.     Paragraph 110 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 110.

**Second Cause of Action**
**(Breach of Contract by Willis)**

111.     Paragraph 111 requires no response. To the extent a response is required, the Insurers repeat and re-allege their responses to the preceding paragraphs as if set forth fully herein.

112.     Paragraph 112 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 112.

113.     Paragraph 113 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 113.

114.     Paragraph 114 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 114.

115.     Paragraph 115 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 115.

**Third Cause of Action**
**(Negligence/Negligent Misrepresentation by Willis)**

116.     Paragraph 116 requires no response. To the extent a response is required, the Insurers repeat and re-allege their responses to the preceding paragraphs as if set forth fully herein.

117.     Paragraph 117 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 117.

118.     Paragraph 118 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 118.

119.     Paragraph 119 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 119.

120.     Paragraph 120 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 120.

121.     Paragraph 121 requires no response. To the extent a response is required, the Insurers are without sufficient information to admit or deny the allegations in Paragraph 121.

**Fourth Cause of Action**
**(Breach of Contract by the Insurers)**

122.     In response to Paragraph 122, the Insurers repeat and re-allege their responses to the preceding paragraphs as if set forth fully herein.

123.     The Insurers deny each and every allegation in Paragraph 123.

124.     The Insurers deny each and every allegation in Paragraph 124.

125.     The Insurers deny each and every allegation in Paragraph 125.

**Attorney Fees and Expenses**

126.    Paragraph 126 asserts legal conclusions to which no response is required. To the extent a response is required, the Insurers deny each and every allegation in Paragraph 126.

**Conditions Precedent**

127.    Paragraph 127 asserts legal conclusions to which no response is required. To the extent a response is required, the Insurers deny each and every allegation in Paragraph 127.

**Jury Demand**

128.    Paragraph 128 requires no response.

## AFFIRMATIVE DEFENSES

The Insurers allege as follows as and for their affirmative defenses to Fiesta Mart's First Amended Complaint.

### First Affirmative Defense

1.    The First Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

2.    Fiesta Mart's claims may be barred or limited by the doctrine of accord and satisfaction.

### Third Affirmative Defense

3.    Fiesta Mart's claim is barred, either in whole or in part, because the Insurers did not proximately cause Fiesta Mart to suffer any damages and Fiesta Mart's damages (if any) were caused by Fiesta Mart's own actions or the actions of others for which the Insurers are not responsible.

### Fourth Affirmative Defense

4.    Fiesta Mart has no legal right to recover attorneys' fees, costs of suit, penalties, punitive damages, or exemplary damages. The Insurers deny that they are obligated for the fees and/or costs set forth in Tex. Civ. Prac. & Rem. Code §38.001, *et. seq*., as awarding such costs and/or fees is not reasonable or just by virtue of the absence of damages.

### Fifth Affirmative Defense

5.    Fiesta Mart's claim may be barred by the doctrines of waiver, laches, unclean hands, and estoppel.

### Sixth Affirmative Defense

6.     Fiesta Mart failed to provide written notice to the Insurers in accordance with Texas Insurance Code §§ 541, 542, and 542A.

### Seventh Affirmative Defense

7.     Fiesta Mart's claims are barred because Plaintiff Fiesta Mart is neither the "Insured" nor an intended third-party beneficiary of the Insurance Policies.

8.     Moreover, under the Insurance Policies, the issuance of Certificates of Insurance is "subject always to" the terms of the Insurance Policies, and such terms prevent Plaintiff Fiesta Mart from being declared the "Named Insured."

9.     Additionally, the doctrines of estoppel and/or unclean hands and/or laches bar Fiesta Mart from claiming to have designated an "additional insured" under the Insurance Policies.

### Eighth Affirmative Defense

10.     Fiesta Mart's claims are barred because they rely on the validity of a purported assignment of a right to a certain type of insurance proceeds from ACON, and ACON did not possess any such right at the time of the purported assignment.

11.     To the extent Fiesta Mart accepted a purported assignment from ACON despite Fiesta Mart's actual knowledge that ACON did not have any such right to assign, Fiesta Mart's claims: amount to a misrepresentation; are barred by Fiesta Mart's own unclean hands; are otherwise barred; and Fiesta Mart should be judicially estopped or otherwise estopped from asserting the validity of any such assignment.

22

**Ninth Affirmative Defense**

12.     To the extent Fiesta Mart is in breach of its <u>White</u> waiver obligations with respect to the disclosure of the contents settlement discussions, the "at issue" doctrine prevents, estops, and/or otherwise bars Fiesta Mart from using such discussions as both a sword and a shield, and Fiesta Mart therefore cannot shield from this Court the fact or implications of Fiesta Mart's actual knowledge and belief that ACON did not have a valid assignable right to the insurance proceeds at issue at the time that Fiesta Mart accepted such assignment anyway.

**Tenth Affirmative Defense**

13.     Even if Fiesta Mart were the "Insured" under the Insurance Policies, Fiesta Mart's claims still would be barred to the extent that Fiesta Mart has failed to satisfy conditions precedent to coverage under the Insurance Policies, or any other such coverage triggers/requirements.

**Eleventh Affirmative Defense**

14.     Even if Fiesta Mart were the "Insured" under the Insurance Policies, Fiesta Mart's claims still would be subject to the terms and conditions of the Insurance Policies, including, but not limited to, the limits of liability, deductibles, exclusions, limitations and endorsements.

15.     For example, and without limitation, Fiesta Mart failed to act with "due diligence and dispatch" to rebuild or repair the property at issue. That failure was not attributable to the Insurers' non-payment and, even if it were, the Insurers had no duty to pay for such expenses on any date before they were actually incurred.

**Twelfth Affirmative Defense**

16.     To the extent Fiesta Mart's claimed damages were not caused by Hurricane Harvey, there is no coverage under the Insurance Policies.

**Thirteenth Affirmative Defense**

17.     Fiesta Mart's claims are barred in whole or in part by Fiesta Mart's failure to take reasonable measures to mitigate, minimize, or avoid damages.

**Fourteenth Affirmative Defense**

18.     Fiesta Mart's claim is barred to the extent it seeks recovery for damage to property that is not covered under the Insurance Policies.

**Fifteenth Affirmative Defense.**

19.     Any recovery by Fiesta Mart is subject to setoff or reduction to the extent amounts have already been paid by the Insurers.

**Sixteenth Affirmative Defense**

20.     Any recovery by Fiesta Mart is subject to setoff or reduction to the extent Fiesta Mart's losses were indemnifiable under any other insurance policy.

**Seventeenth Affirmative Defense**

21.     The Insurance Policies contain the following text that may serve to limit the amount of any potential recovery by Fiesta Mart:

> 10.     PROPERTY VALUATION - The basis of loss adjustment shall be as follows:
>
> ***
>
> h)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

i) The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

**Eighteenth Affirmative Defense**

22. Each of the Insurers severally provided quota share subscriptions for the Insurance Policies at issue.

23. The Insurance Policies' Participation Endorsement states in relevant part:

> In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.
>
> Provided that:
>
> 1. The collective liability of Insurer(s) shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.
>
> 2. The liability of each of the Insurer(s) shall not exceed the Participation Limit set against its name.
>
> Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

24. Each Insurer's respective liability is limited by the Participation Limit set against its name.

**Nineteenth Affirmative Defense**

25. The Insurers reserve the right to raise additional affirmative defense upon discovery of further information regarding Fiesta Mart's claim.

## COUNTERCLAIMS

1.      The Insurers bring these counterclaims seeking relief against Fiesta Mart and Additional Counterclaim-Defendant, ACON Investments, LLC ("ACON").

2.      These counterclaims seek a declaration that the portion of the assignment agreement entered into between ACON and Fiesta Mart regarding certain insurance proceeds is invalid, or alternatively, unenforceable against the Insurers.

3.      These counterclaims also seek a declaration that Fiesta Mart is not an insured under the Insurance Policies.

4.      These counterclaims also seek a declaration that Fiesta Mart has not performed repairs to its stores with "due diligence and dispatch," a condition precedent to coverage under the Insurance Policies.

### Parties

5.      Allied World Assurance Company (U.S.) Inc. is a Delaware corporation with a principal place of business in New York, New York.

6.      Arch Specialty Insurance Company a Missouri corporation with a principal place of business in Jersey City, New Jersey.

7.      Aspen Specialty Insurance Company is a North Dakota corporation with a principal place of business in Rocky Hill, Connecticut.

8.      Certain Underwriters At Lloyd's Of London (Hiscox) is a Delaware corporation with a principal place of business in New York, New York.

9.      HDI Global Insurance Company is an Illinois corporation with a principal place of business in Chicago, Illinois.

10.      Indian Harbor Insurance Company is a Delaware corporation with a principal place of business in Stamford, Connecticut.

11.     Westport Insurance Corporation is a Missouri corporation with a principal place of business in Kansas City, Missouri.

12.     Fiesta Mart is a Texas Limited Liability Company with its principal place of business in Houston, Texas.

13.     ACON is a Delaware Limited Liability Company with its principal place of business in Washington, D.C.

14.     Upon information and belief, ACON has only three members, all of whom are natural persons domiciled in Maryland.

## Jurisdiction and Venue

15.     The Court has subject matter jurisdiction because Defendant Willis removed this case from State court on the basis of diversity jurisdiction.

16.     The Court has personal jurisdiction over ACON because ACON has conducted business (including in relation to the matters in dispute here), and continues to conduct business, in the state of Texas.

17.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, as well as Rules 13, 19, and 20 of the Federal Rules of Civil Procedure.

18.     Venue is proper in this District because a substantial part of the events giving rise to the claims occurred here and this District is where the properties at issue in this lawsuit are located.

19.     Venue is also proper because, upon information and belief, Fiesta Mart is headquartered in Harris County, Texas.

## Relevant Factual Background

A.     **The Insurance Policies**

20.     Fiesta Mart is a supermarket chain in Houston, Texas.

27

21.     ACON is a private equity firm with investments in a diverse set of businesses.

22.     Upon information and belief, through affiliated entities, including Fiesta Holdings Investments, LLC, formerly ACON Fiesta Holdings LLC ("Fiesta Holdings"), ACON owned Fiesta Mart until on or about March 23, 2018, when it was sold to Bodega Latina Corporation ("Bodega").

23.     ACON maintained a program of property insurance policies in which the Insurers severally participated for the policy period of June 1, 2017 to June 1, 2018.

24.     The Insurance Policies define the "Insured" as:

> NAMED INSURED - This policy does insure ACON Investments, LLC and as per the attached endorsement schedule, any subsidiary, associated, allied or affiliated company, corporation, firm, organization, partnership, Joint Venture, Limited Liability Company or individual, whether wholly or partially owned or controlled by the Insured, where the Insured maintains an interest, or where the Insured is required to provide insurance, as now exist or are hereafter constituted or acquired, and any other party in interest that is required by contract or other agreement to be named, all hereafter referred to as the "Insured".

25.     Endorsement A1 to the Insurance Policies provides:

> With respects to the entity of, Fiesta Mart, the following terms and conditions shall apply:
>
> A.      Named Insured – ACON Fiesta Holdings, LLC

26.     The Insurance Policies also provide that any loss shall be "payable to the Insured, or as directed by them."

27.     The Insurance Policies' Endorsements did not designate, as an Insured, any "Fiesta" entity other than ACON Fiesta Holdings, LLC.

28.     Fiesta Mart, LLC is not listed as a named insured under the Insurance Policies.

B.     **Hurricane Harvey**

29.     On or about August 25, 2017, certain Fiesta Mart stores incurred physical damage as a consequence of Hurricane Harvey in Houston, Texas.

30.     Upon information and belief, with the exception of two stores, the physical damage to all Fiesta Mart stores was repaired by March 2018.

31.     The remaining stores are store numbers 56 and 10.

32.     Upon information and belief, Fiesta Mart Store Numbers 56 and 10 remain closed.

33.     Upon information and belief, Fiesta Mart Store Number 23 reopened on or about October 4, 2017.

C.     **The Two Proofs of Loss**

34.     On or about September 28, 2017, Willis submitted to the Insurers First Partial Proofs of Loss (the "First Proofs") on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" as and for the insurable interest in property of Fiesta Mart that was damaged by Hurricane Harvey.

35.     Upon information and belief, Willis did so at ACON's direction.

36.     Upon information and belief, ACON instructed Willis to instruct the Insurers to issue payment to Fiesta Mart.

37.     On ACON's behalf, Willis did so, in writing.

38.     This first payment, issued by the Insurers to Fiesta Mart, totaled $7.5 million.

39.     In or about August 2018, ACON submitted signed and notarized Second Partial Proofs of Loss (the "Second Proofs") claiming $4,780,347 (after a $250,000 deductible) in additional property damage.

40.     The Second Proofs were also submitted on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)" as the Insured.

41.     ACON instructed the Insurers to issue payment for the Second Proofs to a Wells Fargo bank account with the account name "Fiesta Holdings Investments, L.L.C."

42.     Upon information and belief, Fiesta Holdings Investments, L.L.C. was formerly named ACON Fiesta Holdings, L.L.C.

43.     Willis also instructed the Insurers to issue payment for the Second Proofs to ACON, because "ACON Investments is the Named Insured per the policy [and] there have been no requests from ACON to add an additional Insured or change the Named Insured as respects to Fiesta."

44.     Therefore, in response to the Second Proofs, the Insurers paid over $4 million to one or more ACON-owned entities as and for their property damage-related losses.

D.     **ACON Sells Fiesta Mart**

45.     Upon information and belief, on or about March 23, 2018, ACON entered a Membership Interest Purchase Agreement ("MIPA") with Bodega Latina Corporation.

46.     Upon information and belief, under the MIPA, ACON sold its interests in Fiesta Mart, LLC to Bodega.

47.     Upon information and belief, ACON Fiesta Holdings, LLC – the Insured specified in the Insurance Policies with respect to Fiesta Mart – was not transferred to Bodega pursuant to the MIPA.

48.     Upon information and belief, neither the proceeds nor claims to the proceeds paid for the losses resulting from Hurricane Harvey were conveyed to Bodega pursuant to the MIPA.

49.     Consequently, and upon information and belief, when ACON sold Fiesta Mart to Bodega, no previously-paid insurance proceeds for Harvey-related damage were included in the sale.

50.     Similarly, when ACON sold Fiesta Mart to Bodega, it did not assign to Fiesta Mart the right to collect any prospective insurance proceeds for Harvey-related damage.

51.     Upon information and belief, the MIPA disclosed the damage caused by Hurricane Harvey on Fiesta Mart stores and business.

52.     Specifically, upon information and belief, the MIPA disclosed that two stores were closed, the expectation that one would reopen, and that the impact of Hurricane Harvey on the other store was disputed by Fiesta Mart's landlord.

53.     The MIPA stated:

> Except with respect to the closing of Stores 10 and 56, the physical destruction to real and personal property has been repaired so that the Fiesta Improvements damaged by Hurricane Harvey are in all material respects: (i) in good operating condition and repair (ordinary wear and tear excepted) and (ii) suitable and adequate for continued use in the manner in which they are presently being used. The applicable Fiesta Group Company intends to reduce the size of Store No. 10 to approximately 60,000 square feet (from 102,400 square feet) and intends to sublease the remaining space. Fiesta Mart, L.L.C. entered into a non-binding letter of intent, dated October 11, 2017, with Dream Right, L.L.C. in regards to the proposed subleasing of such remaining space.
>
> ***
>
> Store No. 10 is currently closed due to damage from Hurricane Harvey and is expected to reopen in August or September of 2018. Fiesta Mart, L.L.C. intends to reduce the size of the grocery store to approximately 60,000 square feet (from 102,400 square feet) and intends to sublease the remaining space.

> With regard to Store No. 56, the applicable Fiesta Group Company is in a dispute with its landlord as to the impact of Hurricane Harvey on the store, including whether the lease was terminated by virtue of the Hurricane and who has the financial obligation to restore the premises under the Lease. The parties are currently working to resolve this matter which may include a re-location of this store.

54.     Thus, when ACON sold Fiesta Mart to Bodega, Fiesta Mart and ACON agreed that the only remaining unrepaired damage was to Store Numbers 10 and 56.

E.    **ACON Sues Fiesta Mart**

55.     On or about November 26, 2020, Fiesta Mart sued ACON in state court in Harris County, Texas, seeking, *inter alia*, the money ACON collected after submitting the Second Proofs.

56.     ACON then removed the lawsuit to federal court.

57.     On or about February 14, 2020, almost two years after ACON sold Fiesta Mart to Bodega, ACON and Fiesta Mart settled their dispute.

58.     On or about February 14, 2020, ACON assigned to Fiesta Mart certain purported rights under the Insurance Policies through an Assignment Agreement.

59.     The Insurers did not sign the Assignment Agreement.

60.     The Insurers never consented to this assignment in any manner.

61.     Upon information and belief, when ACON assigned Fiesta Mart these rights, it had no ownership interest in Fiesta Mart.

62.     Following ACON's sale of Fiesta Mart to Bodega, ACON could no longer incur repair costs in excess of ACV for which it would be compensated,

63.     Following ACON's sale of Fiesta Mart to Bodega, ACON could no longer assign any insurance proceeds that were not already incurred by Fiesta Mart.

64.     Upon information and belief, when ACON sold Fiesta Mart to Bodega, ACON had not incurred costs to repair physical damage in excess of the sums claimed in the First and Second Proofs.

65.     Upon information and belief, when ACON sold Fiesta Mart to Bodega, Fiesta Mart had not incurred costs to repair physical damage in excess of the sums claimed in the First and Second Proofs.

66.     Upon information and belief, when ACON entered into the Assignment Agreement with Fiesta Mart, Fiesta Mart had not incurred costs to repair physical damage in excess of the sums claimed in the First and Second Proofs.

67.     Upon information and belief, when ACON entered into the Assignment Agreement with Fiesta Mart, ACON had not incurred costs to repair physical damage in excess of the sums claimed in the First and Second Proofs.

68.     On or about February 21, 2020, Fiesta Mart's suit against ACON was dismissed.

F.     **Fiesta Mart Approaches the Insurers**

69.     During the pendency of the ACON/Fiesta Mart lawsuit, the Insurers' legal counsel was approached by respective legal counsel for ACON and Fiesta Mart to discuss any further proceeds potentially owed to either ACON or Fiesta Mart.

70.     Many of these conversations between legal counsel were held as settlement discussions subject to a written confidentiality agreement.

71.     Many of the allegations made by Fiesta Mart against Insurers in this lawsuit breach the terms of that confidentiality agreement.

72.     The Insurers' above-referenced payments in response to the First and Second Proofs were for the "actual cash value" of ACON's Fiesta Mart-related losses.

73. Fiesta Mart sought further monies, in the form of "depreciation holdback" (i.e. the difference between actual cash value and replacement cost value) from the Insurers.

74. The Insurance Policies provide, in relevant part:

> 10. PROPERTY VALUATION - The basis of loss adjustment shall be as follows:
>
> ***
>
> h) Other property not otherwise provided for; at replacement cost new without deduction for depreciation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:
>
> ***
>
> i) The repairs, replacement or reinstatement must be executed with due diligence and dispatch.
>
> ***

75. Upon information and belief, ACON has not incurred costs to repair physical damage in excess of the actual cash value of its losses.

76. Upon information and belief, Fiesta Mart has not incurred costs to repair physical damage in excess of the actual cash value of its losses.

77. To the extent the alleged damage to certain Fiesta Mart stores have not yet been repaired, at this point, over three years after Hurricane Harvey, the Insurance Policies' contractual requirement of acting with "due diligence and dispatch" to repair physical damage has long since passed, cannot be met, and any alleged costs are no longer compensable.

## CAUSES OF ACTION

### Count I
### (Declaratory Judgment that ACON's Assignment was Invalid)

78.     The Insurers reallege the material facts alleged in the preceding paragraphs 1 – 77 as if set forth fully herein.

79.     The Insurers seek a declaration by this Court of the rights of the Insurers and obligations of ACON under their contractual agreements.

80.     An actual and justiciable controversy exists between Fiesta Mart, ACON and the Insurers concerning the matters herein.

81.     The Insurers seek a judicial declaration confirming that ACON's assignment to Fiesta Mart of its purported right to depreciation holdback proceeds under the Insurance Policies was invalid, or alternatively, unenforceable against the Insurers.

82.     Declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

### Count II
### (Declaratory Judgment that Fiesta Mart is not an Insured under the Insurance Policies)

83.     The Insurers reallege the material facts alleged in the preceding paragraphs 1 – 82 as if set forth fully herein.

84.     The Insurers seek a declaration by this Court regarding the Insurers' contractual obligations under the Insurance Policies to ACON, their Insured, and not Fiesta Mart.

85.     An actual and justiciable controversy exists between Fiesta Mart and the Insurers on the other hand concerning the matters herein.

86.     The Insurers seek a judicial declaration confirming that Fiesta Mart is not an insured under the Insurance Policies.

87.     Declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

## Count III
**(Declaratory Judgment that Fiesta Mart Failed to use Due Diligence and Dispatch)**

88.     The Insurers reallege the material facts alleged in the preceding paragraphs 1 – 87 as if set forth fully herein.

89.      To the extent alleged damaged at certain Fiesta Mart stores listed under the Insurance Policies have not yet been repaired, at this point, over three years after Hurricane Harvey, the Insurance Policies' contractual requirement of acting with "due diligence and dispatch" period has long since passed, cannot be met, and any alleged costs are no longer compensable.

90.     An actual and justiciable controversy exists between Fiesta Mart and the Insurers concerning the matters herein.

91.     The Insurers seek a judicial declaration that if Fiesta Mart has been determined to be an Insured under the Insurance Policies, that Fiesta Mart did not exercise "due diligence and dispatch," and is not entitled to any compensation under the Insurance Policies.

92.     Declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

WHEREFORE, the Insurers demand judgment as follows:

A.  That Fiesta Mart take nothing;

B.  Dismissing the Second Amended Complaint with prejudice;

C.  Awarding the Insurers their costs and attorneys' fees;

D.  On Count I of the Counterclaim, Declaring the assignment agreement between ACON and Fiesta Mart invalid;

E.  On Count II of the Counterclaim, Declaring that Fiesta Mart is not an Insured under the Insurance Policies;

F.  On Count III of the Counterclaim, Declaring that Fiesta Mart failed to use due diligence and dispatch in repairing its Harvey-related losses; and

G.  and awarding the Insurers such other or further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Dustin L. DuBose

Dustin L. DuBose
Attorney-in-Charge
Texas Bar No. 24076004
Southern District of Texas No. 1034948

Mound Cotton Wollan & Greengrass LLP
3 Greenway Plaza, Suite 1300
Houston, Texas 77046
Email: DDubose@Moundcotton.com
Telephone: (281) 572-8350

Jeffrey S. Weinstein
Admitted *Pro Hac Vice*
Bruce R. Kaliner
Admitted *Pro Hac Vice*
Samuel B. Weiss

Admitted *Pro Hac Vice*

Mound Cotton Wollan & Greengrass LLP
One New York Plaza, Fl. 44
New York, New York 10004

JWeinstein@Moundcotton.com
BKaliner@Moundcotton.com
SWeiss@Moundcotton.com

Attorneys for Defendants Allied World Assurance Company (U.S.) Inc., Arch Specialty Insurance Company, Aspen Specialty Insurance Company), Certain Underwriters at Lloyd's of London (Hiscox), HDI Global Insurance Company, Indian Harbor Insurance Company, and Westport Insurance Corporation

<u>CERTIFICATE OF SERVICE</u>

I certify that on April 19, 2021, the foregoing was served by email and/or by electronic filing service on all counsel of record.

/s/ Dustin L. DuBose
Dustin L. DuBose

38