UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FIESTA MART, LLC**, | § | |
| | § | |
| Plaintiff | § | |
| | § | Hon. Lynn N. Hughes |
| v. | § | |
| | § | |
| **WILLIS OF ILLINOIS, INC., WILLIS** | § | Civil Action No.: 4:20-CV-03484 |
| **TOWERS WATSON US, LLC,** | § | |
| **ALLIED WORLD ASSURANCE** | § | |
| **COMPANY (U.S.) INC., ARCH** | § | |
| **SPECIALTY INSURANCE** | § | |
| **COMPANY, ASPEN SPECIALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S OF LONDON (HISCOX),** | § | |
| **HDI GLOBAL INSURANCE** | § | |
| **COMPANY, INDIAN HARBOR** | § | |
| **INSURANCE COMPANY, and** | § | |
| **WESTPORT INSURANCE** | § | |
| **CORPORATION**, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**INSURERS' MOTION FOR SUMMARY JUDGMENT AGAINST FIESTA MART, LLC**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................................1

UNDISPUTED MATERIAL FACTS .....................................................................................2

I.      The Policies...................................................................................................................2

II.     ACON's Hurricane Harvey Claim and First Payment...................................................5

III.    As was its Right, ACON Directs the Insurers' First Payment to Fiesta Mart, LLC...........6

IV.    Bodega Latina Corporation Buys Fiesta Mart, LLC.....................................................6

V.     The Insurers' Second Payment to their Insured, ACON...............................................7

VI.    Fiesta Mart, LLC Sues ACON....................................................................................7

VII.   Fiesta Mart, LLC Sues Willis and Later, the Insurers ................................................9

ARGUMENT............................................................................................................................10

I.      Legal Standard ...........................................................................................................10

        A.      Summary Judgment ........................................................................................10

        B.      Breach of Contract .........................................................................................10

II.     Fiesta Mart, LLC is Not an Insured ...........................................................................12

        A.      Fiesta Mart, LLC is Not an Insured Under the Policies.................................12

        B.      The Willis "Certificates of Insurance" do Not Make Fiesta Mart, LLC an
        Insured...........................................................................................................14

                1.      Willis of New York Issued "Evidence of Property Insurance," not
                "Certificates of Insurance"...............................................................14

                2.      Fiesta Mart, LLC has Produced no Evidence of Insurance Making it
                an Insured.........................................................................................16

                3.      The Documents on Which Fiesta Mart, LLC Relies Were Not Issued
                by Willis of Illinois .........................................................................18

III.    The Assignment Agreement Between ACON and Fiesta Mart, LLC is Invalid ..............19

        A.      The Assignment Agreement is Unenforceable Against All of the Insurers..........19

B.      The Westport and Aspen Policies Each Contain an Explicit Anti-Assignment Provision ........................................................................................20

CONCLUSION.............................................................................................................21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Acceptance Ins. Co. v. Walkingstick,
  887 F. Supp. 958 (S.D. Tex. 1995) ............................................................ 10

AIG Specialty Ins. Co. v. Ace Am. Ins. Co.,
  2019 WL 1243911 (S.D. Tex. Mar. 18, 2019) ........................................... 15

Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.,
  968 F.3d 504 (5th Cir. 2020) ..................................................................... 11

Balfour Beatty Constr., LLC v. Liberty Mut. Ins. Co.,
  366 F. Supp. 3d 836 (S.D. Tex. 2018) ....................................................... 11

Banco Popular, N. Am. v. Kanning,
  638 Fed. Appx. 328 (5th Cir. 2016) ........................................................... 21

Bank of New York Mellon as Tr. of Registered Holders of CWABS, Inc., Asset-Backed
  Certificates, Series 2004-5 v. Riley,
  2022 WL 1773364 (5th Cir. June 1, 2022) ................................................ 11

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986).................................................................................... 10

Cent. Mut. Ins. Co. v. White Stone Properties, Ltd.,
  2014 WL 1092121 (W.D. Tex. Mar. 19, 2014) ........................................... 9

Coker v. Coker,
  650 S.W.2d 391 (Tex. 1983)....................................................................... 11

Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.,
  2014 WL 4796967 (N.D. Tex. Sept. 26, 2014)............................................ 5

Dr. Michael Hoffman & Associates ex rel. Dallas Med. Holdings, Ltd. v. St. Paul Guardian Ins.
  Co.,
  2005 WL 1950848 (Tex. App.—Dallas Aug. 16, 2005, no pet.)............... 21

Fiess v. State Farm Lloyds,
  202 S.W.3d 744 (Tex. 2006)....................................................................... 11

Fiess v. State Farm Lloyds,
  392 F.3d 802 (5th Cir. 2004) ..................................................................... 11

Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501,
  261 S.W.3d 861 (Tex. App.—Dallas 2008, pet. denied)............................. 9

Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London,
  327 S.W.3d 118 (Tex. 2010)................................................................... 11

Hardy v. Johns-Manville Sales Corp.,
  851 F.2d 742 (5th Cir. 1988) ................................................................ 19

Houston Gen. Ins. Co. v. Owens,
  653 S.W.2d 93 (Tex. App.—Amarillo 1983, writ ref'd n.r.e.) ................ 10

In re Segerstrom,
  247 F.3d 218 (5th Cir. 2001) ................................................................ 10

Kahlig Auto Group v. Affiliated FM Ins. Co.,
  2021 WL 5227093 (W.D. Tex. May 20, 2021) ........................................ 9

Landmark Am. Ins. Co. v. Eagle Supply & Mfg. L.P.,
  530 S.W.3d 761 (Tex. App.—Eastland 2017, no pet.) ........................... 15

Lexington Ins. Co. v. Autobuses Lucano Inc.,
  256 Fed. Appx. 682 (5th Cir. 2007)...................................................... 15

Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.,
  40 F. Supp. 3d 817 (S.D. Tex. 2014) .................................................... 10

Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.,
  393 S.W.3d 379 (Tex. App.—Dallas 2012, no pet.)............................... 16

PHI, Inc. v. Apical Indus., Inc.,
  2020 WL 2220315 (W.D. La. May 7, 2020) .......................................... 19

Provident Life & Acc. Ins. Co. v. Goel,
  274 F.3d 984 (5th Cir. 2001) ................................................................ 10

Russell v. Scottsdale Ins. Co.,
  2014 WL 12770115 (S.D. Tex. Sept. 30, 2014) ....................................... 5

Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.,
  290 F.3d 303 (5th Cir. 2002) ................................................................ 10

TIG Ins. Co. v. Sedgwick James of Washington,
  184 F. Supp. 2d 591 (S.D. Tex. 2001) .................................................. 16

Vela Wood PC v. Associated Indus. Ins. Co., Inc.,
  485 F. Supp. 3d 704 (N.D. Tex. 2020) ............................................ 11, 17

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................... 10

iv

The Insurers[1] seek summary judgment against plaintiff Fiesta Mart, LLC because "Fiesta Mart, LLC" is not and never was an entity entitled to insurance proceeds under the express contractual terms of defendant Insurers' respective policies. For the reasons discussed below, the Court should find that Plaintiff is not an insured under the Insurers' policies. And it should also find that Fiesta Mart's attempt to rectify this issue years later, i.e., by executing an assignment agreement to which no Insurer was a party, is invalid, or at the very least unenforceable against the Insurers. These two findings warrant summary judgment in the Insurers' favor.

## <u>INTRODUCTION</u>

The entity, Fiesta Mart, LLC, seeks coverage under a first-party commercial property insurance program that provided coverage to ACON Investments, LLC ("ACON") and – by policy endorsement – to ACON Fiesta Holdings, LLC ("ACON Fiesta Holdings")[2] for damage sustained at various Fiesta Mart grocery stores in the Houston area during Hurricane Harvey in August 2017.

But Fiesta Mart, LLC is not and never was an insured entity under the insurance policies the Insurers issued to ACON. There is no contractual privity between Insurers and Fiesta Mart, LLC under the Policies. It therefore has no right to any of its insurance proceeds.

Fiesta Mart, LLC points to "certificates of insurance" issued by its broker, Willis, but those also do not make it an insured. These "certificates" are actually standard ACORD 27 (2016/03)

---

[1] Allied World Assurance Company (U.S.) Inc., Arch Specialty Insurance Company, Aspen Specialty Insurance Company, HDI Global Insurance Company, Certain Underwriters at Lloyd's, London (Hiscox), Indian Harbor Insurance Company, and Westport Insurance Corporation.

[2] ACON is a private equity firm based in Washington, D.C., which owns various portfolio companies throughout the United States, Latin America, and Southern Europe. One of those portfolio companies is ACON Fiesta Holdings, LLC, which in turn had an interest in the separate entity, "Fiesta Mart, LLC" during Hurricane Harvey.

Fiesta Mart, LLC manages and operates the Fiesta Mart grocery stores, which collectively do approximately $1 billion in yearly sales. Three of those stores are at issue here. For this reason, any references herein to "Fiesta Mart" alone refer to the trade name of the grocery stores.

forms, which are different "evidence of property insurance," issued to entities other than Fiesta Mart, LLC, and issued by an entity other than the one allowed by the Policies.

Trying to circumvent these issues, on February 14, 2020 Fiesta Mart, LLC executed an assignment agreement with its former parent company, ACON. But because ACON had no interest, economic or otherwise, in the Fiesta Mart stores when the assignment agreement was executed, that agreement also does not grant Fiesta Mart, LLC any right to insurance proceeds under the Policies.

Because Plaintiff, Fiesta Mart, LLC, cannot establish any contractual claim to insurance proceeds under the Policies, the Court should grant the Insurers' Motion for Summary Judgment.

## UNDISPUTED MATERIAL FACTS

I.   **THE POLICIES**

The Insurers severally issued their policies to ACON Investments, LLC for the one-year period beginning on June 1, 2017. The Policies, which follow a common manuscript form, list ACON Investments, LLC as the Named Insured.[3] See Ex. 1, Westport Policy at Westport_000112. The Policies also contain a "Named Insured" provision:

> NAMED INSURED - This policy does insure ACON Investments, LLC and as per the attached endorsement schedule, any subsidiary, associated, allied or affiliated company, corporation, firm, organization, partnership, Joint Venture, Limited Liability Company or individual, whether wholly or partially owned or controlled by the Insured, where the Insured maintains an interest, or where the Insured is required to provide insurance, as now exist or are hereafter constituted or acquired, and any other party in interest that is required by contract or other agreement to be named, all hereafter referred to as the "Insured".

---

[3] Each Insurers' policy is attached as Exhibits 1 through 7 to the December 15, 2022 Declaration of Jeffrey S. Weinstein. Unless otherwise noted, the relevant provisions are identical, and the Insurers cite to Exhibit 1: the Westport Policy.

Ex. 1, Westport Policy at Westport_000112. It is important to note that the underline in the text of the Named Insured clause is found in all of the Policies.

As expressly referenced in the underlining of the Named Insured provision, the Policies contain a series of endorsement schedules – A1 to H1 – identifying various entities within the ACON network of companies and the specified Named Insured for each such entity. Relevant here is Endorsement A1:

### Endorsement A1

**With respects to the entity of, Fiesta Mart, the following terms and conditions shall apply:**

**A.**    Named Insured – ACON Fiesta Holdings, LLC

**B.**    All Other Perils Deductible

DEDUCTIBLE CLAUSE - All losses, damages, or expenses arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted $**250,000**.

\*\*\*

Ex. 1, Westport Policy at Westport_000145.

The Policies specify that losses may either be payable to the Insured "or as directed by them." Ex. 1, Westport Policy at Westport_000114. And the Policies allow one entity to name additional insureds: "Willis of Illinois, Inc.":

> 57.    CERTIFICATES OF INSURANCE - It is understood and agreed that Willis of Illinois, Inc. is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

Ex. 1, Westport Policy at Westport_000136.

Finally, the Policies provide instructions on how to calculate the value of a property damage loss:

> 10.    PROPERTY VALUATION - The basis of loss adjustment shall be as follows:
>
> ***
>
> h)    Other property not otherwise provided for; at replacement cost new without deduction for depreciation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:
>
>> i)    The repairs, replacement or reinstatement must be executed with due diligence and dispatch.
>>
>> ii)    This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

Ex. 1, Westport Policy at Westport_000116-17.

In other words, only if the damaged property is repaired "with due diligence and dispatch," may an insured under the Policies collect replacement cost value, which the Policies define as "replacement cost new without deduction for depreciation." If not, "the Company shall not be

liable for more than the actual cash value of the property damaged or destroyed."[4] And until repairs in excess of ACV are made, no RCV payment is owed. Ex. 1, Westport Policy at Westport_000116-17.

Here, it is undisputed that the Insurers have paid out the full ACV value of ACON's claim. Ex. 8, Dep. Tr. of Jack Hook, Vol. I, at 37:12-38:1; 60:4-18. It is undisputed that no party has incurred costs in excess of the loss' ACV value to repair the Fiesta Mart stores at issue. Id. at 39:8-21. And it is undisputed that before the assignment, neither ACON nor Fiesta Mart, LLC had incurred costs in excess of the ACV for repairing the Fiesta Mart stores in question. Ex. 9, Dep. Tr. of Drew Scielzo at 85:4-86:10; Ex. 8, Dep. Tr. of Jack Hook, Vol. I, at 33:14-25; 39:8-20.

## II.   **ACON'S HURRICANE HARVEY CLAIM AND FIRST PAYMENT**

After Hurricane Harvey, ACON sought insurance coverage for several of its portfolio companies under the policies at issue, including for its interest – through ACON Fiesta Holdings – in certain flood damaged Fiesta Mart stores located in Texas. To date, the Insurers have paid more than $12 million to ACON for its Fiesta Mart property-damage claim. See Ex. 10, Insurers' Counterclaim, ECF No. 50 at ¶¶38, 44; Ex. 11, Fiesta Mart, LLC's Answer to the Insurers' Counterclaim, ECF No. 51 at ¶¶38, 44; see also Ex. 8, Dep. Tr. of Jack Hook, Vol. I, at 37:12-38:1; 60:4-18.

---

[4] Put differently, Actual Cost Value, or ACV, is "the depreciated value of the property at the time of damage." Replacement Cost Value, or RCV, is the "cost of replacement or repairs, but only after the damaged property is replaced or repaired." Russell v. Scottsdale Ins. Co., 2014 WL 12770115, at *7 (S.D. Tex. Sept. 30, 2014). The term "depreciation holdback" is colloquially used to describe "the difference between the replacement cost value and actual cost value or the depreciation value." Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co., 2014 WL 4796967, at *6 (N.D. Tex. Sept. 26, 2014).

## III.   AS WAS ITS RIGHT, ACON DIRECTS THE INSURERS' FIRST PAYMENT TO FIESTA MART, LLC

At ACON's direction, the first of these payments – $7.5 million – was paid directly to plaintiff Fiesta Mart, LLC. See Ex. 9, Dep. Tr. of Drew Scielzo at 126:18-127:9; Ex. 12, WTW_00012961. The Proofs of Loss for this payment were prepared and executed by Wayne Peterson – then an officer of both ACON Fiesta Holdings and Fiesta Mart, LLC – for each Insurer. See Ex. 13, First Set of Proofs of Loss; Ex. 9, Dep. Tr. of Drew Scielzo at 137:17-21.

In January 2018, ACON's broker, Willis Towers Watson, submitted a preliminary property damage claim to the Insurers for hurricane damage to various Fiesta Mart stores. See Ex. 14, WTW_00025095. Most of ACON's claim was for flood damage to three stores: Stores 10, 23, and 56. It is undisputed that the only claim proceeds still sought against the Insurers are these stores' "depreciation holdback."[5] See Ex. 15, Fiesta Mart, LLC's Second Amended Complaint ("FM SAC"), ECF No. 46 at ¶¶90-93, 100-103; see also Ex. 8, Dep. Tr. of Jack Hook, Vol. I, at 24:21-25:1. And it is also undisputed that the Insurers have paid the claim's ACV value – part to Fiesta Mart, LLC at ACON's direction, and the rest to ACON, the Policies' Insured. See Ex. 8, Dep. Tr. of Jack Hook, Vol. I, at 37:12-38:1; 60:4-18.

## IV.   BODEGA LATINA CORPORATION BUYS FIESTA MART, LLC

By a Membership Interest Purchase Agreement ("MIPA") dated March 23, 2018, ACON sold its interest in Fiesta Mart, LLC and the grocery stores that are the subject of this suit – but not its interest in ACON or in ACON Fiesta Holdings – to Bodega Latina Corporation ("Bodega

---

[5] Under Texas law, because repairs were not undertaken in a timely manner, the proper insured here would only be entitled to an ACV recovery. But that is not the subject of this motion. The issue *here* is whether Fiesta Mart, LLC is an insured or assignee of the Policies. And because Fiesta Mart, LLC is not, whether it incurred costs to make repairs in excess of the claim's ACV (which has already been paid) is academic.

Latina"). Ex. 8, Dep. Tr. of Jack Hook, Vol. I at 229:8-230:7; see also, generally, Ex. 16, MIPA. Even with this transaction, ACON remained contractually entitled to, and in control of, the disposition of property damage and business interruption insurance proceeds from this loss. The entity "Fiesta Mart, LLC" obtained no such contractual rights.

It is undisputed that in the MIPA, neither ACON nor ACON Fiesta Holdings assigned any insurance-related benefits to Fiesta Mart, LLC or to Bodega Latina. Cf. Ex 8, Dep. Tr. of Jack Hook, Vol. 1 at 46:4-13; see also, generally, Ex. 16, MIPA. In fact, besides certain business interruption insurance proceeds – the rights to which ACON specifically retained – the MIPA was silent on outstanding property damage insurance proceeds from Hurricane Harvey. Ex. 8, Dep. Tr. of Jack Hook, Vol. I, at 216:4-217:6; Ex 8, MIPA at WTW_0000942. And it is undisputed that Bodega Latina did not acquire any interest in ACON or ACON Fiesta Holdings. Ex. 8, Dep. Tr. of Jack Hook, Vol. I, at 229:8-213:7.

## V.   THE INSURERS' SECOND PAYMENT TO THEIR INSURED, ACON

After ACON sold Fiesta Mart, LLC to Bodega Latina, ACON executed a second set of proofs of loss and instructed the Insurers to issue a second payment – $4.78 million – directly to ACON. Ex. 17, WTW_00012471; Ex. 18, Second Set of Proofs of Loss. And in the summer of 2018, the Insurers did so. Ex. 15, FM SAC at ¶¶64, 72, 74. That fall, Fiesta Mart, LLC first became aware – through Willis – that the Insurers had issued the second payment to ACON. Ex. 15, FM SAC at ¶¶71-72.

## VI.   FIESTA MART, LLC SUES ACON

That November, Fiesta Mart, LLC sued ACON, seeking recovery of the Insurers' second $4.78 million payment. Ex. 19, Original Compl. in ACON v. Fiesta Mart, LLC, S.D. Tx. Civ. No. 4:18-cv-04704. Notably, Fiesta Mart, LLC did not sue the Insurers. Thirteen months later however,

Fiesta Mart, LLC and ACON settled for $3.1 million.[6] Also as part of that settlement, ACON tried to assign the depreciation holdback amounts under the Policies through a February 14, 2020 Assignment Agreement. Ex. 20, Assignment Agreement. It is undisputed that the Insurers are not a party to that agreement. Id.

Nor is the monetary amount at issue disputed. Fiesta Mart, LLC has adopted the Insurers' ACV and RCV calculations:

| Store No. | RCV | ACV | Depreciation |
|:---:|:---:|:---:|:---:|
| 10 | $6,590,580.17 | $3,640,762.15 | $2,949,818.02 |
| 23 | $3,908,820.57 | $2,277,518.57 | $1,631,302.00 |
| 56 | $4,226,424.19 | $2,349,269.95 | $1,877,154.24 |
| **Total:** | **$14,725,824.93** | **$8,267,550.67** | **$6,458,274.26** |

And as discussed above, it is undisputed that the Insurers have fully paid ACON's claimed ACV.

Finally, and perhaps most significantly, it is also undisputed that before entering into the assignment, neither ACON nor Fiesta Mart, LLC had incurred costs in excess of the ACV of the Fiesta Mart stores in question. Ex. 9, Dep. Tr. of Drew Scielzo at 85:4-86:10; Ex. 8, Dep. Tr. of Jack Hook, Vol. 1, at 33:14-25; 39:8-20. If such costs in excess of ACV had been incurred by ACON or ACON Fiesta Holdings, one of those entities may have had a claim to the depreciation holdback. But because neither entity – nor Fiesta Mart, LLC – made repairs costing in excess of ACV, the depreciation holdback monies have *never* been payable, meaning that there can be no legitimate dispute between Fiesta Mart, LLC and ACON as to who would be entitled to the

---

[6] Fiesta Mart, LLC seeks the difference between that settlement and the $4.78 million – approximately $1.7 million – from Willis.

depreciation holdback.[7] This fight over the depreciation holdback monies is theoretical and academic; it is not justiciable.

## VII.   **FIESTA MART, LLC SUES WILLIS AND LATER, THE INSURERS**

Eight months after Fiesta Mart, LLC settled with ACON, Fiesta Mart, LLC sued Willis, claiming that Willis did not properly ensure that Fiesta Mart, LLC's interests were properly represented during ACON's claim. Three months after that, Fiesta added the Insurers as additional defendants.

Fiesta Mart, LLC asserted both contractual and extracontractual claims against Willis, but it alleges a single count against the Insurers: breach of contract. See Ex. 15, FM SAC at ¶¶122-125. In response, the Insurers asserted counterclaims against Fiesta Mart, LLC seeking a declaration that:

1.   Fiesta Mart, LLC is not an insured under the Policies;

2.   The assignment agreement between Fiesta Mart, LLC and ACON is invalid; and

3.   Fiesta Mart, LLC has not made repairs in excess of ACV to its stores with "due diligence and dispatch," a condition precedent to coverage under the Policies.

Ex. 10, Insurers' Counterclaims to FM SAC at ¶¶78-92.

Because there are no disputed material facts, the Insurers now seek summary judgment dismissing Fiesta Mart, LLC's breach of contract claim and declaring that: 1) Fiesta Mart, LLC is

---

[7] Under Texas law, when a policy states – like these do – that an insurer is only liable for "lesser of" RCV or "the amount actually and necessarily expended in repairing or replacing said property," there can be no collection of RCV until those monies have actually been spent. See Kahlig Auto Group v. Affiliated FM Ins. Co., 2021 WL 5227093, at *6 (W.D. Tex. May 20, 2021) ("The replacement of damaged property is an event that triggers coverage") (citing Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501, 261 S.W.3d 861, 864 (Tex. App.—Dallas 2008, pet. denied); see also Cent. Mut. Ins. Co. v. White Stone Properties, Ltd., 2014 WL 1092121, at *6 (W.D. Tex. Mar. 19, 2014), aff'd, 596 Fed. Appx. 333 (5th Cir. 2015).

not an Insured under the Policies; and 2) that the assignment agreement between Fiesta Mart, LLC and ACON is invalid, or at the very least unenforceable against the Insurers.

## **ARGUMENT**

I.   **LEGAL STANDARD**

A.   **Summary Judgment**

Summary Judgment is proper in a case in which there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. Provident Life & Acc. Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. In re Segerstrom, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co., 290 F.3d 303, 310 (5th Cir. 2002).

"Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial." Acceptance Ins. Co. v. Walkingstick, 887 F. Supp. 958, 960 (S.D. Tex. 1995) (citing cases).

B.   **Breach of Contract**

To prevail against the Insurers, Fiesta Mart, LLC must show either that it was an Insured under the Policies or that it has some other contractual claim to the insurance proceeds available under the Policies. See, e.g., Houston Gen. Ins. Co. v. Owens, 653 S.W.2d 93, 97 (Tex. App.— Amarillo 1983, writ ref'd n.r.e.); see also, generally, Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co., 40 F. Supp. 3d 817, 830 (S.D. Tex. 2014) (burden of proof to establish coverage in the first instance

on the party seeking coverage) (citing Fiess v. State Farm Lloyds, 392 F.3d 802, 807 (5th Cir. 2004)).

In Texas, "[i]nsurance policy interpretation principles emphasize a policy's plain language in determining its intended coverage." Balfour Beatty Constr., LLC v. Liberty Mut. Ins. Co., 366 F. Supp. 3d 836, 840 (S.D. Tex. 2018) (citing Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 131 (Tex. 2010)), aff'd sub nom. Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co., 968 F.3d 504 (5th Cir. 2020). "The parties' intent is governed by what they said in the insurance contract, not by what one side or the other alleges they intended to say but did not." Id. And "for more than a century the Supreme Court of Texas has held that in construing insurance policies where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction." Id. (citing Fiess v. State Farm Lloyds, 202 S.W.3d 744, 753 (Tex. 2006)).

Here, Fiesta Mart, LLC cannot show that it was an insured under the Policies. Nor can it show that it has a contractual claim to the insurance proceeds available under the Policies.

There are no undisputed material facts. The parties do not dispute the existence or contents of the relevant documents: the Policies, MIPA, assignment agreement, and ACORD forms. And the interpretation of these documents presents only questions of law. See, e.g., Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (unambiguous contracts construed by courts as a matter of law); Vela Wood PC v. Associated Indus. Ins. Co., Inc., 485 F. Supp. 3d 704, 708 (N.D. Tex. 2020) ("Interpretation of an insurance policy is a question of law."); Bank of New York Mellon as Tr. of Registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5 v. Riley, 2022 WL 1773364, at *5 (5th Cir. June 1, 2022) (same, citing Coker).

Nor do the parties dispute that neither Fiesta Mart, LLC nor ACON has incurred costs in excess of the ACV. Because of this, judgment in the Insurers' favor is warranted.

II.    **FIESTA MART, LLC IS NOT AN INSURED**

    A.    **Fiesta Mart, LLC is Not an Insured Under the Policies**

Fiesta Mart, LLC argues that as a "subsidiary, associated, allied or affiliated company, corporation, firm, organization, partnership, Joint Venture, [or] Limited Liability Company" of either ACON or ACON Fiesta Holdings, the entity "Fiesta Mart, LLC" is an Insured under the Policies. See Ex. 21, Fiesta Mart Opp. to Willis Mot. for Sum. J., ECF No. 75 at p. 12. Not so.

An insured under the Policies is determined by the Policies' Named Insured Provision. *That* provision is clear. The insured is either: 1) ACON Investments, LLC; or 2) "as per the attached endorsement schedule," certain other entities. Ex. 1, Westport Policy at Westport_000112. These other entities are limited; only those listed on the Policies' endorsement schedule qualify.

Fiesta Mart, LLC claims that Endorsement A1 refers to it. Ex. 15, FM SAC at ¶¶39, 69. But a plain reading of the Policies belies that claim. "ACON Fiesta Holdings, LLC" is listed on Endorsement A1. "Fiesta Mart, LLC" is not. Ex. 1, Westport Policy at Westport_000145. Indeed, rather than listing "Fiesta Mart, LLC" as Endorsement A1's insured, the Policies specify that "[w]ith respects to the entity of, Fiesta Mart," the insured is "ACON Fiesta Holdings, LLC." Ex. 1, Westport Policy at Westport_000145. Fiesta Mart, LLC – the Plaintiff here – is therefore not an Insured.

Contrast this with all of the Policies' other endorsements. Endorsement B1 specifies that "with respect to the entity of Funko, LLC," the insured is "Funko, LLC." Ex. 1, Westport Policy at Westport_000146. Endorsement C1 specifies that "with respect to the entity of Igloo Products

Corp," the insured is "Igloo Products Corp." And Endorsement D1 specifies that "with respect to the entity of IWP Holdings, LLC," the insured is "IWP Holdings, LLC."[8]

Endorsement A1 is plainly different: it specifies that the insured entity is ACON Fiesta Holdings, *not* Fiesta Mart, LLC. In fact, the Policies never mention "Fiesta Mart, LLC" – the plaintiff here seeking coverage – at all, because it is not an insured. Nor does Fiesta Mart, LLC dispute that its entity name – Fiesta Mart, LLC – is not found in the Policies.

Instead, one of its own designated corporate witnesses – CFO Jack Hook – testified that Willis "clearly did not" secure insurance for Fiesta Mart, LLC. Ex. 22, Dep. Tr. of Jack Hook, Vol. II, at 33:15-16. And over the course of Fiesta Mart, LLC's deposition, Mr. Hook repeats this fact, again and again:

> Willis said it had secured insurance for Fiesta Mart and it clearly did not.
>
> ***
>
> The most basic thing Willis was supposed to do is secure policy coverage for its clients. It did not do that.
>
> ***
>
> Willis did not secure property insurance coverage for Fiesta.
>
> ***
>
> If 50 stores had been damaged and there would have been $100 million worth of damage. The way it happened is $100 million would have gone to ACON and not Willis, it would have been the end of Fiesta. Willis did not do its most basic function as a broker and that's to secure property coverage.
>
> ***
>
> It goes back to the main issue of, you know, we thought we had insurance at this time and we did not. So by that very fact of not

---

[8] So too for Endorsements E1, F1, G1, and H1 – the listed name of the entity is the identical to the specified Named Insured. Ex. 1, Westport Policy at Westport_000149-152.

> having insurance we were being deprived of our ability to tap the depreciation holdback.
>
> ***

Dep. Tr. of Jack Hook, Vol. II, at 33:15-16, 18-21; 33:24–34:1; 34:3-9; 47:23-48:2.

Fiesta Mart, LLC's corporate representative's repeated admissions are in accord with plaintiff not being an insured under the Insurers' policies. The Policies are clear: the relevant insureds here are ACON and ACON Investment Holdings. Fiesta Mart, LLC is not an Insured. Fiesta Mart, LLC is therefore not entitled to proceeds under the Policies.

### B.    The Willis "Certificates of Insurance" do Not Make Fiesta Mart, LLC an Insured

Because "Fiesta Mart, LLC" is not an insured under the Policies, Fiesta Mart, LLC next claims that Willis of Illinois issued "certificates of insurance" that somehow make it one. Ex. 15, FM SAC at ¶¶45-46. Fiesta Mart, LLC is wrong here too for three independent reasons.

First, these documents are not "certificates of insurance" but "evidence of property insurance," that set forth in bold font lettering on the face of the document an explicit and unmistakable disclaimer that the provided information does not supersede the coverage afforded under the Policies. Second, the documents themselves do not purport to add Fiesta Mart, LLC as an insured. Rather, they purport to add various *other* entities – like landlords and mortgagees – as additional interests. And third, Willis of Illinois – the only entity the Policies allow to issue "certificates of insurance" (which these are not) did not issue the documents – Willis of New York did.

### 1.    Willis of New York Issued "Evidence of Property Insurance," not "Certificates of Insurance"

During discovery, Fiesta Mart, LLC produced documents it called "certificates of insurance." Only three are relevant here: two for Store 10 and one for both Stores 23 and 56 (the

three stores at issue in this litigation). See Ex. 23, Store 10 Evidences of Property Insurance, Fiesta_Mart0000902, Fiesta_Mart0000991; Ex. 24, Store 23 and 56 Evidence of Property of Insurance, Fiesta_Mart0000945. But those documents are entitled "Evidence of Property Insurance," not certificates of insurance. Id.

Texas Courts have construed similar documents as merely *evidence* of coverage, rather than separate *contracts* for insurance. See, e.g., Lexington Ins. Co. v. Autobuses Lucano Inc., 256 Fed. Appx. 682, 684 (5th Cir. 2007) (where certificate of insurance specifically provided that it "confer[red] no rights" and did not "amend, extend or alter the coverage afforded by the policies … Texas law provides that the certificate of insurance does not supersede the plain language of the insurance policy"); AIG Specialty Ins. Co. v. Ace Am. Ins. Co., 2019 WL 1243911, at *5 (S.D. Tex. Mar. 18, 2019) ("The Court rejects any argument that the Certificate evidences the scope of the disputed insurance coverage afforded by the policy at issue here, consistent with the Fifth Circuit's" decision in Autobuses); Landmark Am. Ins. Co. v. Eagle Supply & Mfg. L.P., 530 S.W.3d 761, 769 (Tex. App.—Eastland 2017, no pet.) ("By express terms, the certificate did not confer any rights to [a third party] as the certificate holder, and it did not alter or amend the coverage provided by the applicable insurance policies.").

Here, each Evidence of Property Insurance contains the following capitalized, bolded, disclaimer:

> **THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.**

It is well-established under Texas law that when documents like these contain language stating that they do not amend, extend, or alter the terms of any insurance policy mentioned in the certificate, the terms of the certificate are subordinate to the terms of the insurance policy. TIG Ins. Co. v. Sedgwick James of Washington, 184 F. Supp. 2d 591, 597 (S.D. Tex. 2001), aff'd, 276 F.3d 754 (5th Cir. 2002)).

Here, each document cited by Fiesta Mart, LLC is merely "'evidence' that the insurance described [in it] exists; there is no indication in the document that it constitutes an insurance contract in and of itself." Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co., 393 S.W.3d 379, 393 (Tex. App.—Dallas 2012, no pet.).

## 2.    Fiesta Mart, LLC has Produced no Evidence of Insurance Making it an Insured

Even if an "Evidence of Property Insurance" and a "certificate of insurance" are the same, none does what Fiesta Mart, LLC says it does: makes Fiesta Mart, LLC an Insured.

The documents at issue are form documents – ACORD 27 (2016/03) – with various sections filled in. The top section – which includes the disclaimer discussed above – lists (among other things) the issuing agency, the relevant insurance company, and the original insured under the policy or policies. See, e.g., Ex. 23, Store 10 Evidence of Property Insurance, Fiesta_Mart0000902.

| THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST. | | |
|---|---|---|
| AGENCY    PHONE (A/C, No, Ext): 1-877-945-7378 <br> Willis of New York, Inc. <br> c/o 26 Century Blvd <br> P.O. Box 305191 <br> Nashville, TN   372305191   USA | COMPANY <br> Westport Insurance Corporation <br> 5200 Metcalf Ave <br> Overland Park, KS   66202 | |
| FAX (A/C, No): 1-888-467-2378   E-MAIL ADDRESS: certificates@willis.com | | |
| CODE:                              SUB CODE: | | |
| AGENCY CUSTOMER ID #: | | |
| INSURED Fiesta Mart, L.L.C. <br> 5235 Katy Freeway <br> Houston, TX   77007 | LOAN NUMBER | POLICY NUMBER <br> NAP 2001214 01 |
| | EFFECTIVE DATE 06/01/2017   EXPIRATION DATE 06/01/2018 | CONTINUED UNTIL TERMINATED IF CHECKED |
| | THIS REPLACES PRIOR EVIDENCE DATED: | |

And the bottom section lists the "additional interest" for which the form is issued, which can be an "additional insured," "lender's loss payable," "loss payee," or "mortgagee." See, e.g., Ex. 23, Store 10 Evidence of Property Insurance, Fiesta_Mart0000902.

| ADDITIONAL INTEREST | | |
|---|---|---|
| NAME AND ADDRESS <br><br><br> Guilford Glazer & Associates <br> 9440 Santa Monica Blvd., Suite 610 <br> Beverly Hills, CA 90210 | X ADDITIONAL INSURED    LENDER'S LOSS PAYABLE   X LOSS PAYEE <br> MORTGAGEE | |
| | LOAN # | |
| | AUTHORIZED REPRESENTATIVE <br> Britt Ingle | |

Although "Fiesta Mart, LLC" is listed as the "insured" in the top section, that is not where the form adds additional interests. It does so at the bottom, in the "additional interest" box.[9] Put differently, the certificate holder is not Fiesta Mart, LLC, but the additional interest named on the bottom of the form. And Fiesta Mart, LLC has produced no document – whether on a certificate of insurance or evidence of insurance – showing that it was added here as an "additional interest."

---

[9] That Willis incorrectly lists Fiesta Mart as the insured on the forms does not impact this analysis. Generally, "an insurance broker is considered the agent of the insured." Vela Wood, 485 F. Supp. at 710. And Willis' 30(b)(6) witnesses repeatedly testified that Willis was not the Insurers' agent. See Ex. 25, Dep. Tr. of Nancy Collins at 232:18-233:16. Whether Fiesta Mart, LLC detrimentally relied on Willis' representations to it about its status under the Policies does not change the fact that – as a matter of law – Fiesta Mart was not an insured under them.

Instead, for Store 10, "Guilford Glazer & Associates" and "The Guilford Trust of 1983 dba SanOak Management Company" were added as both an "additional insured" and as a "loss payee." Ex. 23, Store 10 Evidences of Property Insurance, Fiesta_Mart0000902, Fiesta_Mart0000991. And for Stores 23 and 56, "PNC Bank, National Association" was added as a "Lender's Loss Payee." Ex. 24, Store 23 and 56 Evidence of Property of Insurance, Fiesta_Mart0000945. But "Fiesta Mart, LLC" was never added. Therefore, none of these documents makes Fiesta Mart, LLC an insured.

### 3.   The Documents on Which Fiesta Mart, LLC Relies Were Not Issued by Willis of Illinois

The Policies are clear: "**Willis of Illinois, Inc.** is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy." Ex. 1, Westport Policy at Westport_000136 (emphasis added). Here, the documents – evidence of property insurance, not certificates of insurance – were issued by Willis of New York. This independently defeats Fiesta Mart's argument.

The Policies' "Certificates of Insurance" clause only allows Willis of Illinois, Inc. to issue "certificates of insurance," not Willis of New York, Inc. And Fiesta Mart, LLC recognizes this; its complaint correctly identifies Willis of Illinois as the entity that is so authorized. Ex. 15, FM SAC at ¶45.

In a remarkable sleight of hand, Fiesta Mart, LLC next alleges that "Willis" – not Willis of Illinois – issued certificates of insurance for "Fiesta Mart." Ex. 15, FM SAC at ¶46. But Fiesta Mart, LLC does not – because it cannot – allege that the correct entity issued the certificates.

Either way, the only entity that could have issued any sort of certificate did not. And whether an entity unauthorized by the Policies did is irrelevant. Because Willis of *Illinois* did not

issue *certificates* of insurance adding *Fiesta Mart, LLC,* as an "additional interest," Fiesta Mart,

LLC's argument fails.

## III.   THE ASSIGNMENT AGREEMENT BETWEEN ACON AND FIESTA MART, LLC IS INVALID

Finally, Fiesta Mart, LLC contends that ACON assigned its right to the claim's

depreciation holdback to Fiesta Mart, LLC in February 2020. See Ex. 15, FM SAC at ¶94. Even if

ACON purported to do so as part of its settlement with Fiesta Mart, LLC however, any such

assignment is legally invalid.

### A.   The Assignment Agreement is Unenforceable Against All of the Insurers

First, it is undisputed that the Insurers never agreed to the assignment. See Ex. 15, FM SAC

at ¶98. Importantly, Insurers are not a party to the assignment.

Second, as Fiesta Mart, LLC has already admitted – both in its operative complaint and in

its complaint against ACON in the previous litigation – that "ACON had no title or interest in

Fiesta Mart including Fiesta store numbers 10, 23, or 56" at the time of the Assignment, as the sale

had already occurred. See Ex. 15, FM SAC at ¶98; Ex. 19, Original Compl. in ACON v. Fiesta

Mart, LLC, at ¶53.[10] And ACON's 30(b)(6) witness conceded that neither ACON nor ACON

Fiesta Holdings had any "interest, economic or otherwise," in the Fiesta Mart stores after the sale.

Ex. 9, Dep. Tr. of Drew Scielzo, at 41:6-21.

Third, it is undisputed that at the time of the assignment, neither Fiesta Mart, LLC nor

ACON had incurred repair costs in excess of the ACV – which the Insurers undisputedly paid – to

---

[10] Factual allegations in a party's pleadings in one case may be admissible as evidentiary admissions of that party in another case. PHI, Inc. v. Apical Indus., Inc., 2020 WL 2220315, at *2 (W.D. La. May 7, 2020) (citing Hardy v. Johns-Manville Sales Corp., 851 F.2d 742, 745 (5th Cir. 1988) ("There is a well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party.")).

repair the stores at issue. Ex. 9, Dep. Tr. of Drew Scielzo at 85:4-86:10; Ex. 8, Dep. Tr. of Jack

Hook, Vol. 1, at 33:14-25; 39:8-20.

After the sale, ACON could no longer incur compensable expenses under the Policies to

repair damaged Fiesta Mart stores. The MIPA did not require it. The Insurers had paid the full

ACV claim. And because ACON no longer had an interest in any of those stores, no RCV costs

could legitimately be deemed "necessary."

After the sale, ACON could not collect any of the depreciation holdback. Because it could

not collect, it had no post-sale right to assign to Fiesta Mart, LLC. And because it had no post-sale

right to assign, any assignment to Fiesta Mart, LLC is invalid and/or contractually unenforceable.

    B.    **The Westport and Aspen Policies Each Contain an Explicit Anti-Assignment Provision**

Even if the assignment agreement could have been enforceable, the Westport and Aspen

policies each contain an anti-assignment provision that explicitly requires Westport and Aspen's

consent. Neither consented.

The Westport policy provides that "Assignment of this policy shall not be valid except with

the written consent of Westport Insurance Corporation." Ex. 1, Westport Policy at

Westport_000104. And the Aspen policy provides:

**COMMON POLICY CONDITIONS**

All Coverage Parts included in this policy are subject to the
following conditions.

\*\*\*

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred
without our written consent except in the case of death of an
individual named insured. If you die, your rights and duties will be
transferred to your legal representative but only while acting within
the scope of duties as your legal representative.

20

> Until your legal representative is appointed, anyone having proper
> temporary custody of your property will have your rights and duties
> but only with respect to that property.

Ex. 4, Aspen Policy at Aspen_000583.

Anti-assignment provisions like the ones in the Westport and Aspen policies are enforceable under Texas law. See, e.g., Banco Popular, N. Am. v. Kanning, 638 Fed. Appx. 328, 337 (5th Cir. 2016) (finding language like both Westport's and Aspen's enforceable); Dr. Michael Hoffman & Associates ex rel. Dallas Med. Holdings, Ltd. v. St. Paul Guardian Ins. Co., 2005 WL 1950848, at *2 (Tex. App.—Dallas Aug. 16, 2005, no pet.) (finding purported assignment unenforceable against insurer as violating anti-assignment provision); Tex. Farmers Ins. Co. v. Gerdes By & Through Griffin Chiropractic Clinic, 880 S.W.2d 215, 218 (Tex. App.—Fort Worth 1994, writ denied) ("Non-assignment clauses have been consistently enforced by Texas courts.").

The assignment agreement is unenforceable against all the Insurers. But even if the Court holds differently, for the above additional reason it is unenforceable against Westport and Aspen.

## CONCLUSION

Fiesta Mart, LLC is not an insured under the Policies – only those entities listed on the endorsement schedules are. The evidence of insurance documents issued by Willis do not make Fiesta Mart, LLC an insured. It was the wrong document, issued by the wrong entity, to entities other than Fiesta Mart, LLC. And both Fiesta Mart, LLC and ACON agree that ACON had no interest in the properties at issue when it tried to assign the depreciation holdback to Fiesta Mart, LLC to extricate itself from its own litigation against Fiesta Mart, LLC. But there was no longer a right for ACON *to* assign.

Bottom line: the Insurers have fully discharged their contractual obligations to ACON and have no contractual privity with or liability to Fiesta Mart, LLC. The Insurers respectfully request that this Court grant this motion and enter judgment in their favor.

21

Dated: December 16, 2022                     */s/* Jeffrey S. Weinstein

                                            Sarah Mohkamkar
Attorney-in-Charge
Texas Bar No.: 24106321
SDTX Federal ID No. 3162373

Mound Cotton Wollan & Greengrass LLP
3 Greenway Plaza, Suite 1300
Houston, Texas 77046
SMohkamkar@Moundcotton.com
Telephone: (281) 572-8350
Fax: (281) 572-8350

Jeffrey S. Weinstein
New York Bar No. 2099273
Southern District of New York No. JW-2619
Bruce R. Kaliner
New York Bar No. 2098523
Southern District of New York No. BRK-6849
Samuel B. Weiss
New York Bar No. 5650601
Southern District of New York No. 5650601

Mound Cotton Wollan & Greengrass LLP
One New York Plaza
New York, NY 10004
JWeinstein@Moundcotton.com
BKaliner@Moundcotton.com
SWeiss@Moundcotton.com
Telephone: (212) 804-4200

***Attorneys for the Insurers***

## CERTIFICATE OF SERVICE

It is certified that on this December 16, 2022, a copy of the foregoing was served by email and/or by electronic filing service on all counsel of record.

                                                  /s/ Jeffrey S. Weinstein
                                                  Jeffrey S. Weinstein