IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FIESTA MART, LLC,<br><br>                 Plaintiff,<br><br>vs.<br><br>WILLIS OF ILLINOIS, INC, *et. al.*,<br><br>                 Defendants. | **Civil Action No. 4:20-CV-03484** |

### DEFENDANTS WILLIS TOWERS WATSON MIDWEST, INC. (F/K/A WILLIS OF ILLINOIS, INC.) AND WILLIS TOWERS WATSON US, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Fiesta would have this Court believe it was misled into joining an insurance program that provided no coverage. This is contrary to the undisputed facts. Throughout its response brief, Fiesta claims there are facts in dispute, pointing – without explanation – to documents and testimony it blatantly mischaracterizes. Summary judgment is appropriate because:

- Fiesta tacitly concedes its corporate representative (Jack Hook) was unable to identify *any* false information or misrepresentations in connection with Fiesta's decision to join the Aggregate Property Program ("Program") in 2016, meaning there also is no evidence of detrimental reliance. Ex. 15, at 165:19-166:16, 174:9-11. Pivoting, Fiesta now claims Willis's statements that the Program provided better coverage at lower premium were false in light of this Court's March 31 Order ("Order"). But, there is no evidence these statements were false (to the contrary, as compared to its prior policy, the Program offered enhanced coverage at a lower price).

- Misinterpreting the Order, Fiesta contends Willis procured a "defective" policy that did not provide Fiesta with coverage. It is undisputed that, insofar as Fiesta was owned by ACON Fiesta Holdings, LLC (which was the case when the Master Policy ("Policy") was placed), there *was* coverage, evident by the $7.5 million payment for the damaged stores owned by

    Fiesta in the weeks following Hurricane Harvey. To-date, Fiesta has received $10.6 million (having settled with ACON for $1.68 million less than sought).

- That Fiesta's insurance was through ACON Fiesta Holdings, LLC was of no issue—until Fiesta was sold to Bodega Latina Corporation ("Bodega"). Fiesta does not dispute it was provided with the Policy, and never raised any issues about the fact its insurance was as part of the ACON "family" of companies.

- When Bodega acquired Fiesta, it did not acquire ACON Fiesta Holdings, LLC or include in the purchase agreement ("MIPA") language directing where future insurance proceeds were to be paid, despite knowing there were outstanding claims and having received the Policy in due diligence. It is undisputed that Willis was not a party to the sale.

Left with only itself to blame, Fiesta (now controlled by Bodega) seeks to hold its insurance broker liable for the consequences of an intervening and superseding business transaction that Willis was not party to, which fundamentally altered the structure of the Program, and which, up to that point, functioned as intended and without issue. Permitting Fiesta's claims here would impermissibly expand insurance brokers' duties under the Texas Insurance Code and common law in this and countless other claims.

Fiesta's breach of contract claim also falls short, particularly insofar as it is premised on conduct occurring after Willis's termination. As the Order recognized, the contract ("T&Cs") clearly states that upon termination, Willis owes no continuing duties unless there is an agreement and compensation. Fiesta's corporate representative admits this never occurred. Ex. 49, at 20:24-21:12.[1]

For these reasons, and as further set forth in Willis' Summary Judgment Motion (Dkt. 99; "MSJ"), summary judgment should enter. Willis refers the Court to the factual background in the MSJ.

---

[1] The exhibits referenced were attached to Willis's initial summary judgment motion (Dkt. 73).

**ARGUMENT**

I.     **Willis Did Not Breach its Common Law Duties.**

An insurance broker owes its client two duties: to (1) "use reasonable diligence in attempting to place the requested insurance" and (2) "inform the client promptly if unable to do so." *May v. United Servs. Ass'n of Am.,* 844 S.W.2d 666, 669 (Tex. 1992). Willis fulfilled both of these duties. It is undisputed Fiesta voluntarily elected to join the Program, was provided with the Policy listing ACON Fiesta Holdings, LLC in Endorsement A1, and took no issue with the terms or structure.

Fiesta contends, in conclusory fashion, "it is not the law" that "Fiesta's agreement to the Portfolio Policies negates its duty to place insurance for Fiesta," positing that if this were so, "a broker could never be responsible for failing to secure insurance because that determination would always occur after the client 'agreed to' the policy." Response, 8. This argument is non-sensical, and would negate a client's duty to read. *Heritage Manor of Blaylock Properties, Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App. 1984) ("Heritage had a duty to read the policy and, failing to do so, would be charged with knowledge of its conditions and coverage…Moreover, Heritage ratified the insurance policy by accepting its benefits.").

While Fiesta accuses Willis of "confusingly referenc[ing] the alleged absence of a special relationship," (Response, 8), tellingly, Fiesta does not argue one existed nor does it point to any evidence of a special relationship, which was also not pled. *Pittman v. U.S. Bank NA*, 849 F. App'x 788, 789-90 (5th Cir. 2021) (prohibiting plaintiffs "from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment.").

**II.     The Sale to Bodega – and Failure to Address Insurance Proceeds – Caused This Dispute.**

Again mischaracterizing Willis's argument, Fiesta contends "Willis cites to no authority holding that a broker escapes liability because a third-party purchaser of its client's parent entity didn't purchase a separate insured entity or contract for proceeds to be paid to the client." Response, 6. This misses the point, and ignores that causation is a required element of Fiesta's tort claims.

The Program worked. More than $12.2 million was paid, and there is no dispute concerning the initial $7.5 million payment, which, at ACON's direction, was made to Fiesta directly, as extensive testimony and documents demonstrate (which Fiesta simply ignores).

What changed was Fiesta's ownership, compounded by Bodega's failure to adequately account for the rights to insurance proceeds it wished to acquire with the assets. This was an intervening, superseding event that proximately caused Fiesta's alleged damages. *May,* 822 S.W.2d at 672 ("if a breach of due care can be proved without a more concrete showing than a subsequent failure of coverage, agents would be rendered 'blanket insurers.'").

Without causation, there is no factual or legal basis for Fiesta's claims, including its Insurance Code claims.

**III.    Willis Did Not Prevent Fiesta From Seeking Depreciation Holdback.**

As a threshold matter, Fiesta does not contest that it has failed to make repairs. Response, 7. Fiesta characterizes this as a fact issue, but there is no evidence Fiesta made any repairs, despite its corporate representative conceding this is a prerequisite for payment. Ex. 15, at 39:8-20. Fiesta claims it did not make repairs because it lacked money, suggesting it would have, but for Willis's conduct, which it believes raises a fact issue. Fiesta cites to no record evidence in support of this

3

sweeping proposition, which is belied by the fact that after being paid $3.1 million by ACON (nearly 65% of the second payment), Fiesta still has not made any repairs.

Fiesta nevertheless asks this Court not to dismiss its depreciation holdback claims, arguing that if it is not successful in seeking these amounts from the Insurers, Willis is to blame by "failing to secure insurance coverage for Fiesta." Response, 7. The Court's Order, however, found as part of their settlement, ACON validly assigned its rights and Fiesta is free to seek depreciation holdback, which it is now doing. In other words, nothing Willis did prevented Fiesta from seeking depreciation holdback.

As to its inability to seek depreciation holdback from Aspen and Westport (whose policies have non-assignment clauses), Fiesta claims Willis forced it into seeking this right via assignment as opposed to having the ability to do so directly as a named insured. Once again, this ignores that, pre-sale, Fiesta took no issue with its insurance being through ACON Fiesta Holdings, LLC. Having received copies of the policies in due diligence showing Fiesta's insurance was through an ACON holding company, Bodega could have acquired ACON Fiesta Holdings, LLC or included language addressing depreciation holdback rights. It chose not to do either. But those shortcomings do not – and should not – create liability for the insurance broker that was not a party to the other deal.

## IV. Willis's Representations Are Not Actionable as a Matter of Law.

Fiesta's negligent misrepresentation and statutory claims center around an August 2, 2018 telephone call between Hook and Willis's Blaine Conant. Hook testified that during that call, Conant told him the second payment would go to Fiesta and he could expect payment within 30 days. This is a quintessential promise of future conduct, which, as a matter of law, cannot form the basis for a negligent misrepresentation claim. *See, e.g., Fraser v. Purnell*, 2015 WL 4481702,

at *5 (Tex. App. July 23, 2015) ("negligent misrepresentation…requires a misstatement of existing fact rather than a promise of future conduct."). While Fiesta accuses Willis of construing Conant's words "unnaturally narrow[ly]," its interpretation ascribes to Conant words he did not say. Response, 10. Moreover, under Texas law, a misrepresentation after a loss – as was the case here – also is not actionable because, by definition, there can be no reliance. *Gant v. State Farm Lloyds*, 2022 WL 254353, at *4 (N.D. Tex. Jan. 27, 2022).

The alleged "earlier" misrepresentation Fiesta points to (Response, 9) was not among the misrepresentations identified by its corporate representative, and the statement that "all additional payments" would be made to Fiesta clearly refers to the checks from other insurers that made up the initial payment ACON directed be made to Fiesta directly. But even if construed otherwise, it still would be an unactionable promise of future conduct.

Fiesta points to just one case – *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439 (Tex. 1991) – which is distinguishable. There, the loan officer for the bank responsible for approving their loan represented "there was no problem" with their loan and "no[]…reason for them not to continue at that point" with incurring construction costs. *Id.,* at 441. Later, the loan was not approved. A jury found the officer's statement "misrepresented an existing fact rather than a promise of future conduct." *Id.*

By contrast, Conant was not responsible for making/directing payment; that was the responsibility of ACON and the Insurers. Ex. 52, 87:8-10; Ex. 54, 172:20-9. Moreover, as of August 2, second proofs of loss had not been submitted, which were required before payment was issued. Dkt. 75-4. Fiesta makes much ado about "fill-in-the-blank" language drafted by Willis for ACON in January 2018 as to where insurance proceeds were to be paid. However, the plain text of this email shows Willis prepared such form language in anticipation that, as part of the sale of

5

Fiesta to Bodega (a transaction Willis was not party to), insurance proceeds would be accounted for, which they were not, surprisingly. Response, Ex. 31. At the time of Conant's statements, Willis had not seen the MIPA and was unaware it was silent as to future insurance proceeds. Ex. 20.

Fiesta further argues the economic loss rule does not bar its tort claims because there is an exception for professional malpractice claims. Tellingly, the case Fiesta cites – *LAN/STV v. Martin K. Eby Const. Co.,* 435 S.W.3d 234 (Tex. 2014) – does not list insurance brokers as one of the excepted professions, and the holding was based on the nature of the dispute (construction project).

Finally, because the representations do not concern specific policy terms, Fiesta's Insurance Code claims must also fail. *Finger Oil & Gas, Inc. v. Mid-Continent Cas. Co.,* 2023 WL 581650, at *3 (5th Cir. Jan. 27, 2023) ("general statement that…policy included…coverage" was not "a misrepresentation of specific policy terms" and therefore not actionable).

**V.    Fiesta Should Not Be Permitted to Seek $3.1 Million Paid by ACON.**

Fiesta argues a jury should determine if it can recover the full second payment ($4.78 million) from Willis, notwithstanding the fact its corporate representative testified it is not seeking this of Willis. Ex. 49, at 53:12-54:10. Fiesta has received this amount from ACON, it should not be permitted to recover it yet again. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) ("a plaintiff is entitled to only one recovery for any damages suffered").

## **CONCLUSION**

For these reasons, Willis respectfully requests summary judgment be entered in its favor.

Respectfully submitted,

*/s/ Christopher W. Martin*
Christopher W. Martin
SBOT No. 13057620
Federal ID No. 13515

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
E-mail: martin@mdjwlaw.com

and

Edward J. Baines (*admitted pro hac vice*)
ted.baines@saul.com
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
(410) 303-8831
(410) 332-8862 (fax)

and

Kyra A. Smerkanich (*admitted pro hac vice*)
kyra.smerkanich@saul.com
Saul Ewing LLP
1919 Pennsylvania Avenue, Suite 550
Washington, DC 20006
(202) 295-6632
(202) 337-6065 (fax)

*Counsel for Defendants Willis Towers Watson Midwest, Inc. and Willis Towers Watson US, LLC*

## **CERTIFICATE OF WORD COUNT**

I hereby certify that, excluding the case caption, table of contents, table of authorities, signature block, and certificates, and relying on Microsoft Word's word counting tool, the foregoing motion contains 1,998 words.

/s/ *Christopher W. Martin*
CHRISTOPHER W. MARTIN